# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

JOHN J. THORNTON,
(d/b/a Baby Boomer Headquarters)
an individual

    Plaintiff,

vs.                                                CASE NO.: 8:06-cv-01640

J. JARGON CO.,
a Florida Corporation, and

JEANETTE C. LINDERS,
an individual,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Defendants J. Jargon Co. and Jeannette C. Linders (collectively, "Jargon"), pursuant to Federal Rule of Civil Procedure 26(c), move this Court for a protective order quashing in their entirety the third party subpoenas sent to performing houses at which the Defendants' play, *Menopause the Musical*, (the "Musical") has been performed, on the grounds that such subpoenas are designed to harass, embarrass and oppress Defendants and are not reasonably calculated to lead to the discovery of admissible evidence. A true and correct copy of a sample subpoena and accompanying document request is attached hereto as Exhibit A. In the alternative, Defendants move the Court to severely limit the materials required to be produced to protect the Defendants from harassment, oppression, and embarrassment by

releasing the third parties from providing any financial or contractual documents concerning *Menopause the Musical.*

## BACKGROUND

Defendant Linders is the author of the Musical. In this copyright infringement action, Plaintiff does not allege or even contend that the Musical in any way infringes his alleged work. Rather, Plaintiff alleges the free program or Playbill distributed at two productions of the Musical included a simple, fact intensive "Age Test" Plaintiff claims to have authored. See Compl. Ex. A. The programs in question contain information about the Musical, including biographical information about the performers, and other credits to the production staff. A true and correct copy of two sample programs already produced to Plaintiff by Defendants – one with and one without the "Age Test" – is attached hereto as Exhibit B.

In this shotgun approach to discovery, Plaintiff seeks sensitive financial documents from at least a dozen Playhouses where the Musical has been performed. The vast majority of the documents sought, however, do not concern the subject matter of this litigation – namely, the programs and whether or not the Age Test is included in them. Rather, Plaintiff seeks clearly irrelevant and overbroad discovery concerning the financial success of the Musical. Defendants have already timely objected to providing such documentation in discovery propounded directly to them. Plaintiff's attempt to obtain the sensitive documents and clearly irrelevant documents from third parties constitutes harassment and should be quashed by this Court.

**ARGUMENT**

I. **DEFENDANTS SHOULD BE PROTECTED FROM THIRD PARTY DOCUMENT REQUESTS THAT ARE NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Even under the most liberal reading of the federal discovery rules, the third party subpoenas should be quashed and a protective order issue. Because, as a matter of law, discovery of the profits of the Musical and other sensitive financial documents is utterly irrelevant to any reasonable theory of damages, Plaintiff's third party subpoenas for document are beyond the scope of Rule 26.

Defendants have standing to ask this court to quash third party subpoenas that request irrelevant information. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005)(granting defendant's motion for protective order). The lack of relevance, alone, is sufficient to constitute "good cause" for purposes of Rule 26(c). *Id.* In the context of discovery, the term "relevant" is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case." *Id.*, quoting *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351 (1978)*.* However, even under the broadest possible view of relevance, Plaintiff's discovery must be quashed. As in *Auto-Owners*, "Plaintiff's discovery regarding financial matters is grossly overbroad and irrelevant." *Id.* at 430.

## II. FINANCIAL INFORMATION ABOUT THE MUSICAL IS IRRELEVANT UNDER ANY THEORY OF DAMAGES.

Plaintiff's third party subpoenas all seek essentially the same information. Specifically, requests 1, 8, 9, 10, 11 and 12 seek irrelevant documents and communications,[1] including those tending to show the revenues from Defendants' play, *Menopause the Musical*. The revenues of the play are clearly irrelevant to any alleged damages calculation permitted by copyright law. Such documents have no bearing on Plaintiff's actual damages, nor do they have any bearing on "profits of the infringer *that are attributable to the infringement*." 17 U.S.C. § 504 (emphasis added). Simply put, it is "beyond conception" that the choice of a theatergoer to purchase tickets to and attend a performance of the Musical "could conceivably be affected" by the presence or absence of the Age test in the free program. *See Bouchat v. Baltimore Ravens, Inc.*, 215 F.Supp. 611, 620 (D. Md. 2002)(granting summary judgment to defendant on damages issues).

