JOHN J. THORNTON                                          :
(d/b/a Baby Boomer Headquarters)                          :
an individual                                             :
                                                          :          Case No. 8:06-cv-01640
                    Plaintiff,                            :
                                                          :
         v.                                               :
                                                          :
J JARGON CO.,                                             :
a Florida corporation, and                                :
                                                          :
JEANETTE C. LINDERS,                                      :
an individual.                                            :
                                                          :
                    Defendants.                           :
_____                       :

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND SUPPORTING LEGAL MEMORANDUM

Plaintiff, John J. Thornton ("Thornton"), pursuant to Local Rule 3.01(b), hereby files this opposition to Defendants J Jargon Co. and Jeanette C. Linders' ("Defendants") Motion For Protective Order [Docket No. 21] (the "Motion"). Defendant's Motion should be denied because: (1) Rule 45 provides adequate protection to the third parties subpoenaed; (2) Defendants do not have standing to quash these subpoenas; (3) the parties have agreed to a Protective Order, which alleviates any reasonable concerns the Defendants have intimated; and (4) Defendants improperly ask this Court to quash the entire subpoena, but essentially concede the majority of the subpoenas are proper.

<u>BACKGROUND</u>

Defendants' successful play entitled *Menopause the Musical* (the "Musical") has run at playhouses around the globe. As is customary when attending such a play, patrons expect a program when they arrive, and Defendants' Musical is no different in this regard. The programs Defendants have distributed, or caused to be distributed, contain a verbatim copy of Thornton's copyrighted "Take the Age Test" (the "Test"). The Test, just like the Musical, is directed towards entertaining the baby boomer generation. There can be no question that the Test's inclusion in Defendant's program provided value to the Defendants. It is this wholesale plagiarism of Thornton's Test that is the heart of this lawsuit.

To determine the extent of plagiarism of Thornton's Test, Thornton issued document subpoenas to playhouses across the country pursuant to Fed. R. Civ. P. 45. Exhibit A, attached to Defendants' Motion is an accurate copy of such a subpoena. Only one of these subpoenas issued from the Middle District of Florida. Thornton has learned that Defendants' counsel contacted at least one playhouse on an *ex parte* basis and, on a not-so-subtle basis, encouraged the playhouse to object to the subpoena under Fed. R. Civ. P. 45. <u>See</u> Letter from D. Wasylik to S. Aebig of 2/14/07. It stands to reason that all of the playhouses under subpoena received a similar letter. Again, Plaintiff's counsel did not receive any of this correspondence from Defendants' counsel. The invitation of Defendants' counsel is significant because despite being encouraged to object, many of the playhouses have willingly provided documents and none of the playhouses have attempted to quash the subpoena as Defendants are attempting to do here. In fact, the response date for these

document subpoenas expired weeks ago.  <u>See</u> Ex. A to Def.'s Motion (requesting documetns to be produced by March 5, 2007).

Thus, Defendants' Motion seeks to do only what the recipients of the subpoenas chose not to do.  Further, as discussed below, Rule 45(c) is the proper authority for quashing such a subpoena, yet Defendants recognize that, as a party, they do not have any basis to pursue such a charge.  Defendants Motion is improper, and this Court should deny it.

ARGUMENT

Defendants' Motion For Protective Order should be denied for several reasons: (1) Rule 45 provides adequate protection to the third parties subpoenaed; (2) Defendants do not have standing to pursue quashing these subpoenas; (3) the parties have agreed to a Protective Order, which alleviates any of Defendants' reasonable concerns; and (4) Defendants improperly ask this Court to quash the entire subpoena, but essentially concede the majority of the subpoenas are proper.

