**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOHN J. THORNTON,
(d/b/a Baby Boomer Headquarters)
an individual

        Plaintiff,

vs.                                 CASE NO.:  8:06-cv-01640

J. JARGON CO.,
a Florida Corporation, and

JEANETTE C. LINDERS,
an individual,

        Defendants.

_____/

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**
**INTERROGATORY ANSWERS AND DOCUMENT PRODUCTION**
**AND MEMORANDUM OF LAW IN SUPPORT**

Defendants J. Jargon Co. and Jeannette C. Linders (collectively, "Defendants") hereby oppose Plaintiff's Motion to Compel Interrogatory Answers and Document Production and Memorandum of Law in Support [Dkt. 45].  Plaintiff cannot show that the discovery sought is reasonably calculated to lead to the discovery of admissible evidence under any theory of liability or damages.  Thus the court should deny Plaintiff's motion and instead issue a protective order pursuant to Rule 37(a)(4)(B) relieving Defendants from providing any of the requested financial or contractual documents concerning *Menopause the Musical* (the "Musical").

**BACKGROUND**

Defendant Linders is the author of the Musical.  In this copyright infringement action,

Plaintiff does not allege or even contend that the Musical in any way infringes his alleged work. Rather, Plaintiff alleges that the program or Playbill distributed free of charge at two productions of the Musical included a simple, one page, fact intensive "Age Test" Plaintiff claims to have authored. *See* Compl. Ex. A. including biographical information about and photographs of the performers, author, and production staff, lyrics to the songs performed during the Musical so as to encourage patrons to sing along, and credits to the various entities that contributed to the production of the Musical. The majority of the content of the programs is mandated by the rules of the performers' unions. Linders Decl. ¶ 4. A true and correct copy of two sample programs already produced – one with and one without the "Age Test" – are attached hereto as Exhibit A.

Using a shotgun approach to discovery, Plaintiff seeks sensitive and voluminous financial documents from Defendants – essentially Defendants' entire financial history (either indefinitely or since 1997) and every single scrap of paper in support thereof. The vast majority of the documents sought, however, do not concern the subject matter of this litigation – namely, the programs and whether or not the Age Test was included in them. Rather, Plaintiff seeks facially irrelevant and overbroad discovery concerning the financial success of the admittedly non-infringing Musical. Plaintiff cannot show any relationship between the profits of the Musical and the single page of filler in the programs, and thus all discovery of information regarding indirect damages exceeds the scope of discovery permitted under Rule 26. The Plaintiff's motion therefore should be denied.

Moreover, Plaintiff has multiplied the expenses of this proceeding by twice failing to follow the local rules. Defendant had prepared and was about to file an extensive reply to

Plaintiff's initial Motion to Compel [Dkt. 40], arguing in part Plaintiff's disregard of Local Rule 3.04(a), when the Court denied the motion based upon that non-compliance. The instant Motion [Dkt. 45] now includes arguments that Plaintiff never raised in its pre-filing communications with Defendants, and thus fails to meet the burden of Local Rule 3.01(g).

## ARGUMENT

"The party seeking production must demonstrate that the request is relevant, *i.e.*, calculated to lead to admissible evidence." *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla. 1990). Plaintiff failed to meet this basic burden in its initial motion, and in the present motion relies on one-sentence, conclusory arguments for the majority of the requests, unsupported by any legal analysis.[1] As to the arguments Plaintiff does make, as demonstrated below those arguments fail, and the discovery should be denied.

**I.      PLAINTIFF CANNOT SHOW THAT DEFENDANTS' REVENUES FROM PERFORMANCES OF THE MUSICAL ARE WITHIN THE BOUNDS OF RULE 26, AND THE BURDEN OF PRODUCTION FAR EXCEEDS ANY MARGINAL USEFULNESS OF THE INFORMATION SOUGHT.**

As a matter of law, the burdensome discovery of the profits of the Musical and other sensitive financial documents is utterly irrelevant to any reasonable theory of damages, and thus beyond the scope of discovery. Even under the broadest possible view of the scope of discovery, Plaintiff's propounded discovery "regarding financial matters is grossly overbroad and irrelevant." *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005)(refusing to allow discovery of financial documents where there has been no showing of their relevance).

