# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JOHN J. THORNTON (d/b/a Baby Boomer Headquarters), an individual,**

      **Plaintiff,**

**vs.**                                     **Case No. 8:06-cv-1640-T-27TGW**

**J JARGON CO., a Florida corporation, et al.,**

      **Defendants.**

_____/

## ORDER

**BEFORE THE COURT** are: (1) Plaintiff's Motion for Partial Summary Judgment (Dkt. 67), to which Defendants have responded in opposition (Dkt. 78); (2) Defendants' Amended Motion for Summary Judgment (Dkt. 73), to which Plaintiff has responded in opposition (Dkt. 82); (3) Defendants' Motion in Limine to Exclude the Expert Testimony of Larry Steven Londre and Evidence of Irrelevant Advertising Rates (Dkt. 83), to which Plaintiff has responded in opposition (Dkt. 91); (4) Plaintiff's Motion to Strike the Testimony of Brad Kassner (Dkt. 87), to which Defendants have responded in opposition (Dkt. 92); and (5) Plaintiff's Motion to Strike Defendants' Amended Disclosure of Fact Witnesses and Strike the Testimony of Diana C. Coles (Dkt. 88), to which Defendants have responded in opposition (Dkt. 93).

### *Background*

In this action for copyright infringement, brought pursuant to 17 U.S.C. §§ 101, *et seq.*, Plaintiff alleges that theater programs for "Menopause the Musical" contain an unauthorized reproduction of Plaintiff's copyrighted work, "The Official Baby Boomer Qualifying Exam."

1

Menopause the Musical ("the Musical") has been performed across the country since March 2001. (Am. Compl., Dkt. 42, ¶ 16). Defendant Jeanette Linders ("Linders") is the author of the Musical, Defendant J. Jargon Co. is the holder of rights to the Musical, and Defendant TOC Productions, Inc., ("TOC") is a production company that has produced the Musical at various locations throughout the country. (Dkt. 42, ¶¶ 16-17). Linders is the President of TOC. (Linders Dep. at 63). In the instant motion, Plaintiff seeks summary judgment against Linders and TOC only. (Dkt. 67 at 1, n.1).

In 1996, Plaintiff authored the work at issue, "The Official Baby Boomer Qualifying Exam" (hereinafter, "BBQE"). The BBQE is a twenty-nine question test featuring trivia targeted to members of the "Baby Boom generation," those individuals born between the years of 1946 and 1964. (Pl. Dec. ¶¶ 2, 8, Exh. 3). The BBQE includes questions based on music, movies, television, and other cultural phenomena that, as Plaintiff states, true "Baby Boomers should be able to answer." (Pl. Dec. ¶ 5, Exh. 3). In addition to the twenty-nine questions, the BBQE features a five paragraph essay in which Plaintiff addresses the question "Just what are the qualifications for baby boomer status?" (Pl. Dec. ¶¶ 2, 8, Exh. 3). Plaintiff declares that he located a file containing the BBQE on his computer, dated March 10, 1996. (Pl. Dec. ¶¶ 7-9). Plaintiff also located a file containing an earlier, twenty-seven question version of the BBQE, dated June 9, 1995. (Pl. Dec. ¶ 5, Exh. 1). Both versions contain copyrights on the final line to "Hershel Chicowitz," which is Plaintiff's pen name. (Pl. Dec. ¶¶ 5, 8, Exh. 1 at 4, Exh. 3 at 5).

In June 1997, Plaintiff started a website targeted at baby boomers (www.bbhq.com). (Pl. Dec. ¶ 10). According to Plaintiff, the BBQE is "one of the most popular features of the site." (Pl. Dec. ¶ 10). Certain features of the website are only accessible by paying an annual membership fee. (Pl. Dec. ¶ 10). According to Plaintiff, there are 6,000 subscribers to his free newsletter, 500 people

have an active paid subscription to the website, and he estimates that the website receives 5,000 visits per day.  (Pl. Dec. ¶ 10).

Plaintiff alleges that he has spent "countless hours" addressing unauthorized uses of the BBQE and other copyrighted work on various websites.  (Pl. Dec. ¶¶ 20-21).  Specifically, Plaintiff submits copies of his correspondence to seven alleged infringers relating to unauthorized uses of the BBQE between August 2000 and March 2004. (Pl. Dec. ¶¶ 22-29, Exhs. 9-16).  In addition, in 1995 or 1996, Plaintiff posted the twenty-seven question version of the exam, with its copyright notice, on America OnLine ("AOL") and on a website he maintained through CompuServe.  (Pl. Dec. ¶ 6). Plaintiff declares that "at some point an unauthorized version of the exam was posted on AOL." (Pl. Dec. ¶ 6).  Plaintiff alleges that when he discovered this, he contacted AOL and "had them remove the unauthorized version."  (Pl. Dec. ¶ 6).

Over the weekend of June 9, 2006, Plaintiff attended a performance of the Musical in Tampa, Florida.  (Pl. Dec. ¶ 32).  After returning home from the Musical, Plaintiff noticed that the program that he received for the performance included a page entitled "Take the Age Test," a trivia exam featuring twenty-four fill-in-the-blank questions.  (Pl. Dec. ¶ 32, Exh. 17 at 4).  As discussed in detail below, the "Take the Age Test" (hereinafter, "Age Test") possesses significant similarities to the BBQE.  As a result, Plaintiff contends that the Age Test infringes the BBQE.

At some point that same weekend, Plaintiff visited the Musical's website and completed a form on the website to notify the producers of their allegedly unauthorized use of the BBQE.  (Pl. Dec. ¶ 34).  As a result, Linders sent an email on June 12, 2006 to employees of the production companies for the Musical, in which she wrote: "GOT THIS OVER THE WEEKEND> IF YOU ARE USING THE AGE TEST PLEASE PUT A c BABYBOOMER HQ. (www. bbhq.com) at the

3

end of the age test." (Dkt. 73, Exh. M). The email contains the following version of Plaintiff's communication:

> I am the author of the copyrighted Official Baby Boomer Qualifying Exam -- http://www.bbhq.com/bbexam1.php?caller=intro -- which is printed, nearly word-for-word, as your "Take the Age Test." I wrote that, and other similar trivia quizzes, over a decade ago.
> While I am flattered, I would certainly appreciate it if you would provide an attribution to Baby Boomer HeadQuarters -- WWW.BBHQ.COM in your program (Pl. Dec., Exh. 18).

Plaintiff notes that this version of his communication breaks off mid-sentence and that he would not have typically ended a communication in that manner. (Pl. Dec. ¶ 35).

> Linders also replied directly to Plaintiff:
>
> Dear Hershel,
> Needless to say I don't remember where I found "The Age Test" . . . it was probably on one of those ongoing emails that are group blasted years ago. . . but had there been a copyright noticed attached to it, it would have been included and attributed.
> I will advise the persons who manage our program to do that. And will consider a weblink.
> I hope you enjoyed my show.
> (Pl. Dec., Exh. 19).

Plaintiff responded, in part:

> Jeanie -
> Thanks for your reply. And congrats on your show!
> Yes, that version of my exam has been flying around the Internet for a long time. It never comes with attribution.
> Still, it would seem to me that before one copied and reproduced something of that length, a writer might do some research to find the origin.
> . . . .
> (Pl. Dec., Exh. 20).

Effective August 10, 2006, Plaintiff received a Certificate of Registration for the BBQE. (Pl. Dec., Exh. 6). Plaintiff later received a supplementary Certificate of Registration to correct the "date of first publication" from June 1, 1995 to June 15, 1997. (Pl. Dec. ¶ 14, Exh. 7).

