UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

John J. Thornton,
(d/b/a/ Baby Boomer Headquarters)
an individual

        Plaintiff,

vs.

Case No.:8:06-cv-01640

J. Jargon Co.,
a Florida Corporation;
Jeanette C. Linders, an individual;
TOC Productions, Inc.
A Florida Corporation.

        Defendants.

_____/

**PLAINTIFF JOHN J. THORNTON'S MOTION FOR ADVERSE INFERENCE JURY INSTRUCTION REGARDING DISCOVERY VIOLATIONS BY DEFENDANT J. JARGON CO. AND MEMORANDUM OF LAW IN SUPPORT**

      Plaintiff John J. Thornton, by and through his undersigned attorneys, respectfully seeks entry of an order imposing sanctions against Defendant J. Jargon Co. for discovery violations. Sanctions are unfortunately warranted due to Jargon's deceptive and misleading interrogatory answers and Fed. R. Civ. P. 30(b)(6) deposition testimony. As a sanction, Mr. Thornton seeks a jury instruction detailing Jargon's deceptive and misleading answers, and further that the jury be instructed that an adverse inference should be drawn therefrom. Mr. Thornton likewise seeks entry of an order conclusively establishing the facts in dispute. In support of this motion, Mr. Thornton states as follows.

## I. SUMMARY OF ARGUMENT

Mr. Thornton recently uncovered significant differences between Jargon's discovery responses in this litigation and facts advanced by Jargon in a prior litigation before this Court. Namely, Jargon filed a Verified Complaint for trademark infringement in an earlier litigation (Case No. 6:04-CV-251-ORL-19-KRS (M.D. Fla.)) wherein it readily admitted to being a "producer" of the Musical that provided "theatrical production" services as well as "sales and presentation services" for the Musical. Jargon also readily admitted that programs for the Musical – *programs that included copies of the Age Test that are the subject of this litigation* -- were examples of its "promotional materials." All of these statements are directly contradicted by Jargon's interrogatory answers and Fed. R. Civ. P. 30(b)(6) deposition testimony in the present case. Namely, in response to Mr. Thornton's discovery requests, Jargon claimed it never produced the musical and that it had absolutely nothing to do with the Musical, other than licensing performances to other production companies. Likewise, Jargon disclaimed having anything to do with printing or producing show programs. The differences between Jargon's position in the prior litigation and its position now is too stark not to impose sanctions.

## II. FACTUAL BACKGROUND

**A. The Parties.**

This is a copyright infringement action concerning a trivia quiz that was authored by Mr. Thornton entitled the Baby Boomer Qualifying Exam ("BBQE")[1]. Mr. Thornton is a proud member of the baby boom generation and is also a self proclaimed trivia buff. The BBQE features a number of fill in the blanks trivia questions that Mr. Thornton devised and that are specifically tailored to the pop culture of baby boomers (i.e. people born between the years 1946 and 1964). Mr. Thornton holds a U.S. Copyright Registration on the BBQE.

---

[1] This factual background is adopted from the factual background set forth in Plaintiff's Motion for Partial Summary Judgment. See Summ. J. Mot. [Dkt. 67].

Defendants have infringed Mr. Thornton's copyright by including an unauthorized version of the BBQE in programs for the popular live theater show entitled "Menopause the Musical" (the "Musical"). These programs include a page featuring a quiz entitled the "Take the Age Test," which is nearly a word for word reproduction of the BBQE. Defendant Linders is also the President and owner of both the named corporate Defendants-- TOC Productions, Inc. and J. Jargon Co. TOC is a production company that is responsible for several aspects of bringing the Musical to the stage in various cities across the United States. Various third party production companies are also involved in producing the Musical. An example of one of these third party production companies is G4 Productions, Inc. TOC's role as a production company includes producing the programs that are distributed at performances of the Musical. Jargon's exact role in producing the musical and the associated programs is the subject of the present motion as detailed hereinafter.

**B. Procedural Posture.**

Discovery in this matter has closed and the Court has ruled on the parties' respective summary judgment motions. See Order of 5/6/07 [Dkt. 41]; Order of 7/8/08 [Dkt. 104]. The parties are currently preparing for a pre-trial conference to be held on October 3, 2008. See Order of 7/8/08 [Dkt. 103]. This matter is currently set for trial starting on or after November 17, 2008. See Amended Order [Dkt. 114]. In its Summary Judgment Order, the Court concluded that Mr. Thornton is the owner of a valid copyright in the BBQE. See Order of 7/8/08 [Dkt. 104] at pg. 12. The Court also concluded that, although Mr. Thornton did not suffer any actual damages, he was still entitled to Defendants' profits attributable to the infringement. See id. at pg. 23. More specifically, the Court determined that Mr. Thornton had demonstrated a reasonable relationship between the program and gross revenues from ticket sales for the Musical. See id.

