UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. THORNTON,
(d/b/a Baby Boomer Headquarters)
an individual,

     Plaintiff,

vs.
                           CASE NO.: 8:06-cv-1640-T27-TGW

J JARGON CO., a Florida corporation;
JEANETTE C. LINDERS, an individual,
and TOC PRODUCTIONS, INC., a Florida
Corporation.

     Defendants.
_____/

### DEFENDANT J. JARGON CO.'S OPPOSITION TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE JURY INSTRUCTIONS REGARDING DISCOVERY VIOLATIONS

Defendant J. Jargon Co. ("J. Jargon"), by and through its undersigned counsel opposes to Plaintiff, John J. Thornton's ("Thornton") Motion for Adverse Inference Jury Instruction regarding Discovery Violations [Dkt. 115] ("the Motion") as follows:

### SUMMARY OF ARGUMENT

In the Motion, Thornton alleges that the deposition testimony and answers to interrogatories given by J. Jargon in the case at bar are inconsistent with an allegation that J. Jargon made in a pleading in another case (hereinafter "the Trademark Case"). Contrary to Thornton's argument, the discovery responses and testimony by J. Jargon in this case are accurate, truthful and consistent with the prior case pleading. Moreover, Thornton's arguments ignore key portions of J. Jargon's allegations made in the other case, and the allegations cited in the Motion are taken out of context. Further, Thornton asks this Court to

accept his interpretation and definitions of the words "producer" and "presenter", terms not defined by the Copyright Act, which are inconsistent with J. Jargon's definitions and use of the words. Because of these deficiencies, the Court should deny the Motion. Finally, the sanctions sought by Thornton are not appropriate, since there is no showing of bad faith or any other discovery violation under Rule 37.

## FACTUAL BACKGROUND

A. **This Copyright Infringement Action**

Defendant Jeannette Linders is the author of the play "Menopause the Musical," (the "Play"). She first registered the copyright in her name on June 20, 2000 (registration No.: PAU-2-535-888). In January, 2002, she assigned all of her rights in the copyright to J. Jargon. *See*, Admitted Facts Requiring No Proof at Trial at p. 8 of the Parties Joint Pre-Trial Statement. [Dkt. 116]

As the owner of the copyright, J. Jargon acted as a holding company, licensing to others the rights to publicly perform the Play. Some of the licenses are to companies controlled by Linders (such as defendant, TOC Productions, Inc., "TOC"), while other licenses are to unaffiliated companies, (such as G-4 Productions, Inc.). *See,* excerpts of transcripts of Linders deposition pp. 101-103 attached as Exhibit A. J. Jargon is a "rights holding company" that does not have any employees or any offices. *Id.* at 68-69. The financial records of TOC, which show that TOC paid for the printing of the programs for the Orlando presentation of the Musical at issue in the Motion, further show that the programs are TOC's material and not that of J. Jargon. *See*, Exhibit 1 to Linders Declaration attached hereto as Exhibit B.

In this case Thornton has sued TOC, Linders, and J. Jargon for copyright infringement, alleging that the defendants infringed upon his alleged copyright in a trivia quiz, entitled "the Baby Boomer Qualifying Exam" ("BBQE"), that Thornton alleges was infringed by the "Take the Age Test" trivia quiz included in some copies of the free programs for Menopause the Musical. J. Jargon has denied Thornton's claims of copyright infringement and has presented evidence[1] that it has not distributed, exploited, copied or duplicated the BBQE, because Jargon did not print, manufacture, distribute, exploited, copy, perform or duplicate the program, a requirement for a claim of copyright infringement. *See* 17 U.S.C. §106(1), (3), (4) & (5).

**B. The Trademark Case**

In 2004, J. Jargon filed a suit for trademark infringement and unfair competition in this District against Entertainment Events, Inc., John Pratt and Timothy P. Flaherty. *See* Complaint, Case No. 6:04 CV 251 119 KRD ("the Trademark Case"). In the Trademark Case, J. Jargon alleged that the defendants' use of the mark "Menopositive, The Musical" for a competing play infringed J. Jargon's "Menopause, the Musical" mark. In the Trademark Case, J. Jargon alleged ownership of trademark rights in Menopause the Musical, and sought to enforce those rights. *Id.* There were no copyright infringement allegations in the Trademark Case. *Id.*

---

[1] J. Jargon has consistently testified in the form of answers to interrogatories, and in its 30(b)(6) depositions through Joanne Grant and Catherine Clouse, that it is a holding company, that it is not involved in any way in producing the Play, and that it "pretty much" has nothing to do with the Play other than licensing rights in it to others and collecting royalties. J. Jargon's Motion for Reconsideration [Dkt. 104] and as yet-unfiled Motion for Rule 11 Sanctions, cited by the Plaintiff in his Motion, are likewise consistent with J. Jargon's position that it has not infringed upon the Plaintiff's alleged exclusive rights in the Age Test, because J. Jargon did not create, copy, distribute or exploit the programs to the Musical.

