UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOHN J. THORNTON<br>(d/b/a Baby Boomer Headquarters)<br>an individual<br><br>Plaintiff,<br><br>v.<br><br>J JARGON CO., a Florida corporation<br>JEANETTE C. LINDERS, an individual; and<br>TOC PRODUCTIONS, INC., a Florida corporation.<br><br>Defendants. | Case No. 8:06-cv-01640 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND FULL COSTS AND MEMORANDUM OF LAW IN SUPPORT**

Mr. Thornton respectfully urges that Defendants' Motion for Attorney's Fees and Full Costs [Dkt. 192.] should be denied. Alternatively, the amount sought by Defendants should be substantially reduced.

**MEMORANDUM OF LAW**

**A.  There Is No Presumption That Fees Should Be Awarded – The Court Should Exercise Its Discretion And Deny Attorney's Fees**

Under the Copyright Act, awarding or denying attorney's fees is within the trial court's discretion. 17 U.S.C § 505 ("…the court *may* also award a reasonable attorney's fee to the prevailing party.") (emphasis added). "The word 'may' clearly connotes discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised…" *Id.* at 534 (quotation and citation omitted).

Defendants attempt to apply Seventh Circuit law in directing the Court's discretion for the present motion. Apparently, in the Seventh Circuit, under certain circumstances, prevailing defendants are presumptively entitled to attorney's fees. *See Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2004). The Eleventh Circuit, however, follows the language of the statute in maintaining that whether or not to award attorney's fees is within the sound discretion of the trial court. *See Casella v. Morris*, 820 F.2d 362, 366 (11th Cir. 1987) ("An award of fees [in a copyright infringement case] is generally discretionary, seldom mandatory."); *Sherry Manufacturing Co. v. Towel King of Florida, Inc.*, 822 F.2d 1031, 1034 (11th Cir. 1987) ("[T]he district court has discretion to award fees to any prevailing party….However, the fact that a losing party has acted in good faith or that his legal position had arguable merit will justify an exercise of the district court's discretion in deciding not to award attorney's fees."); *Donald Frederick Evans & Assoc's v. Continental Homes, Inc.*, 785 F.2d 897 (11th Cir. 1986) ("The language [of 17 U.S.C. § 505] clearly indicates that awarding of fees to the prevailing party is not mandatory.")

Defendants selectively quote *Cable/Home Communication Corp. v. Network Productions, Inc,* 902 F.2d 829, 853 (11th Cir. 1990) to support their argument that a fee award is presumptive. *See* Motion at 4. But *Cable/Home* clearly affirms the discretionary nature of the award in the Eleventh Circuit: "An attorneys' fee award is 'generally discretionary, seldom mandatory.'" *Id*. (quoting *Casella*, 820 F.2d at 366). There is no presumption that attorneys' fees should be awarded in the Eleventh Circuit and this Court should exercise its discretion and deny Defendants' Motion.

## B. Defendants Are Not "Prevailing Parties" For Purposes of Attorney's Fees

>Generally, the prevailing party under the attorneys' fee authorization of section 505 of the Copyright Act is identified as the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit. "A party's success on a claim that is 'purely technical or de minimis' does not qualify him as a 'prevailing party'."

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F. 2d 829, 853 (11th Cir. 1990). Thus, simply winning is not enough. To be a prevailing party, the victor must have significantly litigated the issue upon which it won, and not won by mere technicality. Thus, Defendants' Motion should also be denied because Defendants are not prevailing parties under the Copyright Act.

Mr. Thornton does not dispute that the result achieved for the Defendants was a complete win for them. But Defendants did not prevail on the issues that were significantly litigated. Rather, Defendants victory came on some purely technical reason – a reason only understood by the jury. Neither side focused the litigation or the trial on infringement. But that is how the jury decided this case. It is fair to say that both Mr. Thornton and the Defendants were surprised when the jury found no infringement. And the Court need look no further than Defendants various briefing throughout this case. [*See, e.g.,* Dkt. 21, 68, 104.] Defendants litigated a damages case. Defendants have argued the same position throughout this case – there is no liability because there are no damages. That is not how the Defendants won, however, and therefore Defendants are not prevailing parties. As such, the Court should not award them their fees.

