UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. THORNTON (d/b/a Baby Boomer
Headquarters), an individual,

   Plaintiff,

vs.              Case No. 8:06-cv-1640-T-27TGW

J JARGON CO., a Florida corporation, et al.,

   Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion for Attorney's Fees and Full Costs (Dkt. 192), to which Plaintiff has responded in opposition (Dkt. 198). Upon consideration, Defendants' motion is GRANTED IN PART.

### *Background*

In this action for copyright infringement, brought pursuant to 17 U.S.C. §§ 101, *et seq.*, Plaintiff alleged that theater programs for "Menopause the Musical" contained a one-page "Take the Age Test" that was an unauthorized reproduction of Plaintiff's copyrighted work, "The Official Baby Boomer Qualifying Exam." Following a six-day jury trial, the jury returned a verdict in favor of Defendants. (Dkt. 184). In their motion, Defendants seek an award of attorneys' fees in the amount of $654,945.50 and costs in the amount of $18,399.29. Upon consideration, the motion for fees is GRANTED in part. Defendants are entitled to a reduced award of $394,600.50 in attorneys' fees. The request for additional costs is DENIED.

1

*Discussion*

Pursuant to the Copyright Act, a court "may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. A fee award is "generally discretionary, seldom mandatory," and a showing of bad faith or frivolity is not required. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 853 (11th Cir. 1990). The Eleventh Circuit requires strict adherence only to the two statutory requirements: (1) the fee award should be granted to the prevailing party; and (2) the amount should be reasonable. *Id.* "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotations omitted).

### 1.  *Defendants are prevailing parties*

Plaintiff argues that Defendants' success was "purely technical" and therefore prevents them from being classified as prevailing parties. *See Cable/Home Commc'n Corp.*, 902 F.2d at 853. Defendants, however, succeeded in demonstrating that they did not infringe Plaintiff's work, which is not a "technicality." Because the jury was instructed that Plaintiff met the first element of his claim as a matter of law (ownership of a valid copyright), the jury necessarily determined that Plaintiff did not meet his burden on the second element, that Defendants copied original protected elements of his work. (Dkt. 183 at 32). Accordingly, Defendants are prevailing parties. *See, e.g., MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 198 F.3d 840, 842 (11th Cir. 1999) (citing *MiTek Holdings, Inc. v. Arce Eng'g Co., Inc.*, 89 F.3d 1548, 1552 (11th Cir. 1996) (defendant was prevailing party where validity of copyright was not disputed and, following bench trial, judge determined that plaintiff failed to demonstrate copying of constituent elements of work that were

original)).

Plaintiff also argues that because he did not timely register his copyright, the Copyright Act prohibits Defendants from recovering attorneys' fees. The Copyright Act provides that where the Plaintiff has not registered his copyright within three months of first publication or within one month of learning of the infringement:

> no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.
> 17 U.S.C. § 412.

Plaintiff argues that because he could not recover attorneys' fees under § 412 due his failure to timely register, Defendants likewise may not recover fees. Plaintiff provides no support for this proposition, and courts have routinely allowed recovery of fees in similar cases.[1] *See, e.g., Budget Cinema, Inc. v. Watertower Assocs.*, 81 F.3d 729 (7th Cir. 1996); *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47 (S.D.N.Y. 1994).

## 2.   *Defendants are entitled to a reasonable fee*

In making the determination of whether Defendants are entitled to attorneys' fees, several equitable factors are considered, including: (1) whether Plaintiff's claims were frivolous or objectively unreasonable, either as to the factual or legal components of the case; (2) Plaintiff's motivation in filing the case; and (3) considerations of compensation and deterrence. *See MiTek*

---

[1] Plaintiff's argument is also belied by the plain language of § 412, which applies only to awards based on "*any infringement* of copyright." 17 U.S.C. § 412 (emphasis added). As only a copyright holder-plaintiff would ever be a prevailing party on a claim for infringement, this section is necessarily limited to copyright holder-plaintiffs.

3

*Holdings, Inc.*, 198 F.3d at 842. In evaluating the latter factor, the Court may consider Plaintiff's ability to pay a fee award. *Id.*; *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993). The Court must also specifically consider whether the imposition of attorneys' fees would further the interests of the Copyright Act by encouraging the pursuit of reasonable claims and defenses, which may deter infringement and also ensure "that the boundaries of copyright law are demarcated as clearly as possible in order to maximize the public exposure to valuable works." *Id.* at 842-43 (internal quotations and brackets omitted).