Plaintiff's attempt to discover the profits of *Menopause the Musical* are without legal merit and should be stopped by this court. Under longstanding copyright law precedent, the only relevant profits of the Defendants that a Plaintiff is entitled to prove for purposes of determining damages are those "attributable to the infringement." 17 U.S.C. § 504. The Musical's profits from ticket sales, souvenirs, t-shirts, soundtracks, and other items is not remotely affected by a one page filler item in the free program given out *after* tickets have

---

[1] To the extent the subpoenas seek "communications" which they define as "conversations, meetings, discussions, and any other occasion for verbal exchange, whether in Person or by telephone" the subpoenas are overbroad and should be quashed. Such items are not "documents" and are not subject to Rule 45. Similarly, to the extent the subpoenas seek to burden non-parties with creating a record or log of documents no longer in existence, they should also be quashed. Subpoenas under Rule 45 may only request production of "books, documents or tangible things in the possession, custody or control," and cannot require parties to create documents that do not exist. *See, e.g., Insituform Technologies, Inc. v. Cat Contracting, Inc.* 168 F.R.D. 630, 633 (N.D. Ill. 1996).

been purchased, as patrons take their seats at the performance. Plaintiff's request for documents showing "all revenue derived from the Musical at your Playhouse, including ticket sales, merchandising revenue, and other incidental revenue" (request 12) is completely overbroad and constitutes a fishing expedition.

Courts routinely limit the damages inquiry (at both the proof and discovery stages) to profits that are reasonably related to the alleged infringement. For example, in *Bouchat v. Baltimore Ravens, Inc.*, 215 F.Supp.2d 611, 620 (D. Md. 2002), an artist sued a professional sports team, and proved that the sports team's designers had relied upon the plaintiff's copyrighted sketch in designing the team's adopted Flying B logo. In considering the issue of damages, the Ravens sought partial summary judgment that its gross revenues related to sponsorships, broadcast and other media licenses, ticket sales, and general business revenues that were not reasonably related to the infringement.

The Court granted defendant's motion, holding that it was "*beyond conception* that a decision to obtain a personal seat license, a season ticket, a game ticket, a stadium parking space or a hot dog at half time could conceivably be affected by whether the tickets, the players' uniform, the flags in the parking lot or the hot dog stand displayed the Flying B logo." *Id.* (emphasis added). Notably, the court did not rely upon proffered affidavits with regard to the role of the logo in generating certain categories of income, but rather held that, as a matter of law, there is no "logical argument" that "could cause a reasonable person to find that certain of the Defendants' categories of revenue (and thus profits) could be attributable to the infringement of Plaintiff's copyrighted work." *Id.* at 620. The Fourth Circuit Court of Appeals affirmed the decision, noting that the affidavits "merely confirm

what ordinary experience would otherwise seem to render apparent." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 n.10 (4th Cir. 2003). Here, the factual situation is nearly identical: No logical argument exists that theatre patrons' decisions to purchase tickets or merchandise related to the Musical is in any way caused by the presence or absence of the Age Test in the free program.

Similarly, in *Burns v. Imagine Films Entertainment, Inc.*, No. 92-CV-2438, 2001 WL 34059379 (W.D. N.Y. Aug. 23, 2001), plaintiff sued Universal Studios for its role in producing the movie *Backdraft*, which the Court held infringed plaintiff's copyright. In considering the issue of damages, the court held that evidence of the defendant's revenue relating to the *Backdraft* attraction at the Universal Studios' theme park was irrelevant and not a proper measure of damages. Like the play at issue here, the court in *Burns* noted that "the *Backdraft* attraction itself contains no infringing materials" and was thus a *non-infringing enterprise*. *Id.* at * 4. The district court held:

> To recover profits from a non-infringing enterprise, a copyright holder must prove a <u>causal nexus</u> between infringement of his work and the profits, and must accurately calculate the portion of the profits attributable to infringement. *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 886 F.2d 1545, 1553-54 (9th Cir.1989).… Plaintiffs have not offered any reasonably accurate method of calculating profits from the theme park that are attributable to infringements in the film. Plaintiffs concede that the appeal of the *"Backdraft* attraction" is largely due to recreation of the film's special effects and not to the screenplay. Also, *"Backdraft"* is only one of several attractions at the theme park. As Defendants point out, if there were no *"Backdraft* attraction," there likely would be an attraction based on another Universal film in its place. Plaintiffs would have to accurately calculate how many people (a) went to the park because of *"Backdraft"* and (b) would not have gone if it had a different attraction. They have presented no viable method of making this calculation. Thus, although the theme

6

> park may have reaped some "marginal benefit" from infringing elements in the film *Backdraft,* the percentage of such profits attributable to Plaintiffs "is too speculative and the relationship between such profits and infringement is too attenuated" to justify an award of indirect damages from theme park profits. *Frank Music,* 886 F.2d at 1554.