## I.  **RULE 45 ADEQUATELY PROTECTS THE INTERESTS OF THE THIRD PARTIES SUBPOENAED.**

Rule 45(c) provides a means for protecting against concerns that would be raised by non-parties that have been subpoenaed.  For instance, a person responding to a subpoena may move the court by which the subpoena issued requesting that court modify or quash the subpoena.  *See* Rule 45(c)(3)(A).  However, in this case, only one of the subpoenas that is the subject of Defendants' Motion issued from the Middle District of Florida (and even that one issued from a different Division).[1]  The question of whether to quash any subpoenas in this

---

[1] As of the date of this filing, Thorton has served 11 subpoenas on playhouses throughout the country.  These subpoenas have issued from the following courts: C.D. California, N.D. California, M.D. Florida, (Jacksonville

matter is better left to the courts from which the subpoenas have issued. Moreover, Defendants' wholesale request to "quash[] in their entirety the third-party subpoenas sent to performing houses" falls drastically short of the specificity required of a movant under Rule 45. Defendants have not identified which subpoenas precisely to quash, because Defendants likely recognize that most of the subpoenas were not issued by this court, and thus other courts are more properly situated to handle any disputes that should arise as to the burden placed upon the recipients of the subpoenas. Rule 45 is the proper avenue for quashing third-party subpoenas, and its provisions should be invoked by the people on whom the subpoenas were served, not the Defendants.

## II.  DEFENDANTS DO NOT HAVE STANDING UNDER RULE 45 TO PURSUE QUASHING THIRD-PARTY SUBPOENAS.

A party does not have standing to quash a subpoena unless the party shows a "personal right or privilege" with respect to the subpoena. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).[2]  *Auto-Owners* directly contradicts Defendants' position, as the court refused to quash the third-party subpoena directed at financial records, precisely because the Defendants did not have standing to seek such relief.  In fact, *Auto-Owners* rejected the exact argument Defendants have put forth as the basis for their Motion.

In *Auto-Owners,* the court recognized that the "financial records sought are business records of non-parties." *Id.* The court continued: "Defendants have not established any

---

Division) N.D. Georgia,  N.D. Illinois, S.D. Indiana, E.D. Michigan, E.D. Missouri, Nebraska, Nevada, S.D. New York, Oregon, E.D. Pennsylvania, and the W.D. Washington.
[2] Defendants cite to *Auto-Owners* for the proposition that Defendants have standing to quash third-party subpoenas under Rule 45.  *See* Motion at p. 3.  Defendants neglect to inform the Court that *Auto-Owners* **requires** a party seeking to quash a subpoena show that it has a personal right or privilege at stake.

expectation of privacy in their business transactions with other corporations and have not made any factual showing that the records are confidential or proprietary….Therefore, Defendants do not have standing under Rule 45 to quash the subpoenas regarding financial records" *Id*. (internal citation omitted).

The court also rejected the *Auto-Owners* defendants argument that the subpoenas were oppressive and placed an undue burden on the Defendants: "Defendants do not have standing to quash the subpoenas on the grounds of oppression and undue burden placed upon third parties where the non-parties have not objected on those grounds." *Id*. *See also*, 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice And Procedure Civil 2d § 2035 ("A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself.")

This Court should not quash the third-party subpoenas, because Defendants do not have standing to pursue such a request. Even in the face of Defendants' improper suggestion, none of the playhouses that have been served with subpoenas have moved to quash under Rule 45(c), and this Court should not allow Defendants to attempt to do so on the playhouses' behalf.

### III. THE PARTIES HAVE AGREED TO A PROTECTIVE ORDER WHICH VITIATES ALL OF DEFENDANTS' CONCERNS.

The parties negotiated an agreed upon Protective Order, which has been filed with the Court at Docket No. 25. The parties have agreed to be bound by the Protective Order's terms pending formal entry by the Court. As the first section of this Protective Order indicates, the protections extend to "all information supplied during discovery, in any form, which shall be designated by any party, **or any third party producing such information**." Defendants

have the ability to invoke the provisions of this Protective Order "at the time or production, or subsequent to the production."