---

[1] Thus, the requests to compel answers to Requests for Production 12, 13, 14, 35, 36, and 40 should be denied for this reason alone.

Under the Copyright Act, the Plaintiff could recover as damages its actual damages and any additional "profits of the infringer *that are attributable to the infringement*." 17 U.S.C. § 504(b) (emphasis added). Courts have held that this formulation is broad enough to permit recovery of both "'direct profits' – those that are generated by selling the infringing product – and 'indirect profits' – revenue that has a more attenuated nexus to the infringement." *Mackie v. Reiser*, 296 F.3d 909, 919 (9th Cir. 2002). There is no right to recover (and therefore obtain discovery about) profits that have *no nexus whatsoever* to the alleged infringement. Given this legal framework, the motion to compel further answers to Interrogatory 1 and document requests 15, 16, 29, 31, 32, and 37 ("the revenues of the Musical requests") should be denied.

### A. The Profits from the Musical Cannot Be "Attributable to the Infringement" Where the Programs – Whether or Not they Included the Age Test – Can Not Have Any Bearing on Consumers' Decisions to Purchase Tickets or Related Merchandise.

The revenues of the Musical requests seek the production of documents which have no bearing on Plaintiff's actual damages, nor do they have any bearing on "profits of the infringer *that are attributable to the infringement*."[2] *Id.* The alleged infringement is not directly related to the profits of the Musical, and there is no causal connection to the profits of the musical to support an award of indirect profits. Simply put, it is "beyond conception" that the choice of a theatergoer to purchase tickets to and attend a performance of the Musical "could conceivably be affected" by the presence or absence of the Age Test in the free program. *See Bouchat v. Baltimore Ravens, Inc.*, 215 F.Supp. 611, 620 (D. Md.

---

[2] Defendants have already produced, as DEF 1008-1009, documents sufficient to show the gross revenue attributable to the programs themselves (due to sales of advertisements). Those gross revenues total $46,450. Defendants ceased soliciting advertisements for the programs of the shows they produced because such advertisements were not profitable.

2002)(granting summary judgment to defendant on damages issues). The Musical's profits from ticket sales, souvenirs, t-shirts, soundtracks, and other items is not remotely affected by a one-page filler item in the free program given out *after* tickets have been purchased, as patrons take their seats at the performance.

### 1. There is No Conceivable Relationship Between the Discovery Requests and the Alleged Infringement.

Courts routinely and correctly limit the damages inquiry – at both the proof and discovery stages – to profits of the alleged infringer that are reasonably related to the alleged infringement. For example, in *Bouchat*, an artist sued a professional sports team, and proved that the sports team's designers had relied upon the plaintiff's copyrighted sketch in designing the team's adopted Flying B logo. 215 F.Supp.2d at 620. In considering the issue of damages, the Ravens sought partial summary judgment that its gross revenues related to sponsorships, broadcast and other media licenses, ticket sales, and general business revenues were not reasonably related to the infringement.

The district court granted defendant's motion, holding that it was "*beyond conception* that a decision to obtain a personal seat license, a season ticket, a game ticket, a stadium parking space or a hot dog at half time could conceivably be affected by whether the tickets, the players' uniform, the flags in the parking lot or the hot dog stand displayed the Flying B logo." *Id.* (emphasis added). Notably, the court did not rely upon defendant's proffered affidavits with regard to the role of the logo in generating certain categories of income, but rather held that there is no "logical argument" that "could cause a reasonable person to find that certain of the Defendants' categories of revenue (and thus profits) could be attributable to the infringement of Plaintiff's copyrighted work." *Id.* at 620. The Fourth Circuit Court of

Appeals affirmed the decision, noting that the affidavits "merely confirm what ordinary experience would otherwise seem to render apparent." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 n.10 (4th Cir. 2003).

Here, the factual situation is nearly identical: No logical argument exists that theater patrons' decisions to purchase tickets or merchandise related to the Musical is in any way caused by or attributable to the presence or absence of the Age Test in the free program (or is in any way affected by the program at all). Theatergoers do not know the contents of the free program until well after they have made the decision to purchase tickets and attend a performance of the Musical. Therefore, common sense dictates that those categories of revenue, like ticket and merchandise sales, which in no way relate to any alleged infringement are beyond the scope of permissible discovery.