On September 6, 2006, Plaintiff filed this lawsuit, alleging a single claim for copyright infringement based on Defendants' use of the Age Test in programs for the Musical. (Dkt. 1). In his motion for summary judgment, Plaintiff argues that he is entitled to judgment as matter of law on his claim of copyright infringement and on each of the Defendants' eleven affirmative defenses. Defendants argue that even if Plaintiff can demonstrate copyright infringement, Plaintiff has suffered no cognizable damages as a matter of law and Defendants are entitled to prevail under the affirmative defenses of fair use and license.

As set forth below, disputed issues of material fact preclude summary judgment on Plaintiff's copyright infringement claim. Further, while Defendants are entitled to summary judgment on Plaintiff's claim for actual damages, there is an issue for the fact-finder on Plaintiff's claim for Defendants' profits attributable to the infringement.

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24.  Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003).  Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### Discussion

### A.    Copyright Infringement

In the instant action, Plaintiff brings a single claim for copyright infringement, alleging that the Age Test reproduced in the programs for the Musical infringed on Plaintiff's work, the BBQE. (Dkt. 42).  In order to prevail on the claim for copyright infringement, Plaintiff must establish two elements: (1) that he owns a valid copyright in the BBQE; and (2) that Defendants copied constituent elements of the BBQE that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002).

### 1.    Ownership of a valid copyright

In order to prevail on the first element, ownership of a valid copyright, Plaintiff must demonstrate that he complied with applicable statutory formalities and that the BBQE is "original" within the meaning of the Act. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th

6

Cir.1996). As set forth below, both requirements are met.

a.     *Statutory formalities*

Registration of a work is not a condition of copyright protection. 17 U.S.C. § 408(a). It is, however, a jurisdictional prerequisite to bringing a claim for copyright infringement. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1488-89 (11th Cir.1990); 17 U.S.C. § 411(a). Although Defendants do not dispute that Plaintiff registered his work, effective August 10, 2006, Defendants argue that Plaintiff's registration is invalid.

Specifically, Defendants argue that Plaintiff failed to properly identify his work in the Copyright Registration as a "compilation," even though the BBQE contains quotations from other published works.[1] Defendants contend that Plaintiff failed to fill out Line 6 of the application, which directs the registrant of a "Derivative Work or Compilation" to "Identify any preexisting work or works that this work is based on or incorporates." (Pl. Dec., Exh. 6). The Copyright Act specifically requires the registrant to include this information in the application for registration. *See* 17 U.S.C. § 409(9).

In the Eleventh Circuit, omissions or misrepresentations in a copyright application render the registration invalid only when there is "intentional or purposeful concealment of relevant information," that is, scienter. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982) (finding that there was no fraud on copyright office where plaintiff had not completed item 6 at direction of copyright office personnel); *Milliken & Co. v. Shaw Indus., Inc.*, 978

---

[1] This argument, relevant to the doctrine of fraud on the Copyright Office, "is an offshoot of the general theory of unclean hands." *See* 3 Nimmer on Copyright, § 13.09[B](1991). Although unclean hands is a traditional affirmative defense, the Court addresses Defendants' argument as part of Plaintiff's prima facie case, as validity of the registration is a threshold issue.

F. Supp. 1155, 1158 (N.D. Ga. 1997).[2]  Defendants fail to identify any evidence of scienter with respect to Plaintiff's application.  As a result, the Court finds that Plaintiff's failure to identify the BBQE as a compilation is not fatal to the validity of the registration. *See Glades Pharms., LLC v. Murphy*, No. 1:04cv3817, 2005 WL 3455857, at \*3 (N.D.Ga. Dec. 16, 2005) (holding that failure to register as a compilation was not fatal to validity); *Donald Frederick Evans and Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 904 (11th Cir. 1986) (affirming finding of validity where defendants introduced no evidence of scienter).

Although Plaintiff complied with the requisite statutory formalities, the BBQE was not registered until 2006, more than five years after its first publication in 1997.  Accordingly, the registration, by itself, does not constitute prima facie evidence of Plaintiff's ownership of a valid copyright. *Cf.* 17 U.S.C. § 410(c) (a certificate of a registration made "within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright").  Thus, the evidentiary weight to be accorded to the registration is "within the discretion of the court." *Id.*

b.   *Originality*

The Copyright Act of 1976 confers protection on "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a).  It is well-established that copyright protection "does not extend to any underlying facts or ideas." *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140 (11th Cir. 2007).

Defendants contend that the BBQE is simply a collection of unoriginal facts and phrases, many of which are in the public domain, and therefore does not possess the requisite originality.

---

[2] In support of their argument regarding invalidity, Defendants rely on a Southern District of New York case, *Thron v. HarperCollins Publishers, Inc.*, Case No. 01-civ-5437, 2002 WL 1733640 (S.D.N.Y. July 26, 2002). *Thorn* does not apply the Eleventh Circuit analysis regarding scienter, and it is accordingly not persuasive authority.

However, even a purely factual compilation is copyrightable when it involves: "(1) the collection and assembly of pre-existing material, facts, or data; (2) the selection, coordination, or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an 'original' work of authorship." *Feist*, 499 U.S. at 357; *see also* 17 U.S.C. § 103 (providing copyright protection to compilations). Although "originality" is not a rigorous standard, "'the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever.'" *BUC Int'l Corp.*, 489 F.3d at 1141 (quoting *Feist*, 499 U.S. at 362).

The BBQE possesses more than the requisite degree of originality. The BBQE includes a five-paragraph introduction by Plaintiff, addressing the question: "Just what are the qualifications for baby boomer status?" (Pl. Dec., Exh. 6 at 4). Following the introduction, the BBQE sets out twenty-nine trivia questions. Plaintiff selected the facts and quotations underlying the questions, all of which purport to correspond to topics of interest and special knowledge of baby boomers. Plaintiff converted the facts and quotations into trivia by phrasing the facts as questions or including "fill-in-the-blanks" within the quotations.[3] Plaintiff arranged the questions in a specific, unique order, and certain questions referenced previous questions. Within 18 of the 29 trivia questions, Plaintiff included original narrative.[4]

---

[3] Examples include the following questions:
4. What do M&M's do?
5. What helps build strong bodies 12 ways?
7. "You'll wonder where the yellow went, _____."

[4] Examples include the following questions:
1. Name the Beatles -- both the first and last name of each, of course. Consider this a warm-up. If you can't answer this one without thinking, close up this window, and move on to something else. We have nothing further to discuss.
2. Finish the line: "Lions and tigers and bears, _____." Admittedly, this came along before we boomers were born. But we remember it from both the movies and boob tube.
6. Long before he was Mohammad Ali, before he was The Greatest, we knew him as _____.
8. Those post-baby boomers, or baby boomer wannabees, know Bob Denver as the Skipper's "little buddy." But we true boomers know that Bob Denver is actually Dobie's closest friend, Maynard G. _____.

9

Accordingly, the Court finds that the BBQE is sufficiently original and constitutes a protectable compilation based on the selection of facts and quotations with common interest to baby boomers, the conversion of these facts and quotations into trivia questions, the unique arrangement of the questions, and the inclusion of original and creative material.

c.      *Merger*

Defendants also argue that the BBQE is not copyrightable pursuant to the doctrine of merger, which provides that "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself." *BUC Int'l Corp.*, 489 F.3d at 1143. (noting that a circle with a diagonal line, indicating that something is prohibited, is not protected because there are only a few ways of visually presenting that something is prohibited). The threshold inquiry in applying the merger doctrine requires a determination of precisely what the "idea" and the "expression" are, *id.*, an inquiry Defendants have not specifically addressed.