### C. Defendants' Motion for Reconsideration.

Following the Court's Summary Judgment Order, Defendants filed a Motion for Reconsideration. See Mot. for Recons. [Dkt. 104]. In it, Defendants argued that because Jargon was not a producer of the Musical and was not involved-- *in any way*-- in providing program content, Jargon could not be liable as an infringer. Defendants relied upon the Fed. R. Civ. P. 30(b)(6) testimony of Jargon in support of this position:

> J. Jargon's corporate representative testified that it was not involved in providing content that is included in programs that are distributed at the Musical, Dkt. 68-25 (Jargon) 6:3-6, 14-18. The representative was asked: "Q. So other than licensing the rights of the musical, J. Jargon really doesn't have anything to do with the –the production or program content? A. That's true." Dkt. 68-25 (Jargon) 10:10-14; see also Dkt. 68-25 (Jargon) 6:14-18 ("Q. So other than licensing the intellectual property rights to the musical, does J. Jargon have anything else to do with the Musical? A. No.").
>
> Moreover, the unrebutted testimony of J. Jargon's corporate representative shows that J. Jargon is not in any way involved in providing content that is included in programs that are distributed at the Musical, Dkt. 68-25 (Jargon) 6:3-6, 14-18. The representative was asked: "Q. So other than licensing the rights to the musical, J. Jargon really doesn't have anything to do with the –the production or <u>program content</u>? A. That's true. Dkt. 68-25 (Jargon); 10:10-14 (emphasis added). As a matter of law, therefore, there can be no infringer's profits as to J. Jargon.

See Mot. for Reconsideration at pgs. 7, 15. (emphasis in original)

The Court denied Defendants' Motion for Reconsideration. See Order of 8/8/08 [Dkt. 108]. The Court based its decision on the fact that Defendants' summary judgment motion failed to differentiate between the various Defendants and otherwise did not distinguish between Jargon's role in relation to that of the other Defendants. See id. at pg. 2.

### D. Jargon's Threatened Rule 11 Motion.

Four days after the Court denied Defendants' Motion for Reconsideration, Jargon served a motion under Fed. R. Civ. P. 11 against both Mr. Thornton and the undersigned attorneys. See Ex. A, Motion for Attorneys Fees and Costs as a Sanction Pursuant to Rule 11 Fed. R. Civ. P.

(hereinafter "Jargon's Rule 11 Motion"). The factual basis underlying Jargon's Rule 11 motion was the same as its Motion for Reconsideration. Moreover, Jargon argued that Mr. Thornton's attorneys lacked a good faith basis for initially bringing suit against Jargon. Jargon argued that the undersigned attorneys filed the present action for the purpose of "extortion" and to "coerce" Jargon into a settlement. See id. at pg. 7. The motion seeks fees and costs against both Mr. Thornton and his counsel. In support of its Rule 11 motion, Jargon quoted from the same Jargon Fed. R. Civ. P. 30(b)(6) deposition testimony featured in its Motion for Reconsideration:

> J. Jargon's corporate representative testified in deposition that it was not involved in providing content that is included in programs that are distributed at the Musical, Dkt. 68-25 (Jargon) 6:3-6, 14-18. The representative was asked: "Q. So other than licensing the rights of the musical, J. Jargon really doesn't have anything to do with the – the production or program content? A. That's true." Dkt. 68-25 (Jargon) 10:10-14; see also, Dkt. 68-25 (Jargon) 6:14-18 ("Q. So other than licensing the intellectual property rights to the musical, does J. Jargon have anything else to do with the Musical? A. No.")
>
> Discovery on J. Jargon's role made clear that J. Jargon had nothing to do with putting together the programs or distributing them. It only licensed rights in the Musical to Toc Productions and other production companies. Dkt. 68-25 (Jargon) 10:10-14; Dkt. 68-25 (Jargon) 6:14-18. In light of these facts, there cannot be any profits of J. Jargon attributable to the alleged infringement. The claim against J. Jargon for infringer's profits, therefore, is frivolous.

See Jargon's Rule 11 Motion, Ex. A at pgs. 2 - 4.

It should be noted that Jargon has not yet formally filed its Rule 11 Motion. Nevertheless, the motion is believed to be ripe insomuch as Jargon has not withdrawn the motion, Mr. Thornton is unwilling to dismiss his claims against Jargon, and because the 21 day "safe harbor" provision in Rule 11 has now elapsed. Moreover, and as explained hereinafter, Mr. Thornton is bringing Jargon's threatened Rule 11 motion to the Court's attention as it is based upon the same misleading and evasive deposition testimony that forms the basis for the present motion.