On September 22, 2008, Plaintiff's counsel in this case emailed a letter to Defendants' undersigned counsel in which he claimed that J. Jargon had taken positions in the Trademark Case that were contrary to positions it took in this case. Plaintiff's counsel attached a copy of the Trademark Case complaint and said that he planned to move for sanctions against J. Jargon, including an adverse inference instruction. Prior to this email/correspondence, the Plaintiff had not produced the Trademark Case complaint to Defendants in this case and the Defendants' undersigned counsel was not aware of its existence. Plaintiff's counsel, in contrast, obviously had been aware of it, because Holland & Knight represented the defendants in the Trademark Case and represent the Plaintiff in this case.

## ARGUMENT

I.  **The Testimony in the Copyright Action is Entirely Consistent with the Allegations made by J. Jargon in the Trademark Case.**

   A.  *The Complaint in the Trademark Case Alleges that All Presentations of the Play Are Made Through Licensees.*

Thornton has omitted key portions of J. Jargon's allegations lodged in the Trademark Case complaint, and as a result, the Motion distorts J. Jargon's allegations in that matter. Plaintiff's misstatement of the factual allegations of the Trademark Case do not support any conclusion that J. Jargon was claiming that it copied and distributed programs, whether or not they contained the Age Test. Instead, a proper reading of the J. Jargon Trademark Case complaint shows that J. Jargon only alleged that it "produced" and "presented" the Musical. *See* Trademark Case complaint. Thornton now wants this court to extrapolate the words

chosen by J. Jargon's counsel in the Trademark Case in a manner inconsistent with the Copyright Act and inconsistent with common theatre industry parlance.

In the Trademark Case, J. Jargon alleged in paragraph 10 of the verified complaint:

> "Through numerous theatrical productions companies formed or licensed by Jargon, the show has been presented in various venues around the country…successful presentations of the show, through Jargon's licensed presentations has run in excess of one year in West Palm, Orlando, Miami and now, New York City…Furthermore, there are several continuing licenses from Jargon to third parties for production of the show in the United States and Foreign Territories. The show is currently or has been presented by (or by license from) Jargon in the following states:"

*See* Trademark Case complaint, at ¶10 (emphasis added). This material omission in the Motion seeks to obscure the consistency between the allegations of J. Jargon in the Trademark Case, that J. Jargon merely licensed the Play to others who performed the Musical, and the testimony presented in the case at bar.

**B.** ***There is no Legal Significance to the Use of the terms "Produce" and "Present" in the Trademark Case.***

The Plaintiff also attempts to argue that J. Jargon's statement in paragraph 11 of the Trademark Complaint that it presented and produced the Play means that J. Jargon therefore must have infringed the BBQE by reproducing in copies, distributing, or performing the Age Test, since the Age Test appears in programs. However, the logic of Thornton's argument is disjointed in a copyright context; for the Copyright Act uses the word "perform" and not "produce" when describing the exclusive rights of authors, *see,* 17 U.S.C. 106. Nowhere in the Copyright Act are the words "produced" or "presented" defined. However, in the context of the theatre industry, these terms are not indicative that J. Jargon was the party who performed the play, or printed, copied, disseminated or distributed the program which

contained the Age Test. *See* Linders declaration at paragraphs 4 and 5; Doppelt declaration at Paragraph 24; Section 106 of the Copyright Act.

The only issue for the trier of fact in this action is whether J. Jargon copied, disseminated or distributed the program, and <u>not</u> whether J. Jargon produced or presented the Play. Most telling, at no place in the Trademark Case complaint does J. Jargon allege that it printed, copied, or distributed the program. Admittedly, paragraph 14 of the Trademark Case complaint makes a poor description of the program. For example, the complaint does state that an example of Jargon's "promotional materials" are attached as Exhibit "B." However, attached as Exhibit "B" to the Trademark Case complaint is the same program that is at the heart of this case. That Exhibit demonstrates the true party that created the program was TOC Productions, and not J. Jargon. Nowhere in the program is any attribution given to J. Jargon. To the contrary, the program attached to the Trademark Case complaint clearly shows that the Musical is presented and produced by TOC Productions, Inc. *See* Exhibit B to the Trademark Case complaint, at page 31 of 42 ("TOC Productions, Inc. Presents Menopause the Musical"); page 32 of 42 (listing the employees of Toc Productions, Inc.).