In fact, Defendants were unsuccessful in almost all aspects of this case upon which they had an affirmative obligation. Defendants could not defeat Mr. Thornton's ownership of the work. [Dkt. 102 at Pg. 6.] Defendants could not invalidate Mr. Thornton's copyright

registration as supposedly failing to identify preexisting works. [*See id.* at Pg. 7.] Defendants could not invalidate Mr. Thornton's registration for lack of originality. [*See id.* at Pg. 10.] Nor could Defendants otherwise limit the scope of Mr. Thornton's copyright registration to the differences between his first and supplemental registrations. [Dkt. 118, 167.] Defendants likewise were unsuccessful in arguing that as a matter of law there were no profits attributable to the infringement. [Dkt. 102 at Pg. 23.]

And this latter point occupied the bulk of the briefing throughout the litigation. Defendants argued this point, both in opposing Mr. Thornton's discovery requests, in their summary judgment motion, and in post trial motions. [*See, e.g.,* Dkt. 21, 68, 104.] At no point did Defendants prevail on this issue. To the contrary, the Court's summary judgment order specifically found that there was a connection between the inclusion of the work in programs and Defendants' profits. [Dkt. 102 at Pg. 23.]

Defendants received a purely technical victory. While this excuses them from liability for their deeds, it does not make them prevailing parties.

### C. The *Fogerty* Factors Weigh Against An Award

In exercising its discretion, the Court must be "faithful to the purposes of the Copyright Act." *Fogerty*, 510 U.S. at 533 n.19. *See also Mitek Holdings, Inc. v. Arce Engineering Co.*, 198 F.3d 840, 842 (11th Cir. 1999). Also, in making its determination, it is proper for the Court to consider the economic disparity between the parties, as well as whether the litigation was used for competitive purposes in the marketplace. *Id.* (finding it to be error to decide whether or not to award attorney's fees based *solely* upon a parties' ability

to pay)[1]. *See also Roscieszewski v. Arete Assoc.*, 1 F.3d 225, 234 (4th Cir. 1993) ("the court may find relevant, among other circumstances, the ability of the non-prevailing party to fund an award."); *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) ("The relative financial strength of the parties is a valid consideration…").

Courts can further consider the following nonexclusive factors in deciding whether to grant an attorneys' fee award in copyright cases: frivolousness, motivation, objective unreasonableness and the need to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 534 n. 19. *See also Mitek*, 198 F.3d at 842.[2] These factors each govern in favor of Mr. Thornton, and the Court should deny Defendants' Motion.

### a. This Case Was Not Frivolous

The uncontested facts of this case unquestionably establish that Mr. Thornton's suit was meritorious. Mr. Thornton obtained a valid copyright registration on his Baby Boomer Qualifying Exam (the "BBQE"). [Pl's Tr. Ex. 5.] Ms. Linders incorporated a version of this BBQE into programs for her musical as the Take the Age Test. [Pl's Tr. Ex. 15.] There are significant similarities between the two works. Namely, twenty of the twenty-four questions from Defendants' Take the Age Test contain identical or near identical wording to questions in the BBQE. Mr. Thornton discovered the Take the Age Test by happenstance when he attended Defendants' musical in Tampa. Upon this discovery, he contacted Ms. Linders in an

---

[1] Defendants misread *Mitek* and argue that the Court can not consider whether the losing party can afford to pay. *See* Motion at 4. *Mitek*'s holding was not so broad. The trial court's error there was in *only* considering the losing party's ability to pay. Rather than focus solely on the losing party's ability to pay, the trial court's focus must continue to be "whether imposition of fees will further the goals of the Copyright Act." *Id.*

[2] Defendants have added an additional factor: "degree of success obtained." *See* Motion at 5. Such a factor would add little (if anything) to the analysis, and seems an additional attempt by Defendants to bring the Seventh Circuit's presumption of awarding fees to the prevailing party into the Eleventh Circuit. As explained *supra*, the Defendants did not prevail on the points of the case they litigated. While certainly victorious in the grand scheme of things, Defendants were not able to disconnect the free programs distributed at their Musical from the profits Defendants received. This was the point Defendants have argued all along (even in their Motion for fees), and their argument has lost time and again.

effort to come to an agreement regarding her continued use of the Take the Age Test. [Pl's Tr. Exs. 16-20.] That attempt failed, and he filed suit. Mr. Thornton's goal in this litigation was simple: to enforce his copyright and protect his work of authorship. Moreover, Mr. Thornton was enforcing his rights as he had done numerous times in the past. [Pl's Tr. Exs. 7-15.] This factor weighs in favor of Mr. Thornton.