Plaintiff's claim was not frivolous, as evidenced by this Court's July 8, 2008 Order on the parties' cross-motions for summary judgment and the August 8, 2008 Order on Defendant's motion for reconsideration. (Dkts. 102, 108). Specifically, there was an issue of fact as to whether Plaintiff's work and Defendants' work were substantially similar. In addition, Plaintiff's claim for profits attributable to infringement was novel, requiring a detailed analysis of competing views in other jurisdictions. (Dkt. 102 at 20-23). This Court ultimately found that Plaintiff identified sufficient non-speculative evidence of a reasonable relationship between the alleged infringing activity and the gross revenues from ticket sales, and that any determination as to damages was best left to the fact-finder. (Dkt. 102 at 23).

Plaintiff's damages claims were, however, objectively unreasonable. This Court, as well as the Magistrate Judge, consistently expressed doubt as to the ultimate viability of Plaintiff's damages theory, based on the tenuous link between the free programs for Menopause the Musical and the revenue from ticket sales. Although Plaintiff's position on the issue was tenuous, Plaintiff elected to pursue this case through a full-blown trial, seeking $165,000 to $330,000 in profits. (Dkt. 199, Colitz Dec., ¶ 6). Moreover, while Plaintiff's claim for actual damages based on a retroactive

4

licensing fee was not frivolous in theory, Plaintiff failed to support it with any competent evidence. Rather, Plaintiff's expert testimony on this subject was stricken due to the expert's unreliable methodology. (Dkt. 102 at 16-20).

As noted by Defendants, there is also evidence that Plaintiff was motivated to recover a significant damages award from the perceived "deep-pockets" of the Defendants. Defendants cite a portion of an essay Plaintiff authored about Defendant Linders and posted on his website, which stated, in part: "Colour My Bankbook. As time goes on you realize just what it means to me. And now, now that you're rich, promise some cash for my quiz that you shared with all of your patrons together. Colour my bankbook with cash from only you." (Pl. Dep. at 121-22). Similarly, without any pre-suit demand, Plaintiff's counsel issued a press release the day after filing the lawsuit claiming a possible recovery of "millions in damages." While such conduct is not *per se* improper or in bad faith, it does suggest Plaintiff's motive in filing this lawsuit was to extract a sizeable recovery from Defendants.

Finally, an award of attorneys' fees is appropriate to deter similarly tenuous claims. This lawsuit, involving only one claim for relief, was overlitigated and consumed an inordinate amount of judicial time and resources of the parties. An award of attorneys' fees will "deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006). While Plaintiff's means are apparently modest, he assumed the risk of an attorneys' fees award in Defendants' favor when he rejected Defendants' $80,000.00 settlement offer on the eve of trial. Similarly, Defendants are entitled to recover fees they were forced to incur in successfully

defending this lawsuit. Finally, an award of fees will further the interests of the Copyright Act, by ensuring that Defendants, and others similarly situated, are not discouraged from pursuing defenses that ultimately maximize the free flow of ideas. *MiTek Holdings, Inc.*, 198 F.3d at 842-43.

Based on the foregoing consideration of the relevant equitable factors, Defendants are entitled to an award of reasonable attorneys' fees.

### 3.  *Amount of a reasonable fee*

Pursuant to 17 U.S.C. § 505, the Court is charged with determining a "reasonable" award. *Cable/Home Commc'n Corp.*, 902 F.2d at 853. The reasonableness of an attorneys' fee award is governed by the standard lodestar methodology, which requires a determination of a reasonable hourly rate and hours reasonably expended on the litigation. *Id.* at 854. In making these determinations, the Court considers the traditional *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
>
> *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 n.2 (11th Cir. 2008) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

After determining the lodestar, it may be adjusted upward or downward to account for the results of the particular litigation. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

### a.  Reasonable hourly rates

The starting point in making an award of attorney's fees is determining a reasonable hourly

rate, which is "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. Defendants bear the burden of establishing that their requested rates are in line with prevailing market rates, which, at a minimum, requires "more than the affidavit of the attorney performing the work." *Id.* Where, as here, Defendants fail to provide the requisite evidence, the Court "may make the award on its own experience" without an evidentiary hearing. *Id.* at 1303.