*Id.* at *4 (emphasis added). Similar to the *Burns* plaintiff, Plaintiff in the case at bar cannot show any reasonable method of calculating profits attributable to the presence of the Age Test. Unlike *Burns*, where it is at least theoretically possible that a theme park visitor could be attending the amusement park in part because he knew about and wanted to visit the *Backdraft* attraction, plain common sense and logic dictate that theatergoers chose to attend the Musical because of the Musical, not because of the program, let alone a filler piece in the program.

Courts have not hesitated to prohibit such overly broad fishing expeditions. In *Compaq Computer Corp. v. Ergonome Inc.*, No. Civ.A. H-97-1026, 2001 WL 34104827 at *2 (S.D.Tex., June 27, 2001), the district court refused to compel the requested financial information on facts very similar to the case at bar. In *Compaq*, Plaintiff Ergonome sought to prove that Compaq's *Safety and Comfort Guides*, which were "included with other materials usually provided to purchasers of Compaq's computers," had infringed its copyright in a handbook on keyboard ergonomics. *See Compaq Computer Corp. v. Ergonome Inc.,* 137 F.Supp.2d 768, 770 (S.D.Tex. 2001)(setting out facts pertinent to dispute). Ergonome sought discovery of Compaq's gross revenues "related to the number of computers sold during the relevant time period." *Compaq*, 2001 WL 34104827 at *2. The court, relying in part on *On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir.2001), explained that "the term 'gross revenue' under the statute means *gross revenue reasonably related to the infringement*, not

unrelated revenues," and held that "[t]he ancillary nature of the book, relative to the sale of the computers themselves, is irrefutable." *Compaq*, 2001 WL 34104827 at *2 (emphasis added).

The *Compaq* court held that "Ergonome's request for information on Compaq's gross revenues relating to all computers sold is overbroad because the record does not indicate to what extent, if any, Compaq's gross revenues on computers were "reasonably related" to its alleged infringement of *The HAND Book."* *Compaq*, 2001 WL 34104827 at *2. The court noted that the Plaintiff's theory of damages – which would have allowed plaintiff to proffer to the jury Compaq's gross revenues for every computer purchased with the allegedly infringing ergonomics booklet – "defies logic, and … defies any interpretation of 17 U.S.C. § 504(b) that contemplates a reasonable relationship between an infringer's gross revenues and its infringement." *Id.* at *3. Moreover, the district court found that "Compaq is not on trial for the number of computers it has sold; ergo, its potential liability may not rest on that mathematical root alone" when denying Ergonome's motion to compel. *Id*.

Plaintiff cannot show any reasonable relationship between the documents sought concerning the gross revenues of the Musical and the alleged infringement. The Plaintiff's harassing, oppressive, and completely overbroad fishing expedition via subpoenas to third party playhouses should be quashed.

## COMPLIANCE WITH LOCAL RULE 3.01(g)

Counsel for Defendants attempted to confer with counsel for Plaintiff via e-mail on March 5, 2007 in a good faith effort to resolve the issues herein. On March 6, 2007, counsel for Plaintiff responded to Defendants' request for a Rule 3.01(g) conference by letter, stating "we are currently looking into this matter and will get back with you shortly." On March 15, 2007, counsel for Defendants again attempted to confer with counsel for Plaintiff but was unable to reach Plaintiff's counsel by telephone. Counsel for Defendants will continue to attempt to confer with counsel for Plaintiff and will update this certificate accordingly.

## CONCLUSION

WHEREFORE, the Defendants request that this Court quash the third party subpoenas in their entirety. In the alternative, Defendants request that the Court issue a protective order striking document requests 1, 8, 9, 10, 11 and 12 or the equivalent from the third party subpoenas served thus far and order that Plaintiff's cease attempting to ascertain discovery of revenues derived from the Musical.

DATED: March 15, 2007.

> By: */s/ G. Donovan Conwell, Jr.*
> G. Donovan Conwell, Jr.
> Florida Bar No.: 371319
> G. Wrede Kirkpatrick
> Florida Bar No: 0984116
> Conwell, Sukhia & Kirkpatrick, P.A.
> 2701 N. Rocky Point Drive, Suite 1200
> Tampa, FL 33607
> (813) 282-8000; (813) 282-8800 fax
> dconwell@csklawfirm.com
> wkirkpatrick@csklawfirm.com
> Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 15, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: William F. Hamilton, Esq., Stefan V. Stein, Esq., Michael J. Colitz, III, Esq., Holland & Knight LLP, 100 N. Tampa Street, Suite 4100, Tampa, FL 33602.

*/s/ G. Donovan Conwell, Jr.*
Attorney