Thornton has no objection to considering documents provided by the playhouses as subject to the terms of the Protective Order. Defendants choice to ignore the protections already agreed to and seek intervention by this Court should not be looked upon favorably. Had Defendants informed Thornton of their desire to make production from the playhouses subject to the Protective Order, Thornton would certainly be amendable. Even in this posture, Thornton still agrees to let the Protective Order, agreed to by the parties, govern production from the playhouses.

## IV. DEFENDANTS ATTACK THE SUBPOENAS AS A WHOLE, BUT ONLY PROVIDE ARGUMENT CONCERNING 1 OF THE 12 REQUESTED CATEGORIES OF DOCUMENTS. ALL 12 CATEGORIES ARE RELEVANT AND PROPERLY WITHIN THE SCOPE OF DISCOVERY.

It is within the Court's discretion to enter an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c); *Auto-Owners*, 231 F.R.D. at 429. "The party seeking a protective order has the burden to demonstrate good cause, and must make 'a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements' supporting the need for a protective order." *Auto-Owners*, 231 F.R.D. at 429-30 (citing *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). Defendants Motion sets forth only conclusory statements and stereotypes to counteract what Defendants perceive as a "shotgun approach to discovery." Such a showing falls drastically short of that required for the Court to grant relief under Rule 26. Moreover, as explained above, Thornton does not object to maintaining the confidentiality of any documents produced from third-party playhouses in response to these

subpoenas. Defendants' decision to move the Court to act, even in the face of the agreed upon Protective Order, is not cause for the Court to limit the subpoenas as served.

Defendants couch their argument as directed to requests 1, 8, 9, 10, 11 and 12 in the third-party subpoenas. However, only request 12 seeks information concerning revenue derived from the Musical at the playhouse. Defendants do not point out that request 12 concerns the playhouses' revenue, and **not** the Defendants' revenue. As the Defendants are a party to this litigation, Thornton has requested such information directly from Defendants. Defendants improper choice to withhold this information in discovery is not grounds for preventing the playhouses from responding to the subpoenas.

Defendants only specifically mention requests 1, 8, 9, 10, 11 and 12. Request No. 1 seeks: "All executed agreements, contracts, letters of intent, or letters of understanding between You and Defendants." There can be no reasonable question that such a request is relevant, and reasonably calculated to lead to discoverable information. For instance, these contracts will contain provisions governing the relationships between the two entities, including who is responsible for the content and distribution of the programs. Defendants do not specifically and particularly point out how this request is improper, because Defendants know that Request No. 1 is properly served in the subpoenas.

Request No. 8 seeks: "All Communications and Documents exchanged between or among You and Defendants, including any employees, affiliates, agents, independent contractors or others Associated With any of those entities." As above, there can be no reasonable question that such communications and documents are reasonably calculated to lead to discoverable information. Just as discussed above, Defendants and the playhouses

may have exchanged documents concerning what information should be displayed in the programs, and how the advertising areas within the program will be sold.  Again, Defendants do not specifically and particularly point out how this request is improper, because Defendants know that Request No. 8 is properly served in the subpoenas.

Requests 9, 10 and 11 seek information concerning the number of times the Musical was performed at the playhouses, how many tickets were sold, and how many patrons attended, respectively.  This information is directly tied to how many infringing copies of the Test were produced.  Again, Defendants do not have a reasonable argument that this information should not be subject to discovery.

Finally, Request 12 seeks: "Documents sufficient to show all revenue derived from the Musical at Your Playhouse, including ticket sales, merchandise revenue, and other incidental revenue."  As explained below, this request is proper, and reasonably calculated to lead to admissible evidence.

### 1. *Thornton Is Entitled To Defendants' Profits And Thornton's Actual Damages.*

The copyright statute makes available two categories of compensatory damages: (1) the infringers profits; and (2) the copyright owner's actual damages.  17 U.S.C. § 504(b).[3] Section 504(b) provides:

> **Actual damages and profits**.  The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her

---

[3] 17 U.S.C. § 504 gives copyright owners a choice between actual damages combined with the infringer's profits (§ 504(b)) or statutory damages (§ 504(c)).  This discussion relates only to section 504(b).

deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

These damages are available to copyright holders to further two distinct purposes. "Damages are awarded to compensate the copyright owner for his losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act." Patry on Copyright § 22:98, citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 143 to 144 (1975).   Both categories of damages are necessary to prevent wholesale theft of protected works.   Thornton, as the original author and copyright owner, is entitled to actual damages for Defendants' theft. Furthermore, copyright infringers, such as Defendants, must be deterred from the wrongful act of copyright infringement.   Thus, the infringer must be disgorged of its profits.