**2. Plaintiff Has Failed to Show, and the Requested Discovery Will Not Aid Him in Showing, the Causal Nexus Required to Include Indirect Profits in any Damages Calculation.**

Similarly, in *Burns v. Imagine Films Entertainment, Inc.*, No. 92-CV-2438, 2001 WL 34059379 (W.D. N.Y. Aug. 23, 2001), plaintiff sued Universal Studios for its role in producing the movie *Backdraft*, which the Court previously held infringed plaintiff's copyright. In considering the issue of damages, the court held that evidence of the defendant's revenue relating to the *Backdraft* attraction at the Universal Studios' theme park was irrelevant and not a proper measure of damages. Like the Musical at issue here, the court in *Burns* noted that "the *Backdraft* attraction itself contains no infringing materials" and was thus a *non-infringing enterprise*. *Id.* at * 4. The district court held:

> To recover profits from a non-infringing enterprise, a copyright holder must prove a <u>*causal nexus*</u> between infringement of his

> work and the profits, and must accurately calculate the portion
> of the profits attributable to infringement. *Frank Music Corp.
> v. Metro-Goldwyn-Mayer, Inc.,* 886 F.2d 1545, 1553-54 (9th
> Cir.1989).… Plaintiffs have not offered any reasonably
> accurate method of calculating profits from the theme park that
> are attributable to infringements in the film. Plaintiffs concede
> that the appeal of the *"Backdraft* attraction" is largely due to
> recreation of the film's special effects and not to the
> screenplay. Also, *"Backdraft"* is only one of several attractions
> at the theme park. As Defendants point out, if there were no
> *"Backdraft* attraction," there likely would be an attraction
> based on another Universal film in its place. Plaintiffs would
> have to accurately calculate how many people (a) went to the
> park because of *"Backdraft"* and (b) would not have gone if it
> had a different attraction. They have presented no viable
> method of making this calculation. Thus, although the theme
> park may have reaped some "marginal benefit" from infringing
> elements in the film *Backdraft,* the percentage of such profits
> attributable to Plaintiffs "is too speculative and the relationship
> between such profits and infringement is too attenuated" to
> justify an award of indirect damages from theme park profits.
> *Frank Music,* 886 F.2d at 1554.

*Id.* at *4 (emphasis added). Similar to the *Burns* plaintiff, Plaintiff here cannot show any

non-speculative method of calculating profits attributable to the presence of the Age Test in

the free program. Plaintiff has not made any colorable argument that theatergoers attend the

Musical because of a one page filler in the program, which *they could not have known about*

*at the time that the tickets for the Musical were purchased.* Since the theater patron had no

knowledge of the content of the program when purchasing tickets, any revenue that the

Defendants' made as a result of its ticket sales is too speculative and attenuated to be

recoverable, as a matter of law.

Most compellingly, the Ninth circuit in *Mackie v. Reiser*, 296 F.3d 909 (9th Cir.

2002) held that a plaintiff could not show any direct link between the allegedly infringing use

of a photograph of plaintiff's sculpture in an advertisement for a symphony's ticket

subscriptions and defendants' ticket sales. Even in the face of evidence showing that the defendant intended to get a specific return rate of subscriptions from the allegedly infringing direct mailing, the court held that there was no correlation between the intended return rate and the infringement because there was no way to show that the single page in the brochure that contained plaintiff's work was the reason people bought tickets. *Id.* at 916. The court explained that "the thread is even more attenuated because the artwork was but one page in a multi-page brochure that advertised a series of concerts that were unrelated to the artwork itself," concluding that "rank speculation" simply cannot support a plaintiff's seeking indirect profits from a marketing brochure.

The program at issue in this case is even more far removed from ticket sales than the publication at issue in *Mackie*. As in *Mackie*, the alleged infringement here is but one page in a multi-page program, for which patrons were never charged. But unlike the symphony marketing in *Mackie*, the programs in this case were not distributed in advance of ticket sales in order to entice ticket sales. If a single page of a multiple page *solicitation to purchase tickets* is too far removed from ticket sales profits to warrant delving into the defendant's indirect profits from ticket sales, then certainly a single page of a multiple page *post-purchase program* cannot in any way generate profits attributable to the alleged infringement as required by the statute.