To the extent the "idea" in the instant case is a humorous exam based on baby boomer-specific trivia, there are myriad ways in which this idea could be expressed. As noted above, Plaintiff expressed this idea using one approach: selecting twenty-nine subjects to test and phrasing and arranging the questions in a unique manner. As the BBQE is but one conceivable way of formulating a trivia exam targeted at baby boomers, Plaintiff's work is not subject to the merger doctrine. *See id.* (no merger where the "idea" of presenting information to yacht brokers could be "expressed" by including and arranging a variety of listing criteria).

d.      *Plaintiff's claim of authorship*

In addition to disputing the originality of the BBQE, Defendants raise a number of arguments

regarding Plaintiff's claim to authorship of the BBQE.

First, Defendants argue that another website claims a 1994 copyright on a similar test. (Dkt. 78 at 8). Defendants' argument is not supported by the cited record evidence. Although the referenced webpages from the website www.commonplacebook.com contain a test entitled "Official Baby Boomer Qualifying Exam," there is no copyright notice after the test. (Greco Dec., Exh. 1 at 608-09). Rather, the webpages include a copyright notice on the last page, as follows: "Copyright 1994-2006. A Commonplace Book. Stephen Mineart. All rights reserved." (Greco Dec., Exh. 1 at 608-09). This notice appears to apply to the entire website, not specifically to the test. More fatal to Defendants' challenge to Plaintiff's authorship, the webpage states "author unknown" immediately after the "Official Baby Boomer Qualifying Exam" title. Accordingly, the Court finds this evidence is insufficient to create a dispute regarding Plaintiff's original authorship of the BBQE, which is supported by Plaintiff's registration and computer files dating from 1995 and 1996.[5]

Second, Defendants argue that Plaintiff "readily deceives when he thinks that a misrepresentation will be in his best interest" and that this therefore calls into question Plaintiff's credibility in claiming authorship of the BBQE. (Dkt. 78 at 9). Specifically, Defendants cite portions of Plaintiff's deposition in which he admitted that in his letters to alleged infringers, he referred to various non-existent parties in order to sound more intimidating, including mythical "partners," a "family of lawyers" and an entity known as "Miracle Productions, Inc." Plaintiff declares that he incorporated these references for "theatric purposes" and because he thought that if the infringers "knew that they were dealing with just an individual, they would be more likely to

---

[5] Defendants also argue that other websites include the test, or variations of the test. However, the cited webpages do not specify the author of the test, nor do they contain any copyright notice following the test. (Greco Dec., Exh. 1).

11

disregard my demands." (Pl. Dec. ¶ 30).  Absent any other evidence that Plaintiff is not the author of the BBQE, the Court finds that Plaintiff's "puffing" statements do not support an inference that he is not credible when claiming authorship of the BBQE.  Indeed, they support the opposite conclusion, as Plaintiff was committed to enforcing his rights in the BBQE.

Finally, Defendants argue that Plaintiff's credibility is undermined by his alleged financial motivation in filing this lawsuit.  Specifically, Defendants cite a portion of an essay that Plaintiff admits he wrote about Linders, which stated, in part: "Colour My Bankbook.  As time goes on you realize just what it means to me.  And now, now that you're rich, promise some cash for my quiz that you shared with all of your patrons together.  Colour my bankbook with cash from only you." (Pl. Dep. at 121-22).  While this may be probative of Plaintiff's motive in filing this lawsuit, the Court finds that Plaintiff's financial motives do not create a dispute as to whether Plaintiff authored the BBQE.

Based on the foregoing, Plaintiff has adequately demonstrated the first element of his copyright infringement claim: ownership of a valid copyright.

**2.      *Copying constituent elements***

In order to establish the second element of a claim for copyright infringement, Plaintiff must demonstrate that Defendants copied the constituent elements of Plaintiff's work that were original. Proof of copying may be demonstrated by direct or circumstantial evidence, both of which Plaintiff alleges in the instant case.  *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1249 (11th Cir. 1999). As set forth below, the Court finds there are disputed issues of material fact precluding Plaintiff's motion for summary judgment on the second element.

a.      *Direct evidence of copying*

Direct evidence of copying rarely exists. *Id.* Cases in which direct evidence is present typically include evidence of an express admission by the infringer that he or she copied the infringed work. *See e.g., Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) (employee testified that president told her he was having plaintiff's doll copied); *SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347, 1359 (N.D. Ga. 2006) (employees admitted that they copied portions of plaintiff's manual). In addition, when a defendant admits to copying a work derivative of the plaintiff's copyrighted work, this may constitute sufficient evidence of direct copying of the copyrighted work. *See e.g., Donald Frederick Evans and Assocs., Inc.*, 785 F.2d at 904; *Lifetime Homes, Inc. v. Walker Homes, Inc.*, 485 F. Supp. 2d 1314, 1320-21 (M.D. Fla. 2007).

In this case, Plaintiff argues that there is direct evidence that Defendants copied the BBQE because Linders testified that she received the Age Test in an email and that she directed it to be included in the program for the Musical. (Linders Dep. at 178).[6] Although it is undisputed that Linders copied the Age Test, Plaintiff has not argued or offered evidence indicating that the Age Test is a derivative work. *Cf. Lifetime Homes, Inc.*, 485 F. Supp. 2d at 1317 (noting that it was undisputed that plans were derivative of plaintiff's copyrighted work). Accordingly, the Court finds that there is not sufficient direct evidence of copying for the purposes of summary judgment. *Cf.*

---

[6] Because Linders allegedly copied the Age Test from an email without attribution, Defendants also argue in passing that Linders was an "innocent infringer." "[I]ntent or knowledge is not an element of infringement," however, and "[e]ven an innocent infringer is liable for infringement." *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g. Co., Inc.*, 807 F.2d 1110, 1113-14 (2d Cir. 1986); *Playboy Enters., Inc. v. Frena*, 839 F. Supp. 1552, 1559 (M.D. Fla. 1993). Although Linders' alleged innocence would be relevant with respect to fixing statutory damages, 17 U.S.C. 504(c)(2), Plaintiff does not dispute Defendant's contention that he is not entitled to statutory damages. *See* 17 U.S.C. § 412(2) (providing that statutory damages are not available for infringement taking place before the effective date of registration, "unless such registration is made within three months after the first publication of the work").

*Milliken & Co.*, 978 F. Supp. at 1159 (although it was disputed whether Plaintiff's rug design was, itself, copied, there was sufficient evidence to preclude summary judgment on direct evidence).

b.      *Substantial similarity*

Even in cases is which there is no direct evidence of copying, a plaintiff may prevail on the second element by demonstrating that: (1) the defendant had access to the plaintiff's work; and (2) the defendant's work is "substantially similar" to the plaintiff's protected expression. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994). A finding of "substantial similarity" between the copyrighted work and the infringing work not only provides circumstantial evidence that Defendants copied the Plaintiff's work, it also demonstrates that Defendants copied the requisite constituent protected elements of Plaintiff's work. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000).

In the instant case, the parties do not dispute that Defendants had access to Plaintiff's work, which was available on Plaintiff's website. *See Herzog,* 193 F.3d at 1249 ("access" requires proof of "a reasonable opportunity to view" the work in question). The pertinent issue is whether the Age Test is substantially similar to the BBQE.