## III. JARGON'S MISLEADING AND DECEPTIVE DISCOVERY RESPONSES

### A. Jargon's Verified Complaint vs. Jargon's 30(b)(6) Deposition.

Jargon was previously a litigant before this Court. In 2004 Jargon filed a five count complaint for trademark infringement against Entertainment Events, Inc., John Pratt and Timothy P. Flaherty. See Ex. B., Verified Complaint, Injunctive Relief and Jury Trial Requested ("Jargon's Verified Complaint").[2] Jargon's Verified Complaint was signed by Defendant Linders in her capacity as the President and sole shareholder of Jargon. See id. pg. 17. In verifying the complaint, Ms. Linders swore under penalty of perjury as follows:

> I am the President and sole shareholder of J. Jargon Co. I have read the foregoing Verified Complaint and know that contents thereof and the same are true of my own knowledge, except as to such matters therein stated to be on information and belief, and as to these matters, I believe them to be true.

See id. at pg. 17.

In Jargon's Verified Complaint, Jargon/Linders made a number of statements that are directly counter to the statements made during Jargon's Fed. R. Civ. 30(b)(6) deposition. It should be noted that, despite the fact that Linders is the President and sole shareholder of Jargon, and the fact that Jargon has no employees, Linders was not designated as Jargon's Fed. R. Civ. P. 30(b)(6) representative. See Ex. C, Clouse Depo. At pg. 5, lines 17-18. Rather, Linders directed that TOC employees, Ms. Catherine Clouse and Ms. Joanne Grant, testify on behalf of Jargon. See Ex. D, Grant Depo. As noted in the following chart, the testimony from these two corporate representatives directly contradicts the statements made by Linders in her Verified Complaint.

---

[2] Holland & Knight LLP, by way of Gregg Thomas and James McGuire, represented the defendants in the 2004 trademark litigation. The undersigned attorneys were not involved in the prior litigation and Messrs. Thomas and McGuire are no longer with Holland & Knight LLP.

-6-

| Fed. R. Civ. P. 30(b)(6) Deposition Testimony of J. Jargon Co. Case No. 8:06-CV-1640-T27-TWG (M.D. Fla.) | Verified Complaint of J. Jargon Co. Case No. 6:04-CV-251-ORL-19-KRS (M.D. Fla.) |
|---|---|
| Q. Okay. Is J. Jargon involved in any way in producing Menopause the Musical?<br>A. In the production?<br>Q. Yes.<br>A. No.<br><br>Clouse Depo. at pg. 5, lines 19-23. | The Show [Menopause the Musical] has been playing to the public in the Orlando area continuously since the Spring of 2003, presented and produced by Jargon.<br><br>Verified Complaint at ¶11. |
| Q. Okay. And other than licensing those rights to companies that actually produce the musical, does J. Jargon have anything else to do with the musical?<br>A. No.<br>Q. So, other than licensing the intellectual property rights to the musical, J. Jargon's got nothing to do with the musical?<br>A. Pretty much, yes.<br><br>Clouse Depo. at pg. 6, lines 14-22. | From 2001 through the present, Jargon has consistently provided services relating to the theatrical production of the Show [Menopause the Musical], as well as sales and presentation services, and has sold products bearing the Mark MENOPAUSE THE MUSICAL to customers in Florida and across the United States.<br><br>Verified Complaint at ¶13. |
| Q. Okay. So, just to be clear, other than licensing these intellectual property rights, J. Jargon really has nothing to do with the musical, other than licensing the intellectual property rights.<br>A. And the collection of royalties.<br>Q. And the collection of royalties.<br>A. Correct.<br><br>Grant Depo. at pg. 6, lines 6-13. | Jargon has presented the Show [Menopause the Musical] before sessions of the United States Congress and at several highly respected national health conventions and universities.<br><br>Verified Complaint at ¶10. |