    **C.**    *There is no Legal Significance to the Inclusion of Unbranded Pages of a Program in Exhibit B to the Trademark Case Complaint.*

Moreover, the Trademark Case allegation that examples of Jargons "promotional materials" are attached as at Exhibit "B" to that Complaint should be given little weight. Doppelt notes that the unbranded pages were included "for completeness," and not intended to imply that the program as a whole was created by Jargon. Doppelt Decl. ¶ 25. Thus, it appears that the program pages after the front page of the program that included, by license, the Menopause the Musical trademarks, were mistakenly attached as an exhibit to the

Trademark Case complaint because said pages did not promote the trademark. This potential inconsistency is more than adequately explained by Linders and by Ms. Doppelt, the attorney who drafted the Trademark Case complaint. Both witnesses have stated in their respective declarations that that what they alleged in ¶10 is that the presentations of the Play occurred *"through production companies formed or licensed by Jargon."* Thus, they intended that all subsequent references to presentations or productions of the Musical by J. Jargon would be understood to have occurred *through licensed production companies*. *See,* Declarations of Jeanie Linders and Ava Doppelt attached as Exhibits B and C.

The Trademark Case complaint also alleges that examples of J. Jargon's promotional material are attached as Exhibit B to the Trademark Complaint. To the extent that the entirety of a printed program is included in Exhibit B, that occurred in error. Linders Declaration at ¶ 10; Doppelt Declaration at paragraphs 20, 24-25. The cover page of a printed program contains Jargon's trademarked name, Menopause the Musical, and the dancing ladies' logo. The cover page in exhibit B is not followed by the remainder of the program but is separated by several pages of other material displaying J. Jargon's trademarked name and logo from the remainder of the printed program, which starts at page 31 of Exhibit B. (Dkt. 115-3).

**II.     J. Jargon has Not Acted in Bad Faith, and Sanctions are Not Warranted.**

Nothing in the Plaintiff's Motion identifies any discovery violation by J Jargon or any of the Defendants. The Defendants answered the deposition questions and interrogatories propounded to them. To the extent those answers differ from the allegations of the trademark Complaint, it is for a jury to resolve them. Assuming the Plaintiff is permitted to use the

7

Trademark Case complaint at trial, even though his counsel clearly knew about it when they filed the Complaint in this case yet refused to make defense counsel aware of it until the day before the pretrial conference meeting, the Plaintiff can attempt to use the Trademark Case complaint for impeachment. But there is no basis to sanction J Jargon or to give an adverse inference jury instruction. J. Jargon has given truthful testimony in this case, which is consistent with the context in which the Trademark Case was pled. The attached declarations of Linders and Doppelt show that Jargon has at all times acted in good faith. Thus, an adverse inference jury instruction is clearly not appropriate.

As the Motion points out, "'[t]he key to unlocking a court's inherent power is a finding of bad faith.'" *In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1304 (11th Cir. 2006). "A party ... demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* Here, there is no allegation that J. Jargon has hampered enforcement of a court order. Plaintiff instead argues that J. Jargon somehow disrupted the litigation in *this* case by taking a position contrary to its alleged position in a case *that was closed years ago*. Not only are the allegations consistent, as explained above, but Plaintiff has utterly failed to show how the supposed inconsistency has disrupted or otherwise hampered this case. Indeed, Jargon's truthful answers to interrogatories and in other discovery in this matter lead Plaintiff to file an unopposed motion to add defendant TOC Productions, Inc. as a party in this matter. *See* Dkt. 38. Far from obstructing the truth in this matter, Jargon has at all times acted appropriately.

Jargon has not made inconsistent representations to the Court. Rather, at all times, Jargon maintained that it was the owner of the copyright and that it was merely the licensor

to third parties, including TOC Productions, who prepared, copied and distributed the programs. While Jargon's counsel may have alleged (in the Trademark Case) that Jargon "produced" or "presented" the Play, those words do not mean that Jargon prepared, copied or distributed the program. Plaintiff's Motion for Sanctions quotes, out of context, the sentence in the trademark Complaint that "Jargon has presented the Show before sessions of the United States Congress and at several highly respected national health conventions and universities." *See*, Motion for Sanctions at p. 7. This should be read in context with the statement only three sentences earlier that the presentations of the Show are "through theatrical production companies formed or licensed by Jargon," and in context with the next sentence that the successful presentations of the Show are "through Jargon's licensed presentations." Plaintiff's Motion for Sanctions is unfair and misleading because it argues that Jargon presents the Musical itself, rather than through production companies that it licenses, completely ignoring Jargon's allegations in ¶10 of the trademark case which rebut that argument.