### b. Mr. Thornton's Motivations Were Not Anticompetitive (or Solely Monetary)

Mr. Thornton was not motivated solely by financial gain in pursuing his copyright claim against Ms. Linders.[3] Rather, as the pre-suit emails between the parties explain, Mr. Thornton sought a dialogue, and perhaps some form of working relationship between the parties.[4] [Pl's Tr. Exs. 16-20.] That failed, and Mr. Thornton resorted to Court. Mr. Thornton tried to be reasonable throughout this litigation. Mr. Thornton sought a reasonable settlement. *See* Colitz Declaration. As trial neared, Mr. Thornton was again willing to settle his claim. And even though the parties agreed on the financial aspect of the settlement, no agreement was reached because Defendants insisted that Mr. Thornton be unable to tell his story. *See id.* Clearly, Mr. Thornton was not solely motivated by monetary concerns, and this factor weighs against an award of attorneys' fees.

---

[3] Defendants attempt to demonize Mr. Thornton's web essay is a red herring. Mr. Thornton's parody of a song's lyrics served little more than a literary gimmick to attract his readers to the saga between him and Ms. Linders. While true that the form of damages the Copyright Act makes available to Mr. Thornton are monetary, he operated under an understanding that Ms. Linders distributed 40 million infringing copies of his BBQE. Defendants designated the true numbers of distributed copies (just over 3 million) as attorneys-eyes only, and thus Mr. Thornton was unable to fully understand the amount of infringement of his work. Kept in the dark, he resorted to literary fantasy to draw attention to his work and his dispute with Ms. Linders.

[4] Again, Defendants misstate the record in arguing that there was no pre-suit demand. There is no debate that there were emails exchanged between Mr. Thornton and Ms. Linders. The precise contents of the email exchange, available only to Ms. Linders, has never been produced because Ms. Linders deletes her email as a matter of course. Regardless, the email exchange makes clear that Mr. Thornton attempted to work with Ms. Linders, who in turn responded that she had searched for an author of the BBQE, but could not find one. Mr. Thornton did not believe Ms. Linders, and pursued his claim further.

Defendants are simply incorrect that this case was only about money. In support of this Defendants point out that Mr. Thornton did not formally seek injunctive relief. *See* Motion at 8. Yet, this decision merely reflected the fact that Defendants had already ceased using the Take the Age Test and expressed no interest in using it in the future. Rather, as Defendants well know, Mr. Thornton sought his day in court, because to him this was a case about right and wrong. Mr. Thornton wanted an apology from Ms. Linders, and he expected to get that from the jury. Of course that did not happen. But Defendants made Mr. Thornton's efforts to obtain an apology very expensive. Defendants made this 1.5 day trial last more than a week. Defendants withheld the few valuable financial documents that could have adjusted settlement talks (and Mr. Thornton's expectations) early in this dispute. [Dkt. 45.] Defendants now seek to further punish Mr. Thornton and throw him straight into bankruptcy. The cost award, in and of itself, may accomplish Defendants' vindictive objective. There is no need or reason to further salt the wound, and impose a fee award upon Mr. Thornton equivalent to over 28 times his yearly income and over 100 times the yearly revenue of his website. *See* Ex. A, Thornton Depo. (explaining that Mr. Thornton's website, which generates $6,000 a year, represents a quarter of his total yearly income).

    **c. Mr. Thornton's Case Was Reasonable**

As the Court noted in its summary judgment order, Mr. Thornton is the author of the Baby Boomer Qualifying Exam. [Dkt. 102 at Pg. 6.] The Take the Age Test that appeared in Ms. Linders' musical's programs was almost identical to the BBQE. Copyright exists to protect works of authorship. It was this right that Mr. Thornton sought to enforce.

As briefed throughout this litigation, Mr. Thornton needed only to establish a connection between Defendants' revenues and the Take the Age Test in order to be awarded

Defendants' profits attributable to their infringement. Mr. Thornton followed the language of the copyright statute in attempting to prove up his damages case. Just because he did not prevail does not mean his claim was unreasonable.