In this case, Defendants request a rate of $450.00 /$400.00 for G. Donovan Conwell, $325.00 for Richard Wolfe, $350.00/$300.00 for G. Wrede Kirkpatrick, $265.00/$250.00 for Dineen Wasylik, $325.00/$275.00/$250.00 for Suzanne Eschrich, and $175.00 for Lori Wolfe. (Dkt. 194, Conwell Dec., Exh. A at 2).[2] Defendants also seek paralegal time billed at $75.00 and $125.00. (*Id.*)

Conwell has twenty-five years experience in business litigation and intellectual property law and is board certified in intellectual property law, business litigation, and civil trial law. (Conwell Dec. ¶ 2). He was a founding member of The Florida Bar Intellectual Property Certification Committee and regularly speaks on intellectual property issues, including CLE seminars. (*Id.*) Richard Wolfe, who joined Defendants' team in April 2007, has been practicing law in Florida since 1982 and has "extensive" experience in entertainment and copyright law, including lecturing on those subjects at various law schools and CLE seminars and as the former chair of the entertainment law section of The Florida Bar. (Dkt. 193, Wolfe Dec., ¶ 2).

Kirkpatrick has practiced in the areas of business litigation and intellectual property for fifteen years, Eschrich for ten years, and Wasylik for ten years. (*Id.* at ¶¶ 6, 7, 8). Defendants note that Wasylik previously clerked for the Eleventh Circuit Court of Appeals, litigated copyright and

---

[2] Defendants provide no explanation for the multiple rates for Conwell, Kirpatrick, Wasylik, and Eschrich.

trademark matters in Washington, D.C., and has written numerous articles and taught at CLE seminars on copyright issues. (*Id.* at ¶ 8). Defendants also argue that the rates for Wasylik and Eschrich are lower than the $300.00 rate for Plaintiff's counsel, who graduated from law school the same year. (*Id.* at ¶¶ 7, 8).

Lori Wolfe is described only as a "recent law school graduate." (Conwell Dec., ¶ 9). In addition, Defendants provide no information regarding the experience levels of the paralegals, claiming only that "[t]hese rates reflect ordinary and customary rates charged by paralegals with these timekeepers [*sic*] levels of experience in this area." (Conwell Dec. ¶ 11).

Based on the evidence presented by Defendants and this Court's experience, Defendants' claimed hourly rates should be reduced based on the skill required to perform the legal services and the experience, reputation, and ability of these attorneys. Richard Wolfe's rate of $325.00 is reasonable and is not reduced. Conwell's hourly rate is reduced o $375.00, which is commensurate with the hourly rate of Richard Wolfe, who has a similar amount of experience, but does not claim board certification. Kirkpatrick's rate is reduced to $275.00, as he has less experience and does not represent any particular expertise in copyright law. Similarly, Eschrich's rate is reduced to $200.00, which is commensurate with her experience and lack of any identified experience in copyright law. Wasylik's rate is reduced to $225.00, which reflects her experience and particular expertise in copyright law. Lori Wolfe's claimed rate of $175.00 is excessive for a recent law school graduate and is reduced to $100.00. Finally, as Defendants have not described the experience of their paralegals, those rates are reduced to a uniform rate of $75.00.

Pursuant to the foregoing reductions, Conwell Kirkpatrick, P.A.'s claimed fees are reduced to $512,267.50. Richard Wolfe's claimed fees remain $51,447.50.

b.   *Hours reasonably expended*

The Court next determines the hours reasonably expended, which excludes "excessive, redundant or otherwise unnecessary" hours. *Norman*, 836 F.2d at 1301. In this case, the law firm of Conwell Kirkpatrick, P.A. claims 1803 attorney hours and 209.5 hours of paralegal time.[3] Richard Wolfe claims 158.3 hours. (Conwell Dec., Exh. A; Wolfe Dec., ¶ 7). The total time expended is therefore 2170.8 hours. (*Id.*)

Because Defendants have submitted voluminous timesheets replete with block billing, Plaintiff correctly argues for an across the board percentage reduction, rather than a line by line reduction. In the Eleventh Circuit, "[w]here fee documentation is voluminous, ... an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). In this case, line by line review of Defendants' 104 pages of typed time records is impractical. *See id.* at 779, 783; *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001); *St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 854 (11th Cir. 2005). In addition, Defendants' block billing renders it impossible to determine whether the time spent on any one task is reasonable. *See Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 429 (11th Cir. 1999).[4]

---

[3] Without explanation, Defendants also seek "clerk" time for 4.3 hours at $50.00 per hour, which is not included.