Defendants misapply copyright law with respect to damages.   At the outset, it is important to note that the authority Defendants rely upon for its flawed view of copyright damages come from cases decided at the summary judgment stage, and certainly do not support Defendants attempt to limit discovery.   Furthermore, Defendants rely upon a non-binding, non-published decisions from another Circuit for the flawed proposition that Defendants' revenues are not relevant to this copyright infringement action.   Respectfully, Defendants have misconstrued the law.

   **2.  *Thornton's Copyrighted Test Is Part Of The Playgoing Experience, Which Is What Defendants' Patrons Have Purchased.***

Recovering an infringer's profits in a copyright infringement case is a two-step process, wherein the burden begins with the copyright holder, but shifts to the copyright infringer.   First, the copyright holder "need only present evidence of the gross revenue of the

infringer." *Oravec v. Sunny Isles Luxury Ventures L.C.*, 496 F.Supp.2d 1148, 1175 (S.D. Fla. 2006) (citing 17 U.S.C. § 504(b)). Then, the burden shifts to the defendant "to establish their expenses and the elements of profit attributable to factors other than the copyrighted work." *Id*. (internal quotation and citation omitted).

The plaintiff must offer some reasonable connection between the infringement and the defendant's profits. *See Bouchat v. Baltimore Ravents Football Club, Inc.*, 346 F.3d 514, 521 (4th Cir. 2003); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001). In *On Davis*, the court provided the following illustrative example:

> If a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc. In our view, the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem. The publisher would then bear the burden of proving its costs attributable to the anthology and the extent to which its profits from the sale of the anthology were attributable to factors other than the infringing poem, including particularly the other poems contained in the volume.

*On Davis,* 245 F.3d at 152. In *Oravec,* the copyright at issue concerned plaintiff's architectural designs allegedly used without permission in the construction of twin luxury condominium towers. *Oravec*, 469 F.Supp.2d at 1151. The plaintiff had put forth evidence concerning defendants' total revenues from the sales of the infringing buildings. *Id*. at 1175. The court agreed that this was proper under copyright law and stated:

> While the allegedly infringing exterior design may only contribute to a portion of Defendants overall revenue from sales of the building, there is no doubt that the exterior design is so interwoven with the building as a whole that, like the anthology which contains the infringing poem [as discussed in *On Davis*], sale of the building amounts to sale of the infringing design in a way to meet the needed 'conceivable connection' standard of *Bouchat*.

*Id.* at 1175-76.

Contrary to Defendants' position, there is a strong causal connection between the Defendants' infringing reproduction of the Test and revenue generated from the play. It is not a matter of coincidence that Thornton's Test was selected by Defendants for inclusion in their program. Rather, the contents of the Test directly tie-in to the contents of the Musical, and enhance the audience's experience before, during and after the performance. It is common in the performing arts to distribute programs such as those distributed by the Defendants. Defendants patrons expected to be entertained not only by the musical performance, but by the entire experience when they purchased their tickets to the Musical. Defendants' patrons paid for the entertainment experience, and part of that revenue is attributable to Thornton's Test.

The Musical features actors who are baby boomers, the music of baby boomers, issues unique to baby boomers, and now, thanks to Thornton, a Test to determine if you are a baby boomer. Without question, the infringing reproduction of the Test helps create the overall baby boomer experience at the Musical. It is this baby boomer experience that Defendants' patrons have paid for and this experience will lead patrons to recommend the play to other baby boomers. Defendants have profited off of their illegal use of the Test, and the copyright laws properly insist that such wrongful acts be discouraged. The copyright laws require Thorton present evidence of the Defendants' revenue, to which Defendants must respond by apportioning what revenues are not attributable to Defendants' illegal use of the Test.