### 3. Obvious Fishing Expeditions Like this One Should Be Cut Off at the Discovery Phase.

Courts have not hesitated to prohibit overly broad fishing expeditions in discovery such as this one. In *Compaq Computer Corp. v. Ergonome Inc.*, No. Civ.A. H-97-1026, 2001 WL 34104827 at *2 (S.D.Tex., June 27, 2001), the district court refused to compel the

requested financial information on facts very similar to the case at bar.  In *Compaq*, Plaintiff Ergonome sought to prove that Compaq's *Safety and Comfort Guides*, which were "included with other materials usually provided to purchasers of Compaq's computers," had infringed its copyright in a handbook on keyboard ergonomics.  *See Compaq Computer Corp. v. Ergonome Inc.,* 137 F.Supp.2d 768, 770 (S.D.Tex. 2001)(setting out facts pertinent to dispute).  Ergonome sought discovery of Compaq's gross revenues "related to the number of computers sold during the relevant time period."  *Compaq*, 2001 WL 34104827 at *2.  The court, relying in part on *On Davis v. The Gap, Inc.,* 246 F.3d 152, 160 (2d Cir. 2001), explained that "the term 'gross revenue' under the statute means *gross revenue reasonably related to the infringement*, not unrelated revenues," and held that "[t]he ancillary nature of the book, relative to the sale of the computers themselves, is irrefutable."  *Compaq*, 2001 WL 34104827 at *2 (emphasis added).

The *Compaq* court held that "Ergonome's request for information on Compaq's gross revenues relating to all computers sold is overbroad because the record does not indicate to what extent, if any, Compaq's gross revenues on computers were "reasonably related" to its alleged infringement of *The HAND Book.*"  *Compaq*, 2001 WL 34104827 at *2.  The court noted that the Plaintiff's theory of damages – which would have allowed plaintiff to proffer to the jury Compaq's gross revenues for every computer purchased with the allegedly infringing ergonomics booklet – "defies logic, and … defies any interpretation of 17 U.S.C. § 504(b) that contemplates a reasonable relationship between an infringer's gross revenues and its infringement."  *Id.* at *3.  Moreover, the district court found when denying

Ergonome's motion to compel that, "Compaq is not on trial for the number of computers it has sold; ergo, its potential liability may not rest on that mathematical root alone." *Id.*

The court in *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F.Supp.2d 923, 926 (N.D.Ill. 2003) similarly refused to compel answers to overbroad discovery requests seeking information about aspects of a defendant's operations that were clearly not related to the alleged infringement. In *Ocean Atlantic*, the defendant was accused of infringing plaintiff's copyright in a single set of building plans. In denying the plaintiff's motion to compel, the court explained that "[r]ather than limit its discovery requests to the development site at issue, the site being developed under the copyrighted plan, Ocean Atlantic's interrogatories and production requests seek all of the defendants' financial records relating to their entire business and professional activities." *Id.* The court held that the requested discovery was "extraordinarily broad in scope," concluding that the request for "production of virtually the entirety of defendants' business books and records relating to all of its projects could not lead to any admissible evidence" and the unreasonable time period for which the information was sought "was so vexatious and unreasonable that it multiplied the proceedings and was aimed at creating excessive costs for defendants" and "[p]ure and simple, it was designed to harass the defendants." *Id.* at 927.

Given this strong legal and factual background, it is clear that none of the profits of the Musical could possibly be attributed to the presence of the Age Test in the free program. Defendants should not be required to undertake the excessive discovery costs of providing discovery of financial documents related to "production of virtually the entirety of defendants' business books and records relating to all of its projects" when such data "could

not lead to any admissible evidence." *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F.Supp.2d 923, 926 (N.D.Ill. 2003).