Substantial similarity between two works is demonstrated when "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1266 (11th Cir. 2001). In the case of a factual compilation, the substantial similarly requirement involves a narrowed construction: because the components of the compilation are frequently already in the public domain, "[w]hat must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed compilation." *BellSouth Adver. & Publ'g Corp. v.*

14

*Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1445, 1145 n.22 (11th Cir. 1993).  Therefore, "[w]hile the works need not be identical, there must be sufficient congruence between the original elements of the copyrighted work and the copied work such that a jury could find infringement." *BUC Int'l Corp.*, 489 F.3d at 1148.    Substantial similarity may be determined as a matter of law at the summary judgment stage when no reasonable jury could find substantial similarity.  *Beal*, 20 F.3d at 459-60.

Based on a comparison of the Age Test and the copyrighted version of the BBQE, the Court finds that a jury question exists as to substantial similarity.  (Pl. Dec., Exhs. 7, 17).  First, each of the Age Test's twenty-four questions is based on a fact or quotation tested in the BBQE.  Second, ten of the Age Test questions contain identical wording to BBQE questions (Age Test questions 4, 5, 7, 9, 10, 11, 13, 14, 16, 24), and ten other questions in the Age Test are phrased with only minor differences from the BBQE questions (Age Test questions 3, 6, 8, 12, 15, 17, 18, 19, 20, 23).  Third, the Age Test's twenty-four questions are in the same order as the BBQE's twenty-nine questions.  On the other hand, the Age Test does not contain Plaintiff's five introductory paragraphs, it excludes five of the BBQE questions (BBQE questions 10, 15, 20, 28, and 29), and it removes some of Plaintiff's original material from four of the BBQE questions (Age Test questions 1, 2, 21, 22).

Based on the foregoing, there is an issue of fact as to whether there is "sufficient congruence between the original elements of the copyrighted work and the copied work" to render the Age Test and BBQE substantially similar.  Plaintiff's motion for summary judgment on Plaintiff's claim for copyright infringement is therefore denied.

### B.   Damages

The Copyright Act includes a specific provision governing damages, entitling a successful

copyright owner to claim: (1) "actual damages suffered by him or her as a result of the infringement;" and (2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Defendants' motion for summary judgment is premised on the argument that Plaintiff can prove neither form of compensatory damages as a matter of law. The Court finds that Plaintiff has failed to produce any competent evidence that he suffered actual damages and that Plaintiff's proffered expert on actual damages, Larry Steven Londre, provides unreliable and irrelevant testimony. By contrast, Plaintiff is entitled to have a jury decide whether Defendants have earned profits attributable to their alleged infringement.

**1.      *Actual damages***

Actual damages are "often measured by the revenue that the plaintiff lost as a result of the infringement," *Montgomery v. Noga*, 168 F.3d 1282, 1295 n.19 (11th Cir. 1999), including "lost sales, lost opportunities to license, or diminution in the value of the copyright," *On Davis v. The Gap, Inc.*, 246 F.3d 152, 164 (2d Cir. 2001). Defendants' argument that Plaintiff never earned revenue from the BBQE is undisputed. (Pl. Dep. at 292). Plaintiff also testified that he does not have any evidence that the Age Test had a negative effect on his website. (Pl. Dep. at 189).

*a.      Retroactive license fee*

As Defendants acknowledge, however, a claim for lost profits may include a retroactive license fee measured by what the plaintiff would have earned by licensing the infringing use to the defendant. *See e.g.*, *Montgomery*, 168 F.3d at 1295-96 (affirming jury award of actual damages based on a retroactive license fee); *On Davis*, 246 F.3d at 166. In order to demonstrate entitlement to a reasonable license fee, Plaintiff "must show that the thing taken had a fair market value." *On*

16

*Davis*, 246 F.3d at 166.  Courts have found adequate evidence supporting a finding of fair market value when: (1) the plaintiff demonstrates that he previously received compensation for use of the infringed work; or (2) the plaintiff produces evidence of benchmark licenses, that is, what licensors have paid for use of similar work.  *See e.g., On Davis*, 246 F.3d at 166 (plaintiff testified he had previously been given a $50 royalty for the use of a photograph which included his sunglasses); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 359 (S.D.N.Y. 2003) (plaintiff produced evidence of previous license fees of $15 to $88 paid for the publication of his photographs); *Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331-32 (S.D.N.Y 2003) (noting that license fees paid to other artists could be used to measure the plaintiff's license fee).

In this case, Plaintiff has never licensed the BBQE for fees.  (Pl. Dep. at 159).  In fact, the only evidence pertaining to past use of the BBQE indicates that Plaintiff gave a theater group in Minnesota permission to use the BBQE for free, if they gave him credit.  (Pl. Dep. at 278).  Accordingly, Plaintiff has not demonstrated that the BBQE had a fair market value premised on past license fees paid for its use.

Plaintiff also fails to produce any evidence of benchmark licenses, such as what producers have paid for the use of content similar to the BBQE in theater programs.  Indeed, Plaintiff admits that his proffered expert, Larry Steven Londre, fails to address any evidence pertaining to benchmark licenses. (Dkt. 91 at 4).  As a result, Defendants have moved to exclude Londre's testimony.  (Dkt. 83).

Because Plaintiff fails to introduce any evidence, through expert testimony or otherwise, demonstrating that he is entitled to lost profits, including a reasonable retroactive licensing fee, Defendants' motion for summary judgment is GRANTED on Plaintiff's claim for actual damages pursuant to 17 U.S.C. § 504(b).

b.      *Defendants' Motion in Limine to Exclude the Testimony of Larry Steven Londre*

Before expert testimony can be admitted pursuant to Fed. R. Evid. 702, this Court must act as a gatekeeper and screen the proffered evidence to ensure that it is relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Expert testimony is properly admitted when (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusion is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1999); Fed. R. Evid. 702. Plaintiff bears the burden of establishing the proper foundation for the admissibility of Londre's testimony by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

Londre opines that the total "value" of pages in those programs that used the Age Test is $206,260.00. (Dkt. 82, Exh. A at 4). Londre calculated this by first determining the cost of a full-page black and white advertisement, as set by the theater for each performance in which programs containing the Age Test were distributed. (Londre Dep. at 113). Londre then multiplied the advertising rate by the duration of the show at the relevant theater. (Londre Dep. at 119, 124-25). The sum of $206,260.00 represents the amounts for all performances at theaters for which Londre was able to obtain advertising rates.

As an initial matter, Londre's methodology is unreliable. Londre bases his calculation of value on advertising rates. However, he testified that the Age Test is "editorial content," not advertising content. (Londre Dep. at 137). There is a critical difference between advertising and editorial content. Advertising rates represent the money paid by the *advertiser* to the *publisher* of

the program to place an advertisement, while editorial rates represent the amount paid by the *publisher* to the *creator* of the editorial content for the content. (Londre Dep. at 138-39). Londre fails to identify any evidence of editorial rates. Although he testified that a publisher pays freelancers "all the time" for editorial content, Londre testified that he did not make any attempt to determine what publishers' internal editorial rates are. (Londre Dep. at 141, 307-08).