| Fed. R. Civ. P. 30(b)(6) Deposition Testimony of J. Jargon Co. Case No. 8:06-CV-1640-T27-TWG (M.D. Fla.) | Verified Complaint of J. Jargon Co. Case No. 6:04-CV-251-ORL-19-KRS (M.D. Fla.) |
|---|---|
| Q. [y]ou were here, were you not, for the testimony of Miss Clouse, where she indicated that J. Jargon is a holding company for the intellectual property rights associated with Menopause the Musical? <br> A. That's correct. <br> Q. And did you agree with her answer that, in fact, J. Jargon is just a holding company? <br> A. To the best of my knowledge. <br> A. Okay. And that J. Jargon has no role in the actual production of the musical? <br> A. That's correct. <br><br> Grant Depo. at pg. 5, lines 14-25; pg. 6, line 1.. | The Show [Menopause the Musical] is currently or has recently been presented by (or by license from) Jargon in the following states: Florida, New York, Illinois, Arizona, California, Kansas, Pennsylvania, Texas and Massachusetts. <br><br> Verified Complaint at ¶10. |
| Q. And J. Jargon has no role in providing content that is included in the programs that are distributed in the musical? <br> A. That's correct. <br><br> Grant Depo. at pg. 6, lines 1-5. | Exhibit B to Verified Complaint includes "Jargon's Promotional Materials" which includes a program with the Take the Age Test. <br><br> Verified Complaint at ¶14. |

Thus, when Jargon was a plaintiff seeking to enforce its trademark rights before this Court, Jargon swore that it both "presented" and "produced" the Musical and that it provided "theatrical production" services as well as "sales and presentation services" related to the Musical. Now that Jargon finds itself in the position of being a defendant before this Court, it is swearing under oath that it is merely a licensing entity and that it has nothing to do with producing the Musical. Clearly, Jargon should not be permitted to maintain such divergent positions before this Court.

Jargon's corporate representatives also maintained that Jargon played no role in providing program content to third party producers of the Musical, such as G4. Yet, as demonstrated by

the exchange below, Jargon's corporate representatives initially expressed some uncertainty on this issue, at least until a brief break was taken to confer with its attorney, Ms. Wasylik:

> Q  Let's talk about a licensed show where it's J. Jargon licensing to G4.
> A  Right.
> Q  G4 is the producer of the musical, okay?
> A  Okay.
> Q  Who is it that tells G4 what must be included in the program?
> A  I don't know, because I don't remember reading the contract specifically for that.
> Q  You don't know if it would be J. Jargon that would do that?
> A  What?
> Q  It would be J. Jargon that would tell G4, these are the requirements that have to be in the program?
> A  I think ... I'm not sure.
> Q  Okay.
> MS. WASYLIK:  Can we take a little break?
> MR. COLITZ:  Sure.
> MS. WASYLIK:  Come outside.
> (Break.)
> BY MR. COLITZ:
> Q  We're back from a break, Miss Clouse, and
> I'm just trying to determine if we're talking about a licensed show where J. Jargon is licensing the performance to an entity such as G4, who tells G4 what requirements -- what the requirements for the program are.
> A   Well, they're given ... given the rules about the equity which they know, and then they're also given, you know, the graphics and things like that, which come out of the TOC graphics department.
> Q  So it would be the TOC, T-O-C, Productions graphic department?
> A   Right.
> Q   That would tell G4, this is what should be included in the program?
> A  Right.
> Q  Okay.  And it wouldn't be J. Jargon?
> A  No.

See Clouse Depo. at pg. 8, lines 20-25; pg. 9, lines 1-25; pg. 10, lines 1-14.

**B.  Jargon's Verified Complaint vs. Jargon's Interrogatory Answers.**

Jargon interrogatory answers also conflict with its Verified Complaint.  Namely, during this litigation, Jargon provided interrogatory answers stating that "…Neither J. Jargon Co. or Jeanette C. Linders has ever produced or printed programs."  See Ex. E, Def. Jargon and Linders

-9-

Resp. to Second Interrog. at pg. 3. Here again, this position is flatly contradicted by Jargon's Verified Complaint. Namely, attached as Exhibit B to Jargon's Verified Complaint are samples of "Jargon's promotional materials" one of which is a program for the Musical prominently featuring the Take the Age Test ! <u>See</u> Ex. B, Verified Complaint at ¶¶13-14. Again, Jargon has adopted a first position before this court as a plaintiff and is now taking a contrary position now that it finds itself in the role of defendant. Jargon should not be permitted to maintain such clearly inconsistent positions before this court. More to the point, Jargon should not be permitted to use these deceptive and misleading statements as a basis for a motion for reconsideration and/or a motion for sanctions under Rule 11.

## IV. <u>GOVERNING LAW</u>

"The purpose of discovery is to obtain the disclosure of all relevant information so that disputed issues are resolved fairly and justly in light of a full and accurate understanding of the facts. Discovery operates with minimal judicial supervision absent a dispute requiring judicial intervention. Discovery is accomplished voluntarily – that is, the parties disclose relevant information without the need for court orders compelling disclosure. In this manner, lawyers do their duty as officers of the court seeking the truth." <u>See</u> <u>Sexton v. U.S.</u>, 2001 WL 649445, *1 (M.D. Fla.). (internal citations omitted).