Yet another example of how the Motion for Sanctions misreads the trademark Complaint is found on page 7 where it quotes the allegation of ¶11 that "the Show has been playing to the public in the Orlando area continuously since the Spring of 2003, presented and produced by Jargon." The Motion for Sanctions fails to point out that ¶10 alleges that the presentation of the Show "in Orlando" has been "*through* Jargon's *licensed* presentations." (emphasis added). When read in its entirety, the Trademark Case complaint is not inconsistent with the testimony of the Defendants in this case that Jargon is just a holding company that licenses the Musical to theatrical production companies.

**III.  If the Complaint in the Trademark Case is Admitted into Evidence at Trial, the Trier of Fact is Competent to Assess its Relevance as Impeachment Without an Adverse Inference Instruction or Sanction.**

Finally, to the extent a trier of fact could read the complaint in the Trademark Case as inconsistent with the discovery answers given in this case, it is for a jury to resolve the factual issues, and no adverse inference instruction is necessary for the jury to undertake that analysis. The Federal Rules of Evidence and general evidentiary principles allow that a witness may be impeached through the introduction of prior inconsistent statements. "It is a basic rule of evidence that prior inconsistent statements may be used for impeachment purposes." *U.S. v. Maizumi,* 526 F.2d 848, 850 (5th Cir. 1976).

The supposed inconsistent statements, if not explained to the satisfaction of the fact finder, can be used by the fact finder to determine witness credibility. There is no legal authority for the court using an inconsistency to do more than that. The Plaintiff has not cited any legal authority for his request to use an inconsistent statement to sanction a party, to create an adverse inference jury instruction or to deny a party the right to explain or rebut the inconsistency.[2] Court dockets would be full of motions like Plaintiff's Motion for Sanctions if a prior inconsistent statement supported sanctions and the other punitive measures requested by Plaintiff, because witnesses often make inconsistent statements. The Plaintiff in this case is no exception and his numerous inconsistent statements on material issues in this case will be highlighted during the upcoming trial. That is the role of cross examination and impeachment. It is not the role of Rule 37, which is designed to prevent parties from

---

[2] Moreover, Plaintiff does not provide the Court with any means to fully assess his request, because he fails to suggest either a standard jury instruction or some other jury instruction fashioned by him that would meet his needs. For this reason alone, the Motion should be denied. *See BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1150 (11th Cir. 2007)(noting it is unreasonable for counsel to expect a trial court to fashion a jury instruction from scratch when counsel failed to submit a proposed instruction in writing).

willfully disobeying the rules of discovery. There is no evidence of any conduct by the defendants triggering any sanction under Rule 37 of the Federal Rules of Civil Procedure and the Motion for Sanctions should be denied.

## CONCLUSION

Thornton has not demonstrated bad faith in the part of J. Jargon to justify sanctions, especially a jury instruction that would have the effect of prejudicing the jury against J. Jargon. To the extent that the Trademark Case makes allegations inconsistent with testimony in this case, such inconsistencies at most may be useful for impeachment at trial. The supposed inconsistent statements, if not explained to the satisfaction of the fact finder, can be used by the fact finder to determine witness credibility. There is no legal authority for the court using an inconsistency to do more than that. Finally, Thornton's request for fees should be denied.

Dated: October 20, 2008     By: */s/ G. Donovan Conwell, Jr.*
G. Donovan Conwell, Jr.
Florida Bar No: 371319
G. Wrede Kirkpatrick
Florida Bar No: 984116
Dineen Pashoukos Wasylik
Florida Bar No: 191620
CONWELL KIRKPATRICK, P.A.
2701 N. Rocky Point Drive, Suite 1200
Tampa, Florida 33607
(813) 282-8000; (813) 282-8800 Facsimile
dconwell@csklawfirm.com
wkirkpatrick@csklawfirm.com
dwasylik@csklawfirm.com
Counsel for Defendant TOC Productions

Mark Goldstein
Florida Bar No: 882186
Wolfe & Goldstein, P.A.
100 SE Second Avenue, Suite 3300
Miami, FL 33131
(305) 381-7115; (305) 381-7116 Fax
mgoldstein@wolfelawmiami.com
Counsel for Defendants Linders and J Jargon

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 20, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

> **William F. Hamilton, Esq.**
> william.hamilton@hklaw.com,
> **Stefan V. Stein, Esq.**
> stefan.stein@hklaw.com,
> **Michael J. Colitz, III, Esq.**
> michael.colitz@hklaw.com,
> **Woodrow H. Pollack, Esq.**
> woodrow.pollack@hlaw.com
> Holland & Knight LLP
> 100 N. Tampa Street, Suite 4100
> Tampa, FL 33602.

>  */s/ G. Donovan Conwell, Jr.*
>  Attorney