In their motion, Defendants still maintain they know the law better than this Court and Congress. Mr. Thornton survived summary judgment on his damage claim because Defendants' revenues are reasonably connected to their infringement. Defendants have, once again, resuscitated the same argument this very Court has now rejected twice – Mr. Thornton's case is different from *On Gap*. Mr. Thornton's case is different from *Bouchat*. Mr. Thornton's case is different from *Burns*. Defendants have presented the same argument with theses cases: (1) in summary judgment briefing; [Dkt. 68] (2) in 2 separate, frivolous, and absurd proffered Rule 11 motions; and (3) in a wasteful motion seeking reconsideration of the Court's 37 page order denying Defendants summary judgment. [Dkt. 104.] But yet, even though this Court has plainly and unequivocally rejected their argument, Defendants once again dust off their brief and now hope to use it as a basis for a fee award. The Court should deny Defendants' request.

Additionally, as this Court itself acknowledged, Mr. Thornton's damages claim was one that the Eleventh Circuit had yet to address. [Dkt. 102 at Pg. 22.] The Court decided this issue in Mr. Thornton's favor by denying Defendants' summary judgment motion, and in doing so, it established an unmistakable precedent within the Middle District of Florida on the issue of "profits attributable to the infringement" under 17 U.S.C. § 504(b). *See Thornton v. J. Jargon, Co.*, 580 F.Supp.2d 1261 (M.D. Fla). This speaks to the reasonableness of Mr. Thornton's position and how, in bringing his case, he furthered the purposes of the Copyright Act. Copyright holders in the future will undoubtedly rely upon the precedent established by

Mr. Thornton in seeking an infringer's profits. Had Mr. Thornton, fearing a potential fee award, declined to press his case, this issue would still be unaddressed with this judicial district. On this basis alone, Defendants' Motion should be denied.

Mr. Thornton has spent much of the past 10 years trying to get people to stop copying his Baby Boomer Qualifying Exam. [Pl's Tr. Exs. 6-14.] He has met little success, and unfortunately this case is no different. His copyright in the BBQE is valid. He is the owner of it. He sought to enforce that right, and he lost. This was a reasonable fight, and the parties should bear their own fee.

### d. The Court Should Not Discourage Struggling Authors From Attempting To Protect Their Intellectual Property

One of the purposes of the Copyright Act is to "discourage infringement." *Fogerty*, 510 U.S. at 526. There can be no clearer statement of the Copyright Act's purpose than the Constitutional pronouncement from which the Act derives: "To promote the progress of … useful arts, by securing for limited times to authors … the exclusive right to their respective writings…" U.S. Const. Art. I, Sec. 8. At its core, copyright law seeks "to promote the dissemination of creative expression, and provide incentives for copyright owners to produce ... original works." *Latimer v. Roaring Toyz, Inc.* 574 F. Supp. 2d 1265, 1272 (M.D. Fla. 2008) (quoting *CBS Broad., Inc. v. EchoStar Communications Corp.*, 265 F.3d 1193, 1211 (11th Cir.2001)). Struggling authors like Mr. Thornton should not be discouraged from seeking to protect their intellectual property.

Mr. Thornton, like Ms. Linders, is an author. He wrote the Baby Boomer Qualifying Exam. Years later, he found it in a program distributed as Ms. Linders' show. He sought to discourage infringement, and sued Ms. Linders. He lost. The Court should not punish him

further by awarding Defendants their fee. This is not a case where competitors in business sought to improperly exploit copyright for competitive advantage. *See Lil' Joe Wein Music, Inc. v. Jackson*, 2008 WL 2688117 (S.D. Fla. July 1, 2008) (awarding fees against plaintiff-singer for pursuing twelve-count copyright complaint alleging *inter alia* copyright in the phrase "It's Your Birthday.").

This was a hard fought copyright infringement lawsuit pitting David vs. Goliath. Goliath was victorious, and now requests its fees. Mr. Thornton has no ability to pay Defendants' fees as the requested fee award is dramatically more than Mr. Thornton's yearly salary. *See* Ex. A. And more importantly, awarding Defendants' their fees contravenes the purposes of the Copyright Act. This was not a frivolous case. As the Court recognized, there were substantial questions of material fact that precluded the Court from deciding this case as a matter of law. [Dkt. 102.] Both sides fought hard, and should be expected to bear their own fee.