[4] As one of the innumerable examples of block willing, Wasylik billed 7.6 hours for:
continue research relating to motion for summary judgment and motion to compel; continue work on motion for summary judgment and motion to compel; receipt and review of correspondence from M. Colitz re discovery issues; receipt and review fax [redacted] from C. Closure; receipt and review of correspondence and amended deposition notice for Gfour from M. Coltiz; finalize discovery responses; communications with [redacted] re G4 deposition.
(Dkt. 194-4 at 7).
Entries of this nature simply do not provide sufficient information for this Court to assess whether time spent on discrete projects was reasonable.

To the extent this Court can hazard a guess at the amount of time spent on discrete tasks, it appears that the time and labor expended on this case is objectively unreasonable. For instance, it appears Defendants spent at least fifty-seven hours drafting their unsuccessful thirteen-page motion to compel responses to one interrogatory and five requests for production (Dkt. 54), for a total claimed fee of $10,667.00. This is plainly excessive.[5]

Similarly, Defendants appear to request approximately seventy-four hours of work on their unsuccessful motion for reconsideration of the July 8, 2008 summary judgment Order (and their proposed reply brief, which was not allowed), for a total claim of over $25,000.00. Defendants' motion for reconsideration was, to say the least, not well-taken, as it failed to identify any recognized ground for reconsideration of this Court's Order and merely reargued Defendants' motion for summary judgment. (Dkt. 108). Again, these fees are plainly excessive.

The fees for Defendants' pretrial preparation also appear excessive, although the block billing is especially prominent with respect to these entries, rendering it impossible to ascertain the amount of time spent on any one discrete task. For instance, time billed for Defendants' unsuccessful motion in limine to dismiss for lack of subject matter jurisdiction (Dkt. 118) -- which again rehashed arguments presented (or which could have been presented) at summary judgment -- is listed as an item in block entries totaling more than ninety hours. (Dkts. 118). Even reducing by half the time spent to account for other tasks contained in the block entries, Defendants' sixteen-page motion was

---

[5] In comparison, it appears that Defendants spent approximately 71 hours drafting their motion for summary judgment. Although two entries, which typify Defendants' block billing, include time for working on the motion to compel and time for working on the motion for summary judgment, the Court has apportioned one half of each entry to both tasks. (*See* 10/2/2007 entry for DPW and 10/11/2007 entry for DPW).

By contrast, the Court notes that Plaintiff's two motions to compel were granted in part. (Dkts. 50, 77). Indeed, Plaintiff's motions to compel were addressed to the same two interrogatories, indicating Defendants' continued lack of cooperation in discovery, and the excessiveness of their fees allocated to responding to Plaintiff's motion to compel. (Dkts. 45, 55). In addition, upon motion by Plaintiff, this Court sanctioned Defendants for their late disclosure of a witness, unnecessarily increasing the cost of this litigation. (Dkt. 102 at 34-36).

not, reasonably, a forty-five hour project.[6]

Based on the foregoing, the Court finds that Defendants' time records demonstrate pervasive block billing for hours far in excess of the time and labor required to skillfully try a case with <u>one claim</u>. Based on the inadequate time records and excessive hourly rates and fees, this Court reduces the requested fee by 30% across the board, in addition to the previous reduction to counsels' hourly rates. *See Villano*, 254 F.3d at 1311 (affirming 26% reduction in hours where fee documentation was inadequately detailed and court reduced award in its own experience); *St. Fleur*, 149 F. App'x at 853-54 (affirming reduction in hours by 30%).

The reduction is supported by the usual and customary fees charged in similar copyright infringement actions. For instance, Plaintiff's counsel submits the American Intellectual Property Law Association, 2007 Report of the Economic Survey, which presents the median litigation cost for a copyright infringement suit with less than $1 million at risk as $290,000, including all expenses. (Dkt. 199, Colitz Dec., at 12). It is also buttressed by Defendants' own authority on this factor. In one case, the district court awarded $285,250.00 in attorneys' fees -- after a 20% reduction -- to counsel who were successful at summary judgment. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079, 2008 WL 2688117, at *13 (S.D. Fla. June 1, 2008). While the Court recognizes the additional time required to prepare and try this case, it does not require the additional $365,000.00 in fees claimed here.[7] An award of $394,600.50 is in line with the customary fees charged in similar cases.

---

[6] Defendants' five other pretrial motions in limine were also denied. (Dkts. 167, 179).

[7] In Defendants' second case, the district court awarded $388,424.54 in fees and other costs, following a successful summary judgment and dismissal for failure to post bond. *Baker*, 431 F. Supp. 2d 351. As this award includes all other costs, it is roughly commensurate with the award in *Lil' Joe Wein Music*.