### 3. A Reasonable License Is A Proper Means For Determining Thornton's Actual Damages.

Thornton is also entitled to his actual damages. The courts have consistently held that a reasonable license is one proper way for determining the copyright owner's "actual damages." *See e.g. On Davis,* 246 F.3d at 164. *See also Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Information concerning the success of the Musical at various playhouses is certainly relevant and likely to lead to discoverable information concerning a reasonable licensing fee.

For instance, in *On Davis*, the copyright holder plaintiff had previously licensed the use of his copyrighted image. *On Davis*, 246 F.3d at 161. The Second Circuit reversed **summary judgment** granted in favor of the defendant on the basis that a reasonable jury could find the plaintiff's previous sale was the fair market value for licensing the plaintiff's work, and thus a good measure of the plaintiff's actual damages. *Id.*

Defendants' argument ignores the foundation and purposes for allowing damages for copyright infringement: (1) compensating a copyright owner for his loss; and (2) preventing copyright infringers from unfairly benefiting from a wrongful act. Defendants focus only on the latter objective of disgorging its profits, but entirely ignore the main thrust behind copyright – protecting works of authorship. Without considering both purposes, copyright protection would become only a "right without a remedy." *Business Trends Analysts, Inc. v. Freedom Group, Inc.*, 887 F.2d 399, 406 (2d Cir. 1989). *See also* 4 Nimmer on Copyright § 14.02.

Information on the success of the Musical aids in an analysis of a reasonable license. Defendants meaningless description of the Test as a "one page filler item" notwithstanding, the programs distributed at the Musical, as is typical at such performances, contain significant amounts of advertising. If the Test serves only as a "one page filler item," that is one page less advertising revenue. Put another way, one way to measure a licensing fee for this Test is the amount charged for a full page advertisement published in one of Defendants' programs. Like all advertising, the more people that will view the ad, the more valuable the space for presenting the ad becomes. It is not a matter of coincidence that National Football League Superbowl advertising demands more revenue dollars than airtime sold to advertisers in off-peak hours. Similarly, when Defendants' Musical is performed to sell-out crowds in large arenas, wherein all parties involve generate significant revenue, "one page filler items" become more valuable.

CONCLUSION

Defendants improperly try to limit the scope of discovery and have provided no adequate justification for doing so. Defendants contacted each third party subpoenaed, and not-so-subtly suggested the subpoenaed playhouses refuse to respond to the subpoenas. Not satisfied that these independent entities, with legal counsel of their own, did not take up Defendants' "suggestion," Defendants bring the current motion. As explained above, Defendants do not have standing to pursue the relief they request. Moreover, such relief is entirely unnecessary, as Rule 45(c) and the already agreed upon Protective Order sufficiently weigh against whatever concerns Defendants may have with regards to the sought-after

discovery.   Finally, the sought-after information is well within the scope of discovery provided by Rule 26.   Defendants' Motion should be denied in its entirety.

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2007 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: G. Donovan Conwell, Jr., G. Wrede Kirkpatrick, Conwell, Sukhia & Kirkpatrick, P.A., 2701 N. Rocky Point Drive, Suite 1200, Tampa, FL 33607.

Respectfully submitted,

/s/Michael J. Colitz, III
William F. Hamilton
Trial Counsel
Florida Bar No. 379875
Stefan V. Stein
Florida Bar No. 300527
Michael J. Colitz, III
Florida Bar No. 164348
Holland & Knight LLP
100 N. Tampa Street
Suite 4100
Tampa, FL 33601-3644
Tel: 813/227-8500 Fax: 813/229-0134
william.hamilton@hklaw.com
stefan.stein@hklaw.com
michael.colitz@hklaw.com
ATTORNEYS FOR PLAINTIFF

# 4445961_v1