**B.     Profits from Performances of the Musical Where the Age Test Was Not Included in the Program Cannot Possibly be "Attributable to the Infringement."**

Plaintiff's requests in this case are even more far-reaching than those that the court properly refused to compel in *Compaq* since the Age Test was not included in every program for every performance of the Musical.   In *Compaq*, at least all computers sold in the requested time period actually included in the packaging the allegedly infringed work.  Here, as set forth in Defendants' answer to Interrogatory 1, the Age Test was not included in the program for every run of the Musical – in fact, at almost half of the theaters that featured the Musical, the program did not include the Age Test.  Thus, requests 12, 13, 14, 15, 16, 29, 31, 32, 35, 36, 37 are all overbroad because they seek documents related to <u>all</u> of the programs (Requests 12, 13) and <u>all</u> performances of the Musical (Requests 14, 15, 16, 29, 35, 36, 37), and indeed, <u>all</u> monies earned by Defendants whether or not those monies are related even to the *Musical*, much less the programs (Requests 31, 32).[3]  Plaintiff's claims that its responses are narrowly tailored to seek "only gross revenue stemming from its Musical" can only be correct if nearly every piece of paper that has anything to do with Defendants' financial dealings for a non-infringing enterprise can be considered "narrow."  Thus, as in *Ocean Atlantic*, requests for documents related to any financial records of the Musical for theater

---

[3] Indeed, the request for all tax returns is against public policy, and Plaintiff has made no attempt to make the required showing to overcome the policy presumption.  *See Cooper v. Hallgarten & Co.,* 34 F.R.D. 482; 483-84 (S.D.N.Y.1964) (there is a public policy against their disclosure unless (1) it clearly appears that they are relevant to the subject matter of the action, and (2) a compelling need is shown because the information contained therein is not otherwise available).

runs in which the Age Test was not included "could not lead to any admissible evidence" and should be denied.

## II. LICENSES AND LICENSE FEES PAID BY DEFENDANTS FOR UNRELATED WORKS ARE NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

Thornton argues, citing only the *On Davis* decision which minimizes elsewhere in his brief as *"non binding,"* that he is entitled to compel production of all "Documents evidencing or referring or relating to any licensing agreement between Defendants and any third parties, including without limitation licensing agreements between Defendants and any other copyright owners" (Document Request 17) and "Documents sufficient to show Your licensing expenses related to the Musical for each year from 1997 through the present." (Document Requests 30). Thornton's sole argument in support of his motion to compel is that such information is relevant to determining what a reasonable license fee might be for his own work. Defendants should be protected from these overbroad and extremely burdensome discovery requests because evidence of the terms under which Defendants licensed unrelated intellectual property or other matters have no bearing on the fair market value of Plaintiff's alleged work.

As an initial matter, Plaintiff is once again attempting to discover irrelevant matters concerning the Musical and other aspects of Defendants' business (and in Miss Linders' case, personal) dealings, instead of directing his discovery to the allegedly infringing programs. Request 17 asks for document "evidencing, referring or relating to any licensing agreements between Defendants and any third parties." The over breadth of this request is staggering: its sweep can be fairly read to include agreements related to Defendants' other businesses

(which Plaintiff admits at 23 is not relevant to the dispute at hand), and even the license agreement for every piece of software in Defendant Linder's home and office, with no time limitation whatsoever. Request 30 for "licensing expenses related to the Musical" is similarly overbroad and unduly burdensome. As explained in detail above, the gross profits of the Musical are not at all related to the alleged infringement – if such profits are not a basis for damages, then clearly neither are the expenses.

In *On Davis*, the Second Circuit held that "actual damages" may include, in some instances, "damages corresponding to the fair market value of the use appropriated by the infringer." *On Davis*, 246 F.3d at 164. The *On Davis* court held that the determination of that fair market value cannot be based purely on "undue speculation," and "[i]n order to make out his claim that he has suffered actual damage because of the infringer's failure to pay the fee, *the owner must show that the thing taken had a fair market value*."[4] *Id.* at 166 (emphasis added). The test of that fair market value is what "a willing buyer and a willing seller would have agreed *for the use taken by the infringer*." *Id.* at 167 (emphasis added). The *On Davis* court looked specifically at prior license fees *the plaintiff had charged* for a similar use of his work in determining that there was possible evidence to support a determination of fair market value for the use. *Id.* at 161. Holding that the request for $2.5 million in actual damages was "wildly inflated," the court noted that the plaintiff's own testimony as to prior license fees of $50 was the only possible basis for determining a reasonable license fee found in the record. *Id.* Other courts applying the reasonable license fee theory of actual damages have likewise looked solely to what the Plaintiff had previously