Nonetheless, Plaintiff argues that Londre's reliance on advertising rates is sufficient, as editorial rates are higher than advertising rates, and Londre's valuation is therefore a conservative estimate. (Londre Dep. at 123, 307). Assuming that editorial rates are identical to advertising rates, Londre's calculation is still unreliable and irrelevant, as it does not properly address the fair market value of Defendants' alleged use of the BBQE. Londre testified that publishers of programs pay editorial rates to people to "write and produce the publications" and to "develop[ ] content." (Londre Dep. at 308, 141). In this case, by contrast, Defendants allegedly used a pre-existing work. Accordingly, the relevant issue is what a willing buyer would have paid to license a pre-existing work, not what a willing buyer would pay to create that work. *See Baker*, 254 F. Supp. 2d at 359 (expert's evidence of fee for *commissioned* photography was irrelevant and unreliable as evidence relating to use of fee for use of *pre-existing* stock photography). The editorial rates, even if properly measured by Londre, are therefore not relevant for the purpose of setting a benchmark license fee, as there is simply no evidence that editorial rates are comparable to license fees. *Id.*; *see also Country Road Music, Inc.*, 279 F. Supp. 2d at 331-32 (proposed license fees were not comparable).

Finally, Plaintiff attempts to cure this deficiency by arguing that Londre's opinions "amount to little more than common sense. Namely, the pages within a theater program have inherent value and this value can be measured with reference to published advertising rates." (Dkt. 91 at 6). Plaintiff's argument misses the mark, as "inherent value" is not the issue for the purpose of

19

calculating actual damages.  In calculating actual damages, the question is what "a willing buyer would have been reasonably required to pay to a willing seller for plaintiff['s] work," which, in this case, is properly measured by a retroactive license fee. *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 361-62 (7th Cir. 1985).

For these reasons, the Court finds that Londre's reliance on advertising rates and editorial rates as a measure of actual damages is irrelevant, unreliable as a methodology, and therefore not helpful to the trier of fact.  Accordingly, Defendants' motion in limine to exclude the testimony of Londre and evidence of advertising rates is GRANTED.

### 2.    *Profits attributable to infringement*

Plaintiff also seeks to recover Defendants' profits that are "attributable to the infringement," the second category of compensatory damages provided for in the Copyright Act.  With respect to this measure of damages, the statute allocates the parties' respective burdens:

> In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).

Accordingly, Plaintiff need only produce evidence of gross revenues.  Defendants must then counter this figure with reference to deductible expenses and elements of profit attributable to other factors.

Plaintiff contends that he has met his burden, as he can produce evidence of Defendants' gross ticket revenue from those productions of the Musical that included the Age Test in the programs.[7]  Defendants argue that the Age Test was not included in the performance of the Musical, only in the program, which was free to ticketholders and did not yield any profits, by itself, to

---

[7] Although Plaintiff has not actually cited to record evidence referencing this amount, stating only that "Mr. Thornton will carry his statutory burden" (Dkt. 82 at 9), Defendants have not, in their motion for summary judgment, challenged Plaintiff's ability to do so at trial.

Defendants.[8]   As a result, Defendants argue that Plaintiff cannot demonstrate the requisite causal link between the gross ticket revenue and the alleged infringement.

In support of this position, Defendants rely on Ninth Circuit precedent, which requires plaintiffs to produce "sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated from such an infringement." *See Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002); *see also Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522-23 (4th Cir. 2003) (plaintiff must demonstrate non-speculative evidence of a "conceivable connection" between the revenues and infringement); *Univ. of Col. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1999) (plaintiff has burden to show a "connection" between sales and infringement).   Under this line of cases, the plaintiff must show that the *infringement itself* -- that is, the use of the plaintiff's work -- was causally linked to the gross revenue claimed. *See id.*

By contrast, the Second Circuit requires only a "reasonable relationship" between the revenue and the *infringing activity*, such as the advertisement containing the infringing use. *See On Davis*, 246 F.3d at 160; *see also Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003) (requiring a "nexus"); *Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("It was not enough to show [defendant's] gross revenues from the sale of everything he sold").   As explained by the Eighth Circuit, the question under this approach is "whether [the defendant] profited from the infringing commercial at all -- for which [plaintiff] carried the burden of proof -- rather than the extent that it profited from the infringement -- for which [defendant] carried the burden of proof." *Andreas*, 336 F.3d at 796.

---

[8] Linders testified that Defendants did not make money on the program.  (Linders Dep. at 9).  Marti Miller, a TOC Productions employee, testified that although Defendants charged for certain advertisements to be placed in the program, it did not cover the cost of printing the program.  (Miller Dep. at 177-78).

The Eleventh Circuit has not addressed the respective burdens on the parties under the statutory language of § 504(b).[9] This Court places primary reliance on the plain language of the statute, which expressly contemplates a light burden for a plaintiff, who "is required to present proof *only* of the infringer's gross revenue." 17 U.S.C. § 504(b) (emphasis added). This burden is supported by the policy of the statute. A defendant's profits are not awarded to compensate the plaintiff, but rather "to prevent the infringer from unfairly benefiting from a wrongful act." H. R. REP. NO. 94-1476 at 161 (1976). Consistent with this statutory scheme, it is appropriate to shift the burden of proof to the infringer, especially since information regarding profits is in the infringer's possession.

Notwithstanding, a plaintiff's light statutory burden must be read in conjunction with the well-established principle that any claim of damages may not be based on pure speculation. *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) (noting that "the defendant is normally not assessed damages on wholly speculative expectations of profits"); *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 190 (5th Cir. 1988) ("We merely hold that it was not error for the district court to reject this attempt to show revenues attributable to the infringement as speculative"); *Telecom Tech. Servs. Inc. v. Rohm Co.*, 388 F.3d 820, 830 (11th Cir. 2004) (addressing claim that damages were too speculative). Interpreting the statute with this principle in mind, it is evident that a plaintiff may not seek gross revenues based entirely on a speculative connection to the plaintiff's claim.

Accordingly, this Court follows those courts which have required a "reasonable relationship"

---

[9] *Cf. Montgomery v. Noga*, 168 F.3d at 1294 (finding that plaintiff "went well beyond" statutory obligation by presenting evidence of total sales of four CD-ROM titles and profits after expenses); *Aerospace Servs. Int'l v. LPG Group, Inc.*, 57 F.3d 1002, 1004 (finding gross revenues were properly measured as fee that defendants received for the use of two documents containing the infringing material).

between the infringing *activity* and the infringer's gross revenues. *See On Davis*, 246 F.3d at 160 ("gross revenue under the statute means gross revenue reasonably related to the infringement, not unrelated revenues."); *see also Andreas*, 336 F.3d at 796; *Taylor*, 712 F.2d at 1122. At the summary judgment stage, Plaintiff must introduce non-speculative evidence of this relationship, consistent with general damages principles. The Court declines, as Defendants urge, to impose a heightened burden on Plaintiff to produce evidence that the infringing *use* of the Age Test was causally linked to Defendants' gross ticket revenues.

In this case, Plaintiff has carried his burden by seeking revenue only from those shows at which the allegedly infringing programs were distributed. This relationship is not speculative: Plaintiff cites specific record evidence that the program was part and parcel of the Musical. Specifically, Linders testified that Actors' Equity Union "requires a vehicle to showcase the actors, so I have to do a program. . . . Not only is it theaterical tradition but by Actors Equity Union rules, I have to do it." (Linders Dep. at 9). Thus, without a program, there would be no Musical. Additionally, Linders testified that she included material in the program to entertain the audience and that ticketholders take programs home as a "free souvenir." (Linders Dep. at 92; 94-96).

Linders' testimony is sufficient non-speculative evidence of a "reasonable relationship" between the infringing activity itself -- i.e., the program -- and the gross revenues from ticket sales. This relationship having been established, it is for the Defendants to argue "elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. 504(b). This highly specific factual inquiry is appropriately left for the fact-finder. *See Andreas*, 336 F.3d at 798. Based on the foregoing, Defendants' motion for summary judgment is DENIED on Plaintiff's claim pursuant to § 504(b) for Defendants' profits attributable to the infringement.