A court can impose sanctions for discovery violations under either Fed. R. Civ. P. 37(b) for violation of a court order, or upon its inherent power to mange its docket and its cases. <u>See</u> <u>In re Seroquel Products Liability Litigation</u>, 244 F.R.D. 650, 657-64 (M.D. Fla.). "The key to unlocking a court's inherent power is a finding of bad faith." <u>See</u> <u>In re Sunshine Stores, Inc.</u>, 456 F.3d 1291, 1304 (11th Cir. 2006) (<u>quoting</u> <u>Byrne v. Nezhat</u>, 261 F.3d 1075 (11th Cir. 2001)). A party can demonstrate bad faith by taking actions to delay or otherwise disrupt a litigation. <u>See</u> <u>id</u>.

A wide range of sanctions are available for discovery violations. These sanctions range from the most severe sanction of a dismissal or a default judgment to the lesser sanctions of an adverse inference instruction to the jury or orders conclusively establishing the facts in question. See Fed. R. Civ. P. 37(b). Overall, a court must be "flexible" in applying Rule 37 because without adequate sanctions, procedures for discovery would be rendered ineffectual. See Wright & Miller, Federal Practice & Procedure, 8A FPP §2281-2284. Ultimately, a "court is directed to make such orders as are just and is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped response." See id. at §2284.

## V. **ARGUMENT**

Sanctions are unfortunately warranted in the present case. The differences between Jargon's Verified Complaint in the earlier litigation and its discovery responses in present case are too stark to be easily disregarded. When it suited Jargon in its role as plaintiff, it readily admitted to being a "producer" of the Musical that provided "theatrical production" services as well as "sales and presentation services" for the Musical. In its role as plaintiff, Jargon also readily admitted that programs for the Musical -- *programs that contained the Age Test* -- were examples of its promotional materials. Now that Jargon finds itself as a defendant, its story has completely changed. Jargon now claims it never produced the musical. It claims that it has absolutely nothing to do with the Musical, other than licensing performances to other production companies. Likewise Jargon now disclaims having anything to do with printing or producing show programs.

The clear conflict between these sworn statements, and the fact that Jargon's current statement are aimed at avoiding liability for infringement, leads to the unmistakable conclusion that Jargon's discovery responses were made in bad faith. This conclusion is only reinforced when considering that Jargon used its misleading and deceptive responses offensively as the

basis to reconsider this Court's Summary Judgment Order and, later, after that motion was denied, a motion under Fed. R. Civ. P. 11 against Mr. Thornton and his attorneys.

## VI. CONCLUSION

Mr. Thornton respectfully seeks entry of an order imposing sanctions against Jargon for misleading and deceptive interrogatory answers and deposition testimony in the present litigation. More specifically, Mr. Thornton seeks a jury instruction at trial detailing the differences between Jargon's Verified Complaint and Jargon's Fed. R. Civ. P. 30(b)(6) testimony and interrogatory answers. Mr. Thornton likewise seeks an instruction informing the jury that an adverse inference should be drawn from Jargon's conflicting statements. Mr. Thornton also seeks an order precluding Jargon from attempting to rebut any of the facts stated in the Verified Complaint relating to Jargon and its role in producing the Musical and show programs. Should the present motion be granted, Mr. Thornton would be willing to draft a proposed instruction for the Court's consideration. Finally, Mr. Thornton seeks his attorneys' fees and costs associated with the instant motion.

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)

Plaintiff's counsel conferred with counsel for Defendants in a good-faith effort to resolve the issues presented by this motion. However, the parties were unable to reach a resolution.

/s/Michael J. Colitz, III
William F. Hamilton
Florida Bar No. 379875
Stefan V. Stein
Florida Bar No. 300527
Michael J. Colitz, III
Florida Bar No. 164348
Woodrow H. Pollack
Florida Bar No. 026802
Holland & Knight LLP
100 N. Tampa Street
Suite 4100
Tampa, FL 33601-3644
Tel: 813/227-8500 Fax: 813/229-0134
william.hamilton@hklaw.com
stefan.stein@hklaw.com
michael.colitz@hklaw.com
woodrow.pollack@hklaw.com
ATTORNEYS FOR JOHN J. THORNTON

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2008 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: G. Donovan Conwell, Jr., G. Wrede Kirkpatrick, Dineen Pashoukos Wasylik, Conwell, Sukhia & Kirkpatrick, P.A., 2701 N. Rocky Point Drive, Suite 1200, Tampa, FL 33607.

/s/ Michael J. Colitz, III
Attorney

# 5626987_v2