### D. Defendants' Litigation Tactics Blew This Case Out Of Proportion

Mr. Thornton asked the jury for between .10 to .05 cents per program, approximately $330,000 to $165,000 – less than half of what Defendants now demand as their fee. Defendants seek to throw the cart before the horse and cast the blame on Mr. Thornton for overreaching in his damages claim. But as discovery in this case makes patently clear, Defendants kept Mr. Thornton in the dark so that he could not understand Defendants' business model, or revenue, to make any informed decisions about his damage claim. [Dkt. 45, 55.] On the eve of trial, Defendants finally came forward with some of the information Mr. Thornton had sought throughout this litigation. [Dkt. 123.] Other financial information

was kept out of Mr. Thornton's hands via Defendants' "Attorneys Eyes Only" designations. Mr. Thornton should not be further punished because of these tactics.

Defendants pretend that Mr. Thornton somehow drove the costs of this litigation, but that suggestion is absurd. As the Court is by now aware, the only attorneys being paid for this litigation were the Defense attorneys. Mr. Thornton's counsel worked on a contingency. There was zero incentive for Mr. Thornton and his counsel to drive up the costs.

Mr. Thornton and his counsel were forced to react to Defendants' litigation tactics. To establish Defendants' profits attributable to the infringement, Mr. Thornton needed to prove Defendants revenues from performances of the Musical where infringing versions of the program were distributed. To do this, Mr. Thornton requested Defendants revenues from these shows. [Dkt. 45.] Defendants refused to provide this information, arguing that, under their view, there could be no revenues. [Dkt. 46.] Mr. Thornton successfully moved to compel this information. [Dkt. 50.]

Defendants continued to withhold revenue and expense information by giving undifferentiated and ambiguous interrogatory answers, thereby forcing Mr. Thornton to file yet another motion to compel. [Dkt. 55.] Defendants were again ordered to produce this information. [Dkt. 77.] Even after that, Defendants continued to withhold information and did not fully respond to Mr. Thornton's requests until shortly before trial. [Dkt. 123.]

Defendants' position throughout this case was that there were no profits attributable to the infringement, and thus Defendants had no obligation to provide discovery concerning damages. Defendants litigated this matter as though they had won a motion to dismiss Mr. Thornton's damage claim. But Defendants filed no such motion (because they knew they could not prevail). This case was longer and much more expensive than Mr. Thornton ever

imagined. Defendants are responsible for this. This was a $330,000 case (at best) (*See* Ex. A) that Defendants paid their lawyers over $650,000 to defend.

### E. Because Mr. Thornton Did Not Timely Register His Copyright, Neither Side Can Recover Attorneys' Fees

"Generally, in federal litigation, … a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties." *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) (citing *Alyeska Pipeline Serv. Co. v .Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). While 17 U.S.C. § 505 can provide for the recovery of attorneys' fees in a copyright case, 17 U.S.C. § 412 takes away this right when the copyright holder has not timely registered his copyright.[5] Section 412 provides, in part:

> no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for —
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

It is undisputed that in this case the alleged infringement commenced after the first publication of Mr. Thornton's Baby Boomer Qualifying Exam. As such, "no award of statutory damages **or attorney's fees**" are available. [Dkt. 11.] Had Mr. Thornton prevailed, he would not be entitled to his attorneys' fees because his copyright registration was not timely registered. *See* 17 U.S.C. § 412.

---

[5] Section 505 provides, in part:
Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Assuming *arguendo* that Defendants are prevailing parties, it is a case of first impression within this circuit as to whether or not Defendants can even possibly be awarded their fees. The Supreme Court has held in copyright infringement cases that "prevailing plaintiffs and defendants must be treated in an evenhanded manner." *Fogerty*, 501 U.S. at 534 n.19. Thus, because attorneys' fees are unavailable to Mr. Thornton had he prevailed, so too must they be unavailable to the Defendants herein.

Defendants argument to the contrary converts the American Rule in every copyright case where the work is not timely registered into the English Rule, where attorneys' fees are typically awarded to the prevailing party. No binding precedent has adopted this position, and doing so would be unfair. Moreover, in speaking directly on the fee issue, the Supreme Court has expressly stated that the trial courts must be "evenhanded" in their approach to both plaintiffs and defendants. *See Fogerty*, 501 U.S. at 534, n. 19. The Court should hold that defendants are not entitled to attorneys' fees where the plaintiff's copyright is not timely registered.

> **F.  Alternatively, The Court Should Reduce The Number of Hours Claimed If the Fees Are to Be Awarded**

"[T]he general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for *each activity*." *Norman v. Housing Authority in the City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (emphasis added). "A well prepared fee petition also would include a summary,

grouping the time entries by the nature of the activity or the stage of the case." *Oxford Asset Mangement, Ltd. v. Jaharis*, 279 F.3d 1182, 1196 (11th Cir. 2002)[6].