The reduction is also supported by the fact that this was not an "undesirable" case, as evidenced by Defendants' unwavering position that Plaintiff was entitled to no damages. Nor have Defendants asserted that they were precluded from other employment, subject to time limitations, affected by accepting a fixed or contingent fee, or, with the exception of Richard Wolfe, that they varied their fees based on the nature and length of the professional relationship with their clients. (*See* Dkt. 192 at 15-17).

The Court does, however, recognize the novel and difficult issues presented concerning damages, which required additional research time. The Court also does not find the addition of Richard Wolfe as co-counsel for Defendants TOC Productions, Inc. and J. Jargon Co. to have unnecessarily driven up fees, given the potential conflict of interest between these Defendants and Defendant Linders.

Based on the foregoing consideration of the relevant *Johnson* factors, the lodestar amount is $394,600.50.

c.  *Adjustments to lodestar*

As a final matter, the Court must consider whether the lodestar should be adjusted based on the results obtained. *Norman*, 836 F.2d at 1302. There is, however, "a strong presumption that the lodestar figure, without any adjustment, is the reasonable fee award," which "can be rebutted only in rare and exceptional cases." *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008) (internal quotations and citations omitted). In this case, the results obtained, while a conclusive victory for Defendants, were not exceptional, especially given Defendants' position that this was a clear-cut case. The Court perceives no basis for an adjustment of the lodestar.

4.  ***Additional costs***

Defendants also seek an award of "full costs" pursuant to 17 U.S.C. § 505. Conwell Kirkpatrick, P.A. claims $909.95 for postage, $5,504.26 for computerized research, $1,322.07 for copies, $108.20 for cell phone long distance, $3,510.81 for travel, including mileage, parking, meals, air fare, hotels, and transportation, $203.09 for overtime air conditioning, $1,325.00 for mediation fees, and $3,660.00 for expert fees. (Conwell Dec. Exh. A at 5-6). Richard Wolfe seeks $1,291.23 in travel expenses, $548.51 for copies, faxes, and telephone calls, and $16.16 for legal research. (Wolfe Dec., Exh. A at 5). Relying on *Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996), Defendants seek total costs in the amount of $18,399.28.

Plaintiff has already been taxed costs pursuant to 28 U.S.C. § 1920 in the amount of $18,826.85. (Dkt. 211). In *Pinkham*, the Eighth Circuit held that "costs under 17 U.S.C. § 505 are limited to the costs expressly identified in 28 U.S.C. § 1920." *Id.* at 295. The Eleventh Circuit has adopted this holding specifically as to expert fees, which it has determined are not recoverable under § 505. *Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039 (11th Cir. 2001), and at least one court in this district has denied any additional costs under this rationale, *Guetzloe Group, Inc. v. Mask*, Case No. 6:06-cv-404, 2007 WL 2479335, at *2 (M.D. Fla. Aug. 28, 2007).

Based on the foregoing, Defendants' request for additional costs is denied. Given Defendants' excessive claim for attorneys' fees, discussed *supra*, the Court declines to make any additional award for copies, telephone calls, faxes, or postage.[8] *Cf. Pinkham*, 84 F.3d at 292

---

[8] Defendants provide no authority substantiating their claims to overtime air conditioning, travel, and mediation fees. Although Defendants cite a case allowing taxation of costs for mediation, this was pursuant to specific provision in a case management and scheduling order. *Kotek v. Almost Family, Inc.*, 2005 U.S. Dist. Lexis 42053 at *7-8 (M.D. Fla. May 12, 2005). The other case relied on by Defendants is consistent with those cited herein, as the court taxed those only costs allowed pursuant to § 1920. *Mitchell-Proffitt v. Eagle Crest, Inc.*, 2005 U.S. Dist. Lexis 33535 (M.D. Fla. Nov. 28, 2005).

(allowing these types of expenses as part of the attorneys' fees award); *Lil' Joe Wein Music, Inc.*, 2008 WL 2688117, at *14 (same).

## *Conclusion*

Upon consideration, it is **ORDERED** that Defendants' Motion for Attorney's Fees and Full Costs (Dkt. 192) is **GRANTED** *in part,* to the extent that Defendants are awarded attorneys' fees in the amount of **$394,600.50**. The motion is otherwise **DENIED**.

**DONE AND ORDERED** in chambers this 7th day of May, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record