---

[4] Notably, in his own discovery responses, Thornton has admitted that he does not have any actual or proposed license agreements regarding the Age Test. Responses to Document Requests 10 and 11.

charged in licensing to determine "that the thing taken had a fair market value."  *See, e.g., Baker v. Urban Outfitters, Inc.*, 254 F.Supp.2d 346, (S.D.N.Y. 2003)(looking at plaintiff's prior licensing to determine fair market value under the *On Davis* test).

Had there been a hypothetical fair market valuation, Plaintiff would not have the benefit of knowing the intimate contractual details of every single licensing agreement Defendants had ever entered into for non-infringing ventures in setting his price.  Most courts to consider the issue have held that key to the willing buyer/willing seller analysis is that the comparison uses must be the same as the allegedly infringing use.  *See, e.g., Country Road Music, Inc. v. MP3.com, Inc.*, 279 F.Supp. 2d 325, 331 (S.D.N.Y. 2003)(explaining the "error of beginning with a benchmark license for a use different from that made by the infringer"); *Trell v. Marlee Electronics Corp.,* 912 F.2d 1443, 1446-47 (Fed.Cir.1990)("'[A] particular fee is not the correct measure of damages unless that which is provided ... to [the] licensees for that fee is commensurate with that which the defendant has appropriated'"); *Baker v. Urban Outfitters, Inc.,* 254 F.Supp.2d 346, 354 (S.D.N.Y.2003) (rejecting expert testimony based on commissioned photography where defendant infringed a stock photograph); *Bi-Rite v. Button Master,* 578 F.Supp. 59, 60 (S.D.N.Y.1983) (declining to rely, for purposes of calculating a hypothetical license, on a one-year exclusive licenses where defendant's use was consistent with a non-exclusive license and lasted only six weeks).   Licenses that Defendants may have entered into with other entities with regard to the Musical or their other ventures are simply not comparable, and therefore not relevant or reasonably calculated to lead to the discovery of admissible evidence.

If what Defendants have licensed from others has any relevance at all, the only possibly discoverable material would be license agreements and/or license expenses paid with regard to *items published in the programs*. Construing Plaintiffs' request as so narrowed, Defendants do not have any responsive documents because there is only one such agreement, and that agreement was never reduced to writing. Defendant Linders has an agreement with Dee Adams, the proprietor of www.minnipauz.com and author of the Minnie Pauz comic strip series, to include *gratis* in the programs, whenever filler material is needed, a Minnie Pauz comic. Linders Decl. ¶ 6.

## III. THE STATUTE OF LIMITATIONS HAS RUN ON ALLEGED INFRINGEMENT OCCURRING MORE THAN THREE YEARS BEFORE PLAINTIFF FILED SUIT AND THUS DISCOVERY OF MATERIALS OLDER THAN THREE YEARS SHOULD BE DENIED.

As an initial matter, Plaintiff never raised the issue of discovery of pre-2003 materials prior to the filing of the instant motion, in violation of its requirement to confer in order to narrow the issues. This is sufficient reason to deny Plaintiff's motion to compel pre-2003 materials as to Interrogatories 1, 3, and Requests for Production 30, 31, 32, 35, 36, and 37.

The Copyright statute of limitations states that "no civil action shall be maintained…unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507. The statute does not explain when a copyright infringement claim is deemed to have "accrued" and courts have split as to whether accrual occurs upon *commencement* of the infringement (the "injury rule") or *discovery* of the infringement ("the discovery rule"). The Eleventh Circuit has never decided the issue of accrual of a civil copyright claim, and the few Middle District cases to set a rule for accrual do so without analysis, simply quoting older out-of-circuit precedent. The most recent cases to actually explore the accrual issue,

applying recent Supreme Court precedent, have held that Congress intended "accrual" to mean upon commencement of the infringement, unless tolled by equitable considerations. See, e.g., *Roberts v. Keith*, 2006 WL 547252 (S.D.N.Y. March 7, 2006); *Auscape Intern. v. National Geographic Soc.*, 409 F.Supp.2d 235 (S.D.N.Y. 2004).