### C.   Affirmative Defenses

Defendants have alleged eleven affirmative defenses to Plaintiff's claim of copyright infringement. Plaintiff has moved for summary judgment on each of the defenses, while Defendants have moved for summary judgment in their favor only on the defenses of fair use and license.

### 1.   Implied license

In their Fourth Affirmative Defense, Defendants contend that Plaintiff's claim is barred because the BBQE "is in the public domain/and or [*sic*] was posted on the Internet without attribution and pursuant to an implied license." Specifically, Defendants contend that Plaintiff granted an implied license to all internet users and to Linders by allowing "unfettered" downloads of the BBQE. (Dkt. 78 at 12).

Although the Copyright Act provides that the transfer of an exclusive license to a work must be in writing, the statute exempts nonexclusive licenses from the writing requirement. *See* 17 U.S.C. 204; 17 U.S.C. § 101 (defining transfer of copyright ownership to exclude a nonexclusive license).[10] Thus, a nonexclusive license to use a copyrighted work "may be granted orally, or may even be implied from conduct." *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 752 (11th Cir. 1997) (internal quotations omitted). An implied license is created only in narrow circumstances, however, when: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002) (quoting *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th

---

[10] An exclusive license allows "the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others," while a nonexclusive license "permits the use of a copyrighted work in a particular manner." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774-75 (7th Cir. 1996).

24

Cir.1990)).[11] It is Defendants' burden to prove the existence of an implied license. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).

Defendants have not met their burden. Defendants have introduced no evidence that they requested the creation of the BBQE or that Plaintiff delivered the BBQE to Defendants, both of which are critical components of this defense. *Cf. Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999) (plaintiff granted implied license by conduct where she wrote jingles for defendant radio station for seven years and allowed the station to air those jingles, including the one at issue); *Jacob Maxwell, Inc.*, 110 F.3d at 752 (composer gave oral permission to play song, attended games where song was played, and urged defendant to keep playing song).

Furthermore, Defendants provide no authority for the proposition that the posting of the BBQE on Plaintiff's website granted an implied license to all internet users or that the work thereby entered the "public domain." Under the Copyright Act of 1976, "public domain," a term of art, refers to the expiration of an author's exclusive rights, which allows works to be accessed and used by the public after this time has lapsed, a circumstance not present here. *Suntrust Bank*, 268 F.3d at 1262; *Donald Frederick Evans and Assocs.*, 785 F.2d at 905 (noting that § 405 was enacted to reduce instances in which a work would fall into the public domain). As noted, implied licenses exist "only in narrow circumstances where one party created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *SmithKline Beecham Consumer Healthcare, L.P.*

---

[11] Defendant contends that "the Eleventh Circuit has made clear that solicitation to create a work is not an element to an implied license claim." (Dkt. 78 at 12, n.7). In support of this assertion, Defendants cite *Bateman*, 79 F.3d 1532, which contains no such "clear" holding. In addition, the facts suggest that the work at issue was indeed specially commissioned. *See id.* at 1536-37 (noting that plaintiff had business relationship with defendant and that plaintiff helped defendant design a computer board to satisfy the requirements of one of defendant's customers). Moreover, the Ninth Circuit's formulation of the implied license defense was recently applied by the Eleventh Circuit in an unpublished opinion. *See Armentrout Roebuck Matheny Consulting Group, P.C. v. Jackson County Water and Sewerage Auth.*, 260 F. App'x 174-75 (11th Cir. 2007).

*v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000) (quoting *Effects Assocs., Inc.,* 908 F.2d at 558) (internal quotations omitted).   This case does not present such circumstances, either with respect to the Defendants or with respect to all internet users in general.

Plaintiff's motion for summary judgment on Defendants' Fourth Affirmative Defense of implied license/public domain is therefore GRANTED.

## 2.   *License, estoppel, waiver, consent, acquiescence*

In their Sixth Affirmative Defense, Defendants contend that Plaintiff's claim is barred by "license, consent, acquiescence, waiver, and estoppel" because "Plaintiff explicitly contacted Defendants and stated that they could use the alleged work with attribution, a statement upon which Defendants relied to their detriment."   As each of the components to Defendants' Sixth Affirmative Defense is premised on Plaintiff's intent to disclaim his rights in the BBQE or to acquiesce to Defendants' use, they are analyzed concurrently.

In copyright infringement actions, an alleged infringer may assert the defense of estoppel by demonstrating that: "(1) the copyright owner knew the facts of the infringement, (2) the copyright owner intended its conduct to be acted upon or the copyright owner acted such that the alleged infringer has a right to believe it was so intended, (3) the alleged infringer is ignorant of the true facts, and (4) the alleged infringer relies on the copyright owner's conduct to his detriment." *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 875 (11th Cir. 2005). Similarly, in order to prevail on the equitable defense of acquiescence, Defendants must produce evidence that: (1) Plaintiff actively represented that he would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. *SunAm. Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1334

(11th Cir. 1996) (Lanham Act case).   Finally, "waiver or abandonment of copyright 'occurs only if

there is an intent by the copyright proprietor to surrender rights in his work.'" *Oravec v. Sunny Isles*

*Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1177 (S.D. Fla. 2006) (quoting *A & M Records, Inc.*

*v. Napster, Inc.,* 239 F.3d 1004, 1026 (9th Cir.2001)).

Defendants argue that Plaintiff's communication via the Musical's website operates as an

equitable bar to his claim:

> I am the author of the copyrighted Official Baby Boomer Qualifying Exam --
> http://www.bbhq.com/bbexam1.php?caller=intro -- which is printed, nearly word-for-
> word, as your "Take the Age Test."   I wrote that, and other similar trivia quizzes,
> over a decade ago.
> While I am flattered, I would certainly appreciate it if you would provide an
> attribution to Baby Boomer HeadQuarters – WWW.BBHQ.COM in your program
> (Pl. Dec., Exh. 18).

By contrast, Plaintiff declares that he did not intend to give Defendants permission to use the BBQE,

that he did not intend for the BBQE to be included in the programs, and that he instead "hoped to

open up a dialog with the Defendants regarding how we could work together and how I could be

compensated for their use of the BBQE." (Pl. Dec. ¶ 40).   Plaintiff notes that the message produced

by Defendants appears to end mid-sentence, and that he typically did not end sentences like that.   He

also argues that his message to Linders began in a similar fashion to other messages he sent to

purported infringers demanding that they cease infringing the BBQE.   (Pl. Dec., Exhs. 9-16).

Finally, Plaintiff argues that Linders did not rely on Plaintiff's message, as she instructed an

employee, Marti Miller, to "confirm with Mr. Chicowitz that what he had requested was being

done." (Linders Dep. at 262-63).

Based on the foregoing, the Court finds that disputed issues of material fact exist regarding

the parties' intent, precluding summary judgment on Defendants' Sixth Affirmative Defense.

3.      *Unclean hands*

In their Fifth Affirmative Defense, Defendants contend that Plaintiff's claim is barred by the doctrine of unclean hands, as Plaintiff's website allegedly includes copyrighted works of many authors, including Linders.  Specifically, Defendants argue that Plaintiff has reproduced on his website lyrics from the Musical, the Musical's logo, a banner from the Musical's website, as well as jokes written by third parties.