"The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. Satisfactory evidence *at a minimum is more than the affidavit of the attorney performing the work*." *Norman*, 836 F.2d at 1299 (citations omitted). Defendants have failed even this initial requirement, as they have provided only declarations of the attorneys who have performed the work at issue herein. Defendants have provided no third-party verification that the work performed was reasonable. Under *Norman*, this is insufficient, and the Court should deny Defendants' motion on this basis alone.

Moreover, Defendants' fee declarations and billing provides substantial amounts of block-billing, which violates this principle of law. *See Lil' Joe Wein Music*, 2008 WL 2688117 at *11 ("The undersigned finds that the billing records of Defendants' attorneys are replete with block billing, and that this makes it difficult to establish whether the amount of time spent on any one task was reasonable.") (citing *Oxford Asset Management, Ltd.*, 297 F.3d at 1196).

Additionally, Defendants exacerbated the amount of fees by bringing in Mr. Wolfe during the last few weeks of this case. Defendants' argument was that the separate defendants were not aligned, and thus needed different representation. Trial made clear, however, that Defendants are all Jeanette Linders. While the separate corporate entities may have different tax obligations, they are all Ms. Linders. One defense was put on for the three defendants, and Defendants should not be permitted to recover for this overlap in lawyering.

---

[6] The Court made clear, though, that a summary is not necessary, but only desirable. *Id*. at n.6. The Eleventh Circuit was suggesting that the fee applicant group the time entries by high-level task, such as preparing a motion to dismiss. *Id*.

Mr. Wolfe's bill should also be reduced (if it is to be rewarded at all) because of his billing in .25 increments. *See e.g Rasmussen v. Secretary of Health and Human Services*, 1996 WL 752289 at * 2 (Fed. Cl. Dec. 20, 1996) (Noting that "the billing practice [of billing in .25 increments] (as opposed to the common practice of billing in tenths of hours) probably did slightly inflate this bill."); *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1403 (C.D. Cal. 1997) (Reducing fee award because billing in .25 increments was an inefficient billing scheme and thus the time records were deficient).

Mr. Thornton does not request the Court perform an hour-by-hour analysis in considering Defendants' fee petitions, should the Court decide to award Defendants their fees. Rather, Mr. Thornton requests an across-the-board percentage cut, given the voluminous nature of the billing. *See Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("across-the-board percentage cuts" appropriate in voluminous applications); *Reilly v. Duval County Public Schools*, 2007 WL 2120551 at *2, (M.D. Fla. July 23, 2007) (percentage reduction "especially appropriate in cases such as this where attorneys have engaged in block billing which makes it more difficult to separate out excessive time.") Mr. Thornton suggests a reduction sufficient to bring the claimed amount into line with the median total cost suggested by the AIPLA. *See* Colitz Declaration at Ex. A**.**

### G. Under the *Johnson* Factors, Defendants' Fees are Unreasonable

This *Circuit* relies upon the factors outlined in *Johnson* for determining the reasonableness of an attorneys' fee award. *See Cable/Home*, 902 F.2d at 853-54; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The following factors are relevant: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. Because Defendants' fee application is deficient, it is not possible to fully analyze these factors. (For instance, the Court and Mr. Thornton have no way of knowing what time limitations were imposed by the client, what other work, if any, defense counsel was precluded from accepting, and what the nature and length of the relationship defense counsel shared with their client was.)

*The time and labor required*: Defendants justify their excessive bill on the basis of having to respond to numerous motions to compel and defense of numerous depositions. But Defendants – and Defendants alone – are responsible for each of these. Defendants withheld information, so Mr. Thornton required Court intervention to get it. [Dkt. 45, 55, 123.] Defendants have a large business operation, so Mr. Thornton was required to learn information (by way of deposition) from a number of people.

Defendants then filed and prepared a number of frivolous motions in limine (for instance, after over a year of litigation, concocting an argument that the Court lacked subject matter jurisdiction based upon a faulty copyright registration) and feigned Rule 11 motions (merely parroting back the same legal arguments Defendants have unsuccessfully presented time and time again). Defendants made this case much larger than it needed to be. Defendants should not be compensated for this excessive endeavor.