In *Auscape,* the court traced back the origins of the discovery rule and determined that the original cases so holding had since been overruled by the Supreme Court in *TRW v. Andrews*, 534 U.S. 19 (2001). In *TRW*, the Supreme Court held that in determining whether federal statutes of limitations should be subject to a discovery rule or injury rule, courts must look beyond the specific language of a statute to its text and structure in determining what rule should apply when the statute is silent, rather than automatically applying a discovery rule. The *Auscape* court then examined the text of § 507, determined it was not clear, and so turned to the legislative history to conclude that Congress intended accrual to occur upon injury, absent application of tolling due to fraudulent concealment of the claims or other equitable tolling bases. *Auscape*, 409 F.Supp.2d at 244-49. Prior to enactment of § 507, the courts applied state statutes of limitations to copyright infringement actions, which had resulted in a great deal of uncertainty as to timelines. *Id.* Congress enacted § 507 to bring certainty to the arena of copyright litigation, and there can be no certainty if accrual is dependent on the actions of the plaintiff rather than the actions of the alleged infringer. *Id.*

Plaintiff's argument that Defendant had no reasonable basis to withhold materials outside of the statute of limitations based upon counsel's positions taken on behalf of Tingley in *Tingley Systems Inc. v. Healthlink, Inc.*, No. 8:05-CV-1936, 2007 WL 1365336 (M.D.Fla. May 8, 2007) is without merit. In *Tingley*, the parties were involved in a long-standing

software licensing arrangement, and the plaintiff discovered in the course of re-licensing negotiations that defendant had hidden the fact that it was using the software in violation of the existing license by exceeding the user limits in that license. Defendants argued that plaintiffs were put on notice of the infringement in 1991, when it allegedly sent a letter repudiating any user license, whereas plaintiff maintained that defendant never sent that letter and instead had *concealed* its infringement until just before suit was filed.[5] The court did not rule on the issue of commencement versus discovery accrual (nor did the parties brief the issue) – it merely held that there was a disputed issue of material fact that precluded summary judgment on the issue of whether defendants sent the 1991 letter.

## IV.   THE BURDEN OF PRODUCTION FAR OUTWEIGHS ITS RELEVANCE.

A party resisting discovery "must demonstrate to the court 'that the requested documents [information] either do not come within the broad scope of relevance defined pursuant to Fed.R.Civ.P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Gorber v. City of Leesburg*, 197 F.R.D. 519, 521 (M.D. Fla. 2000)(citation omitted). As amply demonstrated above, the requested discovery is not relevant even under the broadest possible reading of that term.

By contrast, the burden of producing the documents would be great. Plaintiff requests nearly every piece of paper that has anything to do with Defendants' financial dealings for a non-infringing enterprise going back to 1997, which is several years *prior* to

---

[5] Even courts that apply the injury rule agree that concealment of infringement may be a basis for tolling statutes of limitations. *See, e.g.*, *Roberts v. Keith*, 2006 WL 547252 at *4.

the very first performance of the Musical in 2001.[6]  Between the financial and supporting

data and the licensing documents, plaintiff is requesting nearly all of the Defendant's

business records.  Such a sweeping request should not be granted.  See Linders Decl. ¶¶ 7-11.

Moreover, several of the requests seek all or essentially all documents in a given

broad category – see, e.g., requests 12, 13, 14, 15, 16, 17, 31, 32, 34 – and are therefore

overbroad on their face.  Courts in this district have striken as overbroad document requests

that seek "all documents," explaining that a discovery request that "fails to describe the

documents sought with any particularity and requires an individual… to search both his

personal and business records and to produce every company generated document of his

employer that is in his possession, custody or control" would be so broad as to "encompass[]

numerous documents wholly irrelevant to the lawsuit" and thus is on its face unduly

burdensome.  *Schaaf v. SmithKline Beecham Corp.*, No. 3:06-cv-120-J-25TEM, 2006 WL

2246146 at * 2 (M.D. Fla. Aug. 4, 2006).  Moreover, courts in this circuit generally find

requests that are unlimited as to time to be overbroad. *See, e.g., Coker v. Duke & Co., Inc.*,

177 F.R.D. 682, 686 (M.D. Ala. 1998)(finding discovery requests that are unlimited as to

time to be overbroad).