To prevail on the defense of unclean hands, Defendants must demonstrate that: (1) Plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and (2) Defendants were personally injured by Plaintiff's conduct.  *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993); *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979).  For instance, the defense has been applied when the "plaintiff misused the process of the courts by falsifying a court order, by falsifying evidence, or by misrepresenting the scope of his copyright to the court and opposing party," or "when the plaintiff obtained information as to the nature of defendant's work through unfair means."   3 Nimmer on Copyright, § 13.09[B](1991).

Defendants provide no authority supporting the application of the defense in these circumstances, as it is not "directly related" to the controversy at issue.  Similarly, Defendants fail to demonstrate how Plaintiff's posting of third parties' jokes on his website is "directly related" to the instant claim or how they were personally injured by the alleged use of these work.  *See Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 379 (5th Cir. 2004) (defendants had no evidence they were injured by plaintiff's inclusion of a third parties' copyrighted work).  Plaintiff's motion for summary judgment on Defendants' Fifth Affirmative Defense is therefore GRANTED.

28

### 4.     *Fair use*

In their Seventh Affirmative Defense, Defendants contend that their use of the BBQE was

a fair use, which is a statutory affirmative defense to a claim of copyright infringement. *Campbell*

*v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). In determining whether a challenged use

constitutes fair use, the Court considers several factors, including:

> (1) the purpose and character of the use, including whether such use is of a
> commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted
> work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted
> work.
> 17 U.S.C. § 107; *Campbell*, 510 U.S. at 576-77.

The statute lists several fair uses, including "criticism, comment, news reporting, teaching (including

multiple copies for classroom use), scholarship, or research," although this list is not exclusive.

*Suntrust Bank*, 268 F.3d at 1267. Accordingly, fair use analysis "must always be tailored to the

individual case." *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 552-53 (1985).

In certain circumstances, fair use may be determined as a matter of law at the summary

judgment stage. *See e.g., Stewart v. Abend,* 495 U.S. 207, 237 (1990); *Cable/Home Commc'ns Corp.*

*v. Network Prods.,* 902 F.2d 829, 845 (11th Cir. 1990). In the instant case, however, the Court finds

that it is premature to address the merits of this defense, as there are underlying issues of material

fact. *Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc.,* No. 6:03-cv-1860, 2005 WL

3445522, at *10 (M.D. Fla. Dec.14, 2005).

For instance, in assessing the "purpose" of the work under the first factor, "[t]he crux of the

profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether

the user stands to profit from exploitation of the copyrighted material without paying the customary

price." *Harper & Row Inc.*, 471 U.S. at 562. As discussed in connection with Plaintiff's claim for damages, there is a question of fact as to whether Defendants "profit[ed] from exploitation of the copyrighted material," because there is an unresolved question as to what percent of the Musical's revenues, if any, are attributable to the alleged infringement. In addition, there are disputed issues of fact with respect to the third factor: "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." Based on the foregoing, the parties' cross-motions for summary judgment are DENIED as to Defendants' Seventh Affirmative Defense.

5.      *Failure to mitigate*

As their Ninth Affirmative Defense, Defendants include the boilerplate allegation that Plaintiff's claim is barred by failure to mitigate his damages. In the instant motion, Plaintiff contends that Defendants have introduced no proof of failure to mitigate damages. Defendants have not addressed the viability of this defense in their response in opposition to Plaintiff's motion. *See Celotex*, 477 U.S. at 323-24 (the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial). Accordingly, Plaintiff's motion for summary judgment is GRANTED as to Defendants' Ninth Affirmative Defense.

6.      *Statute of limitations*

As their Tenth Affirmative Defense, Defendants contend that Plaintiff's claim is barred by the statute of limitations to the extent Plaintiff seeks to recover for infringement that occurred prior to three years before the filing of this action. A claim for copyright infringement must be asserted within three years after the claim has accrued. 17 U.S.C. § 507(b). As Defendants note, there is a split in authority as to when a claim "accrues" under § 507(b), and the Eleventh Circuit has not

directly addressed this issue.[12]

A minority of courts apply an "injury rule" and hold that a claim for copyright infringement accrues when the infringing act occurs. *See e.g., Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004). By contrast, the Second, Fourth, Sixth, Seventh, and Ninth Circuits apply the more lenient "discovery rule" and hold that the action accrues "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his rights." *See James W. Ross, Inc. v. Cecil Allen Const., Inc.*, No. 6:03-cv-792, 2004 WL 1146104, at *2 (M.D. Fla. Apr. 26, 2004) (citing cases); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007). The courts in the Middle District of Florida, including this Court, have consistently applied the discovery rule. *See e.g., Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007); *Home Design Servs., Inc.,* 2005 WL 3445522, at *7. In addition, the Eleventh Circuit has held that "a federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) (noting the "traditional federal accrual rule of injury discovery" and that "[f]ederal courts, to be sure, generally apply a discovery accrual rule").

Defendants argue that the Supreme Court rejected the discovery rule presumption in *TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001), and that the injury rule is the proper accrual rule for

---

[12] In a criminal copyright action, the Eleventh Circuit held that "[i]n copyright infringement actions, the period of limitation begins on the date of the last infringing act." *United States v. Shabazz*, 724 F.2d 1536, 1540 (11th Cir. 1984); *but see Calhoun*, 298 F.3d at 1236 (Birch, J., concurring) (noting that "[t]he limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement."); *see also Brewer-Giorgio v. Producers Video, Inc*, 216 F.3d 1281, 1285 (11th Cir. 2000) (noting that "The broadcast of the offending Elvis special aired on January 22, 1992. Thus, the three-year copyright statute of limitation ran on January 22, 1995."); *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 339 (5th Cir. 1971) (affirming district court's finding that suit was barred where "the last publication of the alleged infringing work occurred in June, 1964, but that suit was not filed until August, 1969.")

copyright infringement actions. Defendants' proposed interpretation of *TRW* is, however, overly broad, as the Supreme Court expressly declined to decide the validity of the presumption of a discovery rule for federal causes of action. *See TRW Inc.*, 534 U.S. at 27 ("To the extent such a presumption exists, a matter this case does not oblige us to decide, the Ninth Circuit conspicuously overstated its scope and force."); *Skwira v. United States*, 344 F.3d 64, 74 (1st Cir. 2003) (noting that *TRW*'s narrow holding did not preclude application of discovery rule in other statutory schemes, including Federal Tort Claims Act). Rather, the Supreme Court rejected the Ninth Circuit Court of Appeal's version of the discovery rule presumption, which provided that "all federal statutes of limitations, regardless of context, incorporate a general discovery rule 'unless Congress has expressly legislated otherwise.'" *TRW Inc.*, 534 U.S. at 27 (quoting *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000)). The Supreme Court held that because the statute of limitations in the Fair Credit Reporting Act, 15 U.S.C. § 1681p, specifically included a partial discovery rule for material and wilful representations, this inclusion evinced Congress's intent to exclude a general discovery rule.[13]  *Id.* at 28-31.

In contrast to the statute of limitations at issue in *TRW*, the statute of limitations in § 507(b) does not contain an exception or other indication that the general discovery rule would not be applicable. *See* 17 U.S.C. § 507(b). Thus, traditional tenets of statutory construction are not violated by application of the general discovery rule. Accordingly, the Court finds that the general discovery

---

[13] In reaching this determination, the Court applied well-established tenets of statutory construction: (1) when Congress "explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent;" and (2) "a statute ought, upon the whole to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Both principles of statutory construction would have been violated in *TRW*, were the general discovery rule applied. *Id.* at 28, 31.

rule applies, pursuant to Eleventh Circuit law. *See Corn*, 904 F.2d at 588; *Home Design Servs., Inc. v. B&B Custom Homes*, LLC, 509 F. Supp. 2d 968, 971-72 (D. Colo. 2007) (holding that *TRW* did not displace general discovery rule with respect to 17 U.S.C. § 507(b)).