*The customary fee*:  As discussed above, we can not know what the customary fee is, as Defendants have not provided any third-party verification that the fee they charged was customary.  Rather, as explained in the attached declaration of the undersigned (and supporting exhibit),  the bi-annual survey conducted by the American Intellectual Property Law Association (AIPLA) evidences that copyright cases with potential damages of less than $1,000,000 cost, on average, $290,000.  Moreover, the $290,000 figure includes attorneys' fees in addition to virtually any possible costs associated with the case.  *See* Colitz Declaration.  This amount is less than half of what Defendants now seek in their Motion.  The AIPLA survey – based upon 2,733 individual responses – shows clearly Defendants' requested fees are excessive.

*The amount involved and the results obtained*:  Prior to summary judgment, the parties valued this case between $30,000 and $40,000 (Ms. Linders offered $30,000, Mr. Thornton requested $40,000).  *See* Colitz Declaration.  After summary judgment was decided, and prior to trial, the parties agreed the case was valued at $80,500.  *See id.*  Defendants incurred over $650,000 in fees on a claim they valued – at most – at $80,500.  Defendants overlitigated this case.  The reasons for pursuing such a strategy are known only to the Defendants.  Regardless of the reasons, Mr. Thornton should not be required to bear this cost.

Defendants' requested fees are unreasonable, and this Court should not award them.

### H. The Court Should Not Award Any Additional Costs

Mr. Thornton has separately moved for review of the clerk's taxation of costs and respectfully incorporates that Motion by reference herein in response to Defendants' request for Full Costs.  [Dkt. 196].

Initially, as above, whether or not to grant "full costs" is discretionary with the Court. 17 U.S.C. § 505; *Artisan Contractors Assoc. of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1038-39 (11th Cir. 2001). Through their Motion, Defendants seek to recover for full costs for expert witness fees. *See* Motion at 18. ("Defendants by this motion seek costs for … their own expert witness fees.") Clearly, the Eleventh Circuit does not allow such recovery. *Artisan Contractors*, 275 F.3d at 1039 ("The question in this appeal is whether the 'full costs' language of § 505 permits the recovery of expert witness fees beyond the limitations specified in 28 U.S.C. §§ 1920 and 1821. We join the … Eighth Circuit in holding that it does not.")

Defendants have not provided any summary showing where the requested $18,399.29 in costs derives. It is thus unclear how much of this total is directed to expert witness fees which are clearly not recoverable. It is also unclear how much of this amount is to recompense Defendants for the deposition expenses they incurred for Ms. Coles's deposition. As the Court may recall, as a sanction, the Court ordered Defendants to pay the expense of Ms. Coles' deposition. [Dkt. 102.] As such, Defendants can not now come and push their transgression onto Mr. Thornton.

Moreover, the Court should exercise the same discretion discussed at length above in denying Defendants' Motion for additional costs. Those cases cited by Defendants for awarding additional costs do so under the attorneys' fees that the Court awards. Mr. Thornton respectfully urges that Defendants are not entitled to any additional costs for the same reasons Defendants are not entitled to their attorneys' fees. Mr. Thornton respectfully requests the Court deny Defendants' Motion.

## **CONCLUSION**

This was a hard fought copyright infringement case. Mr. Thornton sought to put an end to the largest infringement of his copyrighted work. Mr. Thornton put his faith in the jury to decide in his favor. The jury did not, and Defendants successfully held off Mr. Thornton's challenge. Under our American system of litigation, the parties should each bear their own fees in getting to this point. Mr. Thornton will be entirely unable to pay Defendants their fee, should it be awarded. Moreover, Defendants request twice as much in fees as Mr. Thornton asked the jury for in damages. The Court should deny Defendants' request.

Dated this 23rd day of December, 2008.

    Respectfully submitted,

    /s/ Michael J. Colitz, III
    Stefan V. Stein
    Florida Bar No. 300527
    Michael J. Colitz, III
    Florida Bar No. 164348
    Woodrow H. Pollack
    Florida Bar No. 026802
    Holland & Knight LLP
    100 N. Tampa Street
    Suite 4100
    Tampa, FL 33601-3644
    Tel: 813/227-8500 Fax: 813/229-0134
    stefan.stein@hklaw.com
    michael.colitz@hklaw.com
    woodrow.pollack@hklaw.com
    ATTORNEYS FOR JOHN J. THORNTON

## CERTIFICATE OF SERVICE

  I hereby certify that on December 23, 2008 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

              /s/Michael J. Colitz, III
              Attorney

# 5895017_v3