Requests 12, 13, and 14 are overbroad and unduly burdensome as well.  Requiring

Defendants to produce every single document "constituting or referring or relating to

Defendant's advertising, marketing, and/or promotion of the Musical" – essentially, the

remainder of Defendants' business records not already produced in response to the financial

requests – simply because "it is possible such advertising included copies or references to"

_____

[6] The program for the initial performance did not contain the Age Test.

the Age Test is using a shotgun approach when a narrow request would do. Defendants have only printed the Age Test in the free programs. Linders Decl. ¶ 5.

Finally, requests 35 and 36 again seek information about the Musical, rather than the programs. As explained above, these requests are unduly burdensome because their relevance is completely tangential to the alleged infringement.

## V. PLAINTIFFS SHOULD NOT BE AWARDED HIS EXPENSES; INSTEAD DEFENDANTS SHOULD BE AWARDED THEIR EXPENSES IN RESPONDING TO THIS MOTION.

Where, as here, a movant's motion to compel is not substantially justified, the court should enter a protective order and require Plaintiff to pay Defendants' expenses in responding to this Motion. Federal Rule of Civil Procedure 37(a)(4)(B). Here, Plaintiff's motion is not substantially justified for three reasons: (1) even after being given leave to re-file after initially failing to comply with the local rules, the Motion *still* fails to comply with the basic requirements of the local rules, (2) by failing to follow the rules, plaintiff has forced defendants to expend double resources to respond to the motion, and (3) Plaintiff has failed to show that the voluminous requested financial and licensing materials are relevant to any supportable damages theory.

As this Court has stated, "Local Rule 3.01(g), requiring certification of a good faith conference before any discovery motion is filed, is strictly enforced." *New Hampshire Indem. Co. Inc. v. Reid*, 2006 WL 1760624 at *2 (M.D. Fla. 2006). Plaintiff does not meet the rule's burden by making arguments that he did not raise in pre-motion communications (or even the first deficient motion to compel) until the motion itself.

By contrast, Defendants' objections to the discovery requests are "substantially justified" and an award of expenses would be unjust. *See* Federal Rule of Civil Procedure 37(a)(4)(A). If the court were to grant any portion of plaintiff's motion, clearly defendant has strong legal reason to "legitimately and reasonably disagree" *Rates Technology, Inc. v. Elcotel, Inc.*, 118 F.R.D. 133, 135 (M.D.Fla. 1987)(T. Wilson, M.J.)(denying parties' requests for award of fees and expenses in conjunction with motion to compel).

## CONCLUSION

WHEREFORE, this Court should deny Plaintiff's motion to compel answers to interrogatory interrogatory 1 and 3 and requests for production 12, 13, 14, 15, 16, 17, 29, 30, 31, 32, 34, 35, 36, 37 and 40 in their entirety. The Court should instead enter a protective order pursuant to Rule 26(c) protecting Defendants from having to respond further to irrelevant and burdensome discovery.

DATED: June 21, 2007.

By: */s/ G. Donovan Conwell, Jr.*
    G. Donovan Conwell, Jr.
    Florida Bar No. 371319
    G. Wrede Kirkpatrick
    Florida Bar No. 0984116
    Dineen Pashoukos Wasylik
    Florida Bar No. 0191620
    Conwell, Sukhia & Kirkpatrick, P.A.
    2701 N. Rocky Point Drive, Suite 1200
    Tampa, FL 33607
    (813) 282-8000; (813) 282-8800 fax
    dconwell@csklawfirm.com
    wkirkpatrick@csklawfirm.com
    dwasylik@csklawfirm.com
    Counsel for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 21, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **William F. Hamilton, Esq., Stefan V. Stein, Esq., Michael J. Colitz, III, Esq., and Woodrow H. Pollack, Esq.**, Holland & Knight LLP, 100 N. Tampa Street, Suite 4100, Tampa, FL 33602.

*/s/ G. Donovan Conwell, Jr.*
Attorney