Nonetheless, application of a discovery rule to Plaintiff's claim does not entitle Plaintiff to summary judgment on Defendants' statute of limitations defense. Although Plaintiff filed the lawsuit within three years of becoming aware of the alleged infringement in the Tampa performance of the Musical, "[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992). To the extent the infringement is deemed to occur with each unauthorized reproduction or distribution of the Age Test, 17 U.S.C. § 106, Plaintiff has not addressed when he "knew or reasonably should have known" of those acts of infringement occurring more than three years before this lawsuit was filed. Plaintiff's motion for summary judgment is therefore DENIED as to Defendant's Tenth Affirmative Defense.

## 7.   *Laches*

In their Eleventh Affirmative Defense, Defendants contend that Plaintiff's claim is barred by the equitable doctrine of laches. In order to prevail on this defense, Defendants must demonstrate that: (1) Plaintiff delayed in asserting his rights; (2) the delay was not excusable; and (3) there was undue prejudice to Defendants. *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997) (Lanham Act case); *Thompson v. Looney's Tavern Prods., Inc.*, 204 F. App'x 844, 852 (11th Cir. 2006).

It is undisputed that Plaintiff first learned of the infringement over the weekend of June 9, 2006, when Plaintiff attended the Musical. Plaintiff filed the instant action on September 6, 2006. The Court finds that these facts to not demonstrate inexcusable delay. Defendants have not opposed

33

Plaintiff's motion for summary judgment on this defense.  Accordingly, Plaintiff's motion for summary judgment is GRANTED on Defendants' Eleventh Affirmative Defense.

8.    *Remaining defenses*

In Defendants' First, Second, Third, and Eighth affirmative defenses, Defendants assert that Plaintiff fails to state a claim for relief, that the BBQE is not copyrightable, that Plaintiff's claim is barred by merger, and that this Court lacks subject matter jurisdiction insofar as Plaintiff lacks a valid copyright registration.  Defendant has not contested the sufficiency of Plaintiff's Complaint, and the latter three "affirmative defenses" are essentially denials of elements of Plaintiff's claim for copyright infringement, premised on arguments that have been addressed herein and resolved in favor of Plaintiff.  *See Home Design Servs., Inc. v. Park Square Enters., Inc.*, No. 6:02-cv-637, 2005 WL 1027370, at *6-7 (M.D.Fla. 2005).  Accordingly, Plaintiff's motion for summary judgment is GRANTED as to Defendants' First, Second, Third and Eighth Defenses.

### D.    *Plaintiff's Motions to Strike*

1.    *Plaintiff's Motion to Strike Defendants' Amended Disclosure of Fact Witnesses and Strike the Testimony of Diana C. Coles (Dkt. 88)*

By separate motion, Plaintiff moves that the Court strike: (1) the Declaration of Diana C. Coles (Dkt. 81), submitted in support of Defendant's opposition to Plaintiff's motion for summary judgment; and (2) any testimony at trial by Coles and three unidentified "Corporate Representatives" from The Tampa Bay Performing Arts Center, Darden Adventure Theatre, and Polk Theatre. Plaintiff contends that the identity of these witness was first disclosed in Defendants' Amended Witness List (Dkt. 88-2), which Defendants provided on October 15, 2007. This disclosure occurred well after the non-expert witness disclosure deadline of August 27, 2007 set by the Court's Case Management and Scheduling Order, as amended.  (Dkts. 16, 41).

As an initial matter, the motion to strike is GRANTED as to the corporate representatives, as Defendant has failed to identify these witnesses by name. *Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, No. 6:03-cv-116, 2004 WL 5486964, at *10 (M.D. Fla. Oct. 5, 2004) (noting that identifying witnesses by reference to corporate name is insufficient). With respect to the motion to strike Coles' Declaration and trial testimony, Rule 37(c)(1) provides that if a party fails to disclose or appropriately supplement disclosures, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In evaluating whether the failure is harmless, the Court considers: "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004); *Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. 1981).

Portions of Cole's Declaration are relevant to the issue of damages, a critical issue for the jury to resolve. In addition, Defendants have not established any justification for the failure to timely disclose Coles as a witness. Although Defendants assert that counsel did not become aware of Coles' identity until October 10, 2007, Defendants have not disputed Plaintiff's assertion that Defendants themselves knew of Coles' identity as early as July 2, 2007, based on an email from Joanne Grant, a TOC employee, to Diana Coles of the same date (Coles Dec., Exh. B). Furthermore, Plaintiff would be prejudiced by consideration of Coles' Declaration at the summary judgment stage, as Plaintiff was unable to address Coles' contentions in advance of Defendants' response. Based on the foregoing, Plaintiff's motion to strike Coles' Declaration (Dkt. 81) is GRANTED. The Declaration has accordingly been excluded from consideration herein.

Plaintiff has not, however, identified any prejudice to Defendants' presentation of Coles' testimony at trial, to the extent Plaintiff is granted leave to depose Coles prior to trial. The motion to strike Coles' testimony is therefore DENIED, on condition that Defendants are ordered to produce Coles for deposition within thirty days of the date of this Order, at Defendants' expense.

**2.** *Plaintiff's Motion to Strike the Testimony of Brad Krassner (Dkt. 87)*

Plaintiff also moves that this Court strike portions of the expert report of Brad Krassner, Defendants' proposed rebuttal expert. As Defendants note, however, Krassner's proffered rebuttal testimony is moot upon the exclusion of Plaintiff's expert, Larry Steven Londre. (Dkt. 92 at 2 n. 1). Accordingly, the motion to strike is GRANTED insofar as Krassner's testimony is moot.

***Conclusion***

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1)      Plaintiff's Motion for Partial Summary Judgment (Dkt. 67) is **GRANTED IN PART** as to Defendants' First, Second, Third, Fourth, Fifth, Eighth, Ninth, and Eleventh Affirmative Defenses to the extent they are pled against Defendants Jeanette Linders and TOC Productions, Inc., and is otherwise **DENIED**;

2)       Defendants' Amended Motion for Summary Judgment (Dkt. 73) is **GRANTED IN PART** as to Plaintiff's claim for actual damages and is otherwise **DENIED**;

3)      Defendants' Motion in Limine to Exclude the Expert Testimony of Larry Steven Londre and Evidence of Irrelevant Advertising Rates (Dkt. 83) is **GRANTED**;

4)      Plaintiff's Motion to Strike the Testimony of Brad Kassner (Dkt. 87) is **DENIED AS MOOT**;

5)      Plaintiff's Motion to Strike Defendants' Amended Disclosure of Fact Witnesses and Strike the Testimony of Diana C. Coles (Dkt. 88) is **GRANTED IN PART** to the extent that Coles'

Declaration (Dkt. 81) is hereby **STRICKEN**; the three unidentified "corporate representatives" are stricken from Defendants' Amended Disclosure; and Defendants are directed to produce Diana Coles for deposition within **thirty (30) days** of the date of this Order, **at Defendants' expense**. The motion is otherwise **DENIED**.

  **DONE AND ORDERED** in chambers this ___8___ day of July, 2008.

                 **JAMES D. WHITTEMORE**
                 **United States District Judge**

Copies to:
